FILED
2023 Aug-18  PM 02:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **DeQUITA DENISE BROADY, as** | ) | |
| **personal representative of the Estate of** | ) | |
| **Michael Broady, Jr.,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **JURY DEMAND** |
| | ) | |
| **DEPUTY HERD, DEPUTY TAYLOR,** | ) | |
| **OFFICER HOMAN, JAMIE DOSS,** | ) | |
| **EDDIE, TODD HALL; ANTHONY** | ) | |
| **DURRAH, JOHNNY STEPHENSON,** | ) | |
| **RICHARD BLACK, PICKENS** | ) | |
| **COUNTY, CITY OF CARROLLTON,** | ) | |
| **CITY OF GORDO, CITY OF** | ) | |
| **REFORM, AXON ENTERPRISE, INC.,** | ) | |
| **Defendants.** | | |

## COMPLAINT

**COMES NOW** Plaintiff, through her undersigned counsel, alleging the following facts, asserting the following causes of action, and seeking to recover the following damages against the above municipal and individually named Defendants:

## INTRODUCTORY STATEMENT, JURISDICTION AND PARTIES

1. This is an action to vindicate the constitutional rights of the decedent, Michael Broady, Jr., ("Broady"), who was killed by Defendants Deputy Herd ("Herd"), Deputy Taylor ("Taylor"), Officer Homan ("Homan"), Officer Jamie Doss ("Doss"),

and Officer Eddie ("Eddie"), with the complicity and participation of all defendants, on or about August 22, 2021. Plaintiff alleges that Broady was tased and killed as a result of the actions of defendants as described below, in violation of his Fourteenth Amendment right not to be deprived of his life without due process of law and his Fourth Amendment right, made applicable to the states via the due process clause of the Fourteenth Amendment, against unreasonable seizure.

2.     This Court has jurisdiction over this matter pursuant to 42 U.S.C. §1983, which provides a cause of action for anyone whose constitutional rights are violated by one acting under color of state law. This Court also has jurisdiction pursuant to 28 U.S.C. §1331 (federal question) and 28 U.S.C. §1343 (civil rights). This Court has jurisdiction over any asserted state law claims pursuant to its supplemental jurisdiction under 28 U.S.C. §1367. Venue is proper in the United States District Court for the Northern District of Alabama pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2).  Plaintiff asserts that the Western Division is the proper Division for the filing of this action because all the acts complained of occurred there.

3.     DeQuita Broady ("Ms. Broady" or "Plaintiff") is Broady's sister and has been appointed as the personal representative of his estate by the Probate Court of Lamar County, Alabama. She is suing in that capacity on behalf of Broady's estate.

4.      Defendant, Todd Hall (Hall), was at all relevant times the Pickens County Sheriff and was acting in that capacity and under color of state law. He is sued in his individual capacity. Prior to being appointed sheriff, he was the chief of police of Gordo, Alabama, a small town in Pickens County where Broady lived and was killed.

5.      Defendant Anthony Durrah ("Durrah") was at all relevant times the Chief of Police of the Town of Carrollton and was acting in that capacity under color of state law. He is sued in his individual capacity.

6.      Defendant Johnny Stephenson ("Stephenson") was at all relevant times the Chief of Police of the Town of Gordo and was acting in that capacity under color of state law. He is sued in his individual capacity.

7.      Defendant Richard Black ("Black") was at all relevant times the Chief of Police of the Town of Reform and was acting in that capacity under color of state law. He is sued in his individual capacity.

8.      Defendant Deputy Herd ("Herd") was at all relevant times an officer with the Pickens County Sheriff's Department and was acting in that capacity under color of state law. She is sued in her individual capacity.

9.      Defendant Deputy Taylor ("Taylor") was at all relevant times an officer with the Pickens County Sheriff's Department and was acting in that capacity under color of state law. He is sued in his individual capacity.

10.    Defendant Officer Homan ("Homan") was at all relevant times an officer with the Reform Police Department and was acting in that capacity under color of state law. She is sued in her individual capacity

11.    Defendant Officer Jamie Doss ("Doss") was at all relevant times an officer with the Gordo Police Department and was acting in that capacity under color of state law. He is sued in his individual capacity.

12.    Defendant Officer Eddie ("Eddie") was at all relevant times an officer with the Carrollton Police Department and was acting in that capacity under color of state law. He is sued in his individual capacity.

13.    Defendant Pickens County is a duly constituted political subdivision of the State of Alabama. The county is a defendant in this action because, as detailed more specifically below, it maintains a policy, custom, and/or widespread practice of permissiveness regarding the excessive and/or deadly use of force by county officers against unarmed and non-dangerous citizens, thereby creating an independent basis of liability against the county pursuant to 42 U.S.C § 1983. The county is also responsible and liable under Ala. Code. § 11-47-24 to provide for defense. The relevant code section states, *"Whenever any employee of a municipal corporation of the State of Alabama shall be sued for damages arising out of the performance of his official duties, ...such government agency shall be*

*authorized and required to provide defense counsel for such employees in such suit and to*

*indemnify him from any judgment rendered against him in such suit."*

14.    Defendant City of Carrollton is a municipal corporation situated in this jurisdiction. The city is a defendant in this action because, as detailed more specifically below, it maintains a policy, custom, and/or widespread practice of permissiveness regarding the excessive and/or deadly use of force by city officers against unarmed and non-dangerous citizens, thereby creating an independent basis of liability against the city pursuant to 42 U.S.C § 1983. The city is also responsible and liable under Ala. Code. § 11-47-24 to provide for defense. The relevant code section states, *"Whenever any employee of a municipal corporation of the State of Alabama shall be sued for damages arising out of the performance of his official duties, ...such government agency shall be authorized and required to provide defense counsel for such employees in such suit and to indemnify him from any judgment rendered against him in such suit."*

15.    Defendant Town of Gordo is a municipal corporation situated in this jurisdiction. The city is a defendant in this action because, as detailed more specifically below, it maintains a policy, custom, and/or widespread practice of permissiveness regarding the excessive and/or deadly use of force by city officers against unarmed and non-dangerous citizens, thereby creating an independent basis of liability against the city pursuant to 42 U.S.C § 1983. The city is also responsible and liable under Ala. Code. § 11-47-24 to

provide for defense. The relevant code section states, *"Whenever any employee of a municipal corporation of the State of Alabama shall be sued for damages arising out of the performance of his official duties, ...such government agency shall be authorized and required to provide defense counsel for such employees in such suit and to indemnify him from any judgment rendered against him in such suit."*

16.     Defendant City of Reform is a municipal corporation situated in this jurisdiction. The city is a defendant in this action because, as detailed more specifically below, it maintains a policy, custom, and/or widespread practice of permissiveness regarding the excessive and/or deadly use of force by city officers against unarmed and non-dangerous citizens, thereby creating an independent basis of liability against the city pursuant to 42 U.S.C § 1983. The city is also responsible and liable under Ala. Code. § 11-47-24 to provide for defense. The relevant code section states, *"Whenever any employee of a municipal corporation of the State of Alabama shall be sued for damages arising out of the performance of his official duties, ...such government agency shall be authorized and required to provide defense counsel for such employees in such suit and to indemnify him from any judgment rendered against him in such suit."*

17.     Defendant Axon Enterprise, Inc. is a Delaware Corporation with its principal place of business in Scottsdale, Arizona, and licensed to do business in the State of Alabama and through its agents, servants and employees and in the ordinary course of business designed,

manufactured, sold, distributed, fabricated, assembled, bought, inspected, tested, serviced, marketed, warranted, and advertised Conducted Electrical Weapons ("CEWs"), commonly known as TASER weapons to the Carrollton, Gordo, and Reform Police Departments and the Pickens County Sheriff's Department.

18.     Within six (6) months of the date of the actions made the basis of this claim on August 22, 2021, Pickens County, the City of Carrollton, the Town of Gordo, and the City of Reform all were given notice of the potential claims made the basis of this lawsuit in accordance and in compliance with Alabama Code § 11-47-23 and § 11-47-192.

## FACTS

19.     At all relevant times giving rise to this complaint, Michael Broady, Jr. was a father to three minor children.

20.     Prior to the events described in this complaint, Michael Broady, Jr. had been taken in multiple times by the Pickens County Sheriff's Department, Carrollton Police Department, Gordo Police Department, and the Reform Police Department for minor, relatively harmless offenses. He was thus known personally to all of the departments listed above, and specifically by Defendants Herd and Homan. These Defendants (and all previously mentioned Defendants) knew that Broady was not dangerous or a threat to any person, that he had a history of mental health issues, and that he had a prior drug history.

21.    On or about August 22, 2021, Broady was at a house in Reform that was known to the Reform Police Department as one that sometimes harbored drug activity.

22.    Another individual at the house told Broady that he was going to kill Broady.

23.     Broady called 911 from another room in the house.

24.    Defendant Homan arrived at the house and immediately called for backup. The other individual officer defendants (Herd, Taylor, Doss, and Eddie) arrived shortly afterward.

25.    Broady exited the house without his shoes on.

26.    The officer-Defendants on the scene (Homan, Herd, Taylor, Doss, and Eddie, henceforth collectively "the officers") asked Broady who it was that was trying to kill him. Broady was initially reluctant to answer because he did not want any trouble from the individual.

27.    After about the fourth time he was asked, Broady told the officers that the individual who wanted to kill him was Trey Waldrop.

28.    Waldrop has a meth problem known to all of the agencies involved and to several of the officers.

29.    At no point did any of the officers go into the house to investigate or interview anyone else at the scene, including Waldrop.

30.     Broady knew that he had a pending child support issue for which he could be taken to jail. He also knew that it was not something that would have him in jail for a long time, and was willing to cooperate.

31.     At some point, the officers obtained a warrant for Broady's arrest.

32.     Broady asked what the police were going to do. The officers told him that they were going to detain him, and Broady voluntarily put his hands behind his back.

33.     The officers put Broady in handcuffs, but for the next 16 to 17 minutes, the officers did not put him in a police vehicle. Instead, they casually chatted and played on their phones, including with Broady.

34.     At some time after, Broady took his cell phone out of his pocket and dialed 911 again, to ask if he was going to be held on the child support issue.

35.     The officers asked Broady if he had called 911 again. When he answered no, turned around, and put the cell phone back in his pocket, the officers immediately tackled him, slamming him face-first down onto the rocky dirt road while he was already detained, in handcuffs, and compliant.

36.     Broady was already handcuffed and was posing no threat to the officers, to himself, or to any other person.

37.     The officers, including each individual officer, tased Broady numerous times and "dry-stunned" him while he was on the ground handcuffed, and already pinned down.

38.     After they tased him numerous times, the officers finally put Broady in the back of a police car. The officers did not put a seat belt on Broady.

39.     Broady was alive at this time.

40.     When the officers reached the Pickens County Jail, Broady was laying down and not moving in the back of the police car.

41.     Someone checked Broady's pulse and found that he was still alive.

42.     The officers delayed taking Broady to a nearby hospital.

43.     Broady's family has been told that the officers performed CPR on Broady while at the jail.

44.     The officers eventually drove Broady to the helipad at the closed Carrollton Hospital, where he was to be flown to another hospital.

45.     Broady was dead by the time they reached the helicopter landing pad at Carrollton Hospital.

46.     Broady's father spoke to Defendant Hall over the phone regarding his son's death. Hall told Broady's father that he could not give any information because everything needed to go through the State Bureau of Investigation.

47.     A body camera belonging to one of the officers was recording throughout the interaction with Broady.

48.    Upon information and belief, the body camera footage shows that either the officers did not perform CPR on Broady at the jail, that something else dangerous to Broady's health occurred at the jail, and/or that the officers ignored obvious signs that Broady's life was in danger at any time during the detention, detainment, arrest, and transport of Mr. Broady.

49.    A police officer who is also Broady's cousin was able to view the body camera footage subsequent to the incident made basis of this suit, provided by individuals knowledgeable of the occurrence.

50.    If Broady's cousin had not managed to see the body camera footage, the incident would have not been reported in full and would have been covered up by Defendants in a concerted effort to cover up egregious acts caused by those who are sworn to protect and serve individuals from horrific acts just as this, forming a  conspiracy.

51.    Plaintiff and Broady's family, despite numerous attempts, have never been told Broady's cause of death.

52.    At no time did any defendant raise any objection or suggest any alternative to assaulting Broady and tasing him numerous times or suggest any industry protocols or techniques from their training to deescalate the situation.

53.    Defendant Hall's actions or inactions in this instance constitute a policy, custom, and/or practice of the Pickens County Sheriff's Department.

54.     Defendant Hall, is or was, at or near the time of the incident made basis of this complaint the policy maker for Pickens County for law enforcement matters and thus his directives, actions or inactions constitute a policy, custom, or practice for Pickens County.

55.     Defendant Durrah's actions or inactions in this instance constitute a policy, custom, and/or practice of the Carrollton Police Department.

56.     Defendant Durrah, is or was, at or near the time of the incident made basis of this complaint, the policy maker, and thus his directives, actions or inactions constitute a policy, custom, or practice for the City of Carrollton.

57.     Defendant Stephenson's actions or inactions in this instance constitute a policy, custom and/or practice of the Gordo Police Department.

58.     Defendant Stephenson is or was, at or near the time of the incident made basis of this complaint the policy maker for the Town of Gordo for law enforcement matters and thus his directives, actions or inactions constitute a policy, custom, or practice for the Town of Gordo.

59.     Defendant Black's actions or inactions in this instance constitute a policy, custom, and/or practice of the Reform Police Department.

60.     Defendant Black is or was, at or near the time of the incident made basis of this complaint the policy maker for the City of Reform for law enforcement matters and thus

his directives, actions or inactions constitute a policy, custom, or practice for the City of Reform.

## COUNT ONE

### § 1983 FOURTEENTH AMENDMENT DEPRIVATION OF LIFE
### DEFENDANTS HERD, TAYLOR, HOMAN, DOSS, EDDIE

61.     Plaintiff adopts and incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

62.     Defendants' actions deprived Broady of his life without due process of law in violation of his Fourteenth Amendment rights.

63.     The officers knew that Broady posed no threat to any of them or to anybody else, and that a taser is supposed to be used only on those who are threatening or resisting.

64.     The officers knew that a taser can be considered deadly force if abused.

65.     The officers knew that Broady might be in a physically altered state due to some of the individual officers' knowledge of his drug problem and due to them finding him at a known drug location.

66.     The officers each had the duty to and the legal authority to attempt to stop the actions of the others or to dissociate himself from them in order to protect Broady, and none of them did so.

67.    The officers were never in a position where they needed to use deadly force to protect themselves, nor would a reasonable officer in their position have perceived themselves to be. The officers' unlawful actions created the conditions that resulted in Broady's death and were the proximate cause of his death.

68.    The officers' actions were deliberately indifferent to their potential consequences. The totality of the circumstances dictated that a reasonable officer in a similar situation would employ alternative approaches, of which Defendants were, or should have been, aware and which would have prevented Broady's unnecessary death.

69.    The individual Defendants' conduct, jointly and severally, was willful, malicious or done in bad faith.

70.    The individual Defendants' conduct, jointly and severally, exhibited unskillfulness and was wanton.

**WHEREFORE PREMISES CONSIDERED,** Plaintiff seeks compensatory damages as allowed by law; statutory damages pursuant to 42 U.S.C. §§ 1983 and 1988; Punitive damages as allowed by law; reasonable attorneys' fees, court cost and expenses pursuant to 42 U.S.C. § 1988 or otherwise appropriate; that the Court determine and declare the actions of Defendants to be improper, illegal and/or unconstitutional and as such void and without legal effect; and such other further, and different relief as to which Plaintiff is entitled.

## COUNT TWO

### § 1983 FOURTH AMENDMENT UNREASONABLE SEIZURE
### DEFENDANTS HERD, TAYLOR, HOMAN, DOSS, EDDIE

71.    Plaintiff adopts and incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

72.    The officers knew that Broady posed no threat to any of them or to anybody else, and that a taser is supposed to be used only on those who are threatening or resisting.

73.    The officers knew that a taser can be considered deadly force if abused.

74.    The officers knew that Broady might be in a physically altered state due to some of the individual officers' knowledge of his drug problem and due to them finding him at a known drug location.

75.    The officers each had the duty to and the legal authority to attempt to stop the actions of the others or to dissociate himself from them in order to protect Broady, and none of them did so.

76.    Courts have long recognized that the Fourth Amendment, prohibiting unreasonable seizures, is applicable to the states via the due process clause of the Fourteenth Amendment.

77.    When Broady was assaulted and tased, defendants seized him through the use of excessive and unreasonable force in violation of his rights under the Fourth Amendment.

78.     The officers were never in a position where they needed to use deadly force to protect themselves, nor would a reasonable officer in their position have perceived themselves to be. The officers' unlawful actions created the conditions that resulted in Broady's death and were the proximate cause of his death.

79.     The officers' actions were deliberately indifferent to their potential consequences. The totality of the circumstances dictated that a reasonable officer in a similar situation would employ alternative approaches, of which Defendants were, or should have been, aware and which would have prevented Broady's unnecessary death.

80.     The individual Defendants' conduct, jointly and severally, was willful, malicious or done in bad faith.

81.     The individual Defendants' conduct, jointly and severally, exhibited unskillfulness and was wanton.

**WHEREFORE PREMISES CONSIDERED,** Plaintiff seeks compensatory damages as allowed by law; statutory damages pursuant to 42 U.S.C. §§ 1983 and 1988; Punitive damages as allowed by law; reasonable attorneys' fees, court cost and expenses pursuant to 42 U.S.C. § 1988 or otherwise appropriate; that the Court determine and declare the actions of Defendants to be improper, illegal and/or unconstitutional and as such void and without legal effect; and such other further, and different relief as to which Plaintiff is entitled.

## COUNT THREE

### § 1983 FOURTH AMENDMENT EXCESSIVE FORCE
### DEFENDANTS HERD, TAYLOR, HOMAN, DOSS, EDDIE

82.    Plaintiff adopts and incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

83.    Acting in their official capacities, under color of state law and within the course and scope of their employment as law enforcement officers, and without just cause or provocation, the law enforcement Defendants assaulted and battered Broady by tasering him multiple times. The tasering of Broady constituted a seizure of his person through the application of force under the Fourth Amendment to the United States Constitution.

84.    Defendant Officers' use of force was not objectively reasonable in that they used more force than a reasonable police officer at the scene would have used under the circumstances. The use of force was clearly excessive in that they did not have any probable cause or reasonable suspicion to believe that Broady posed an immediate threat of harm either to themselves or to others.

85.    The officers knew that Broady posed no threat to any of them or to anybody else, and that a taser is supposed to be used only on those who are threatening or resisting.

86.    The officers knew that a taser can be considered deadly force if abused.

87.    The officers knew that Broady might be in a physically altered state due to some of the individual officers' knowledge of his drug problem and due to them finding him at a known drug location.

88.    The officers each had the duty to and the legal authority to attempt to stop the actions of the others or to dissociate himself from them in order to protect Broady, and none of them did so.

89.    Broady was not actively resisting arrest or attempting to flee at the time that he was tasered. There was no need for the use of a taser to preserve the peace, maintain order or to overcome any resistance to authority by the plaintiff.  Furthermore, Defendant officers' use of force was not objectively reasonable in that there was no need to taser Broady multiple times.

90.    As a direct result of Defendants' unlawful tasering of Broady, which was performed under color of state law, Broady suffered grievous bodily harm, was deprived of his right to be free from the unreasonable seizure of his person and the use of excessive force in violation of his rights under the Fourth and Fourteenth Amendments to the Constitution of the United States of America and 42 U.S.C. §1983.

91.    As a direct and proximate result of the conduct of the law enforcement Defendants as set forth above, Mr. Broady experienced pain and suffering.

92.     The acts of said Defendants as set forth above were intentional, wanton, malicious, or oppressive, or exhibited a reckless indifference to the federally protected rights of plaintiff, thus entitling plaintiff to an award of punitive damages against Defendants in order to punish Defendants and to deter them and others similarly situated from like conduct in the future.

93.     The officers were never in a position where they needed to use deadly force to protect themselves, nor would a reasonable officer in their position have perceived themselves to be. The officers' unlawful actions created the conditions that resulted in Broady's death and were the proximate cause of his death.

94.     The officers' actions were deliberately indifferent to their potential consequences. The totality of the circumstances dictated that a reasonable officer in a similar situation would employ alternative approaches, of which Defendants were, or should have been, aware and which would have prevented Broady's unnecessary death.

95.     The individual Defendants' conduct, jointly and severally, was willful, malicious or done in bad faith.

96.     The individual Defendants' conduct, jointly and severally, exhibited unskillfulness and was wanton.

97.     Plaintiff also seeks an award of attorney's fees and costs pursuant to 42 U.S.C. § 1983.

**WHEREFORE PREMISES CONSIDERED,** Plaintiff seeks compensatory damages as allowed by law; statutory damages pursuant to 42 U.S.C. §§ 1983 and 1988; Punitive damages as allowed by law; reasonable attorneys' fees, court cost and expenses pursuant to 42 U.S.C. § 1988 or otherwise appropriate; that the Court determine and declare the actions of Defendants to be improper, illegal and/or unconstitutional and as such void and without legal effect; and such other further, and different relief as to which Plaintiff is entitled.

## COUNT FOUR

### § 1983 FAILURE TO SUPERVISE, CONTROL OR DISCIPLINE AGAINST DEFENDANTS HALL, DURRAH, STEVENSON, BLACK, PICKENS COUNTY, CITY OF CARROLLTON, TOWN OF GORDO, CITY OF REFORM

98.     Plaintiff adopts and incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

99.     The City of Gordo has exclusive management and control of the policies and practices of the Gordo Police Department regarding the method and manner of using taser devices and is responsible for ensuring that members of the Gordo Police Department otherwise conduct themselves in a lawful manner in undertaking and performing their duties. Defendant City of Gordo is vested with the authority to establish policies or customs, practices and usages of the Gordo Police Department through supervision,

discipline and otherwise controlling the officers of the Gordo Police Department. The same is true for Pickens County and the Pickens County Sheriff's Department, the City of Carrollton and the Carrollton Police Department, and the City of Reform and the Reform Police Department.

100.   Stephenson was, at all relevant times, Gordo's policymaker in regard to such supervision and discipline and his actions and failings constitute Gordo's custom, policy or practice. The same is true for Hall and Pickens County, Durrah and City of Carrollton, and Black and City of Reform.

101.   Defendants violated Broady's rights by the custom, policy and or practice of failing to instruct, supervise, control, and discipline the police officers of the respective Police Departments or Sheriff's Department in the appropriate use of taser devices. Said custom, policy, practice and usage caused the deprivation of plaintiff's rights secured under the Fourth and Fourteenth Amendments to the United States Constitution, other laws of the United States, and the laws of the State of Alabama.

102.   There exists within the departmental Defendants policies or customs, practices and usages that are so pervasive that they constitute the policies of the department, such that they are and were the moving force behind and thereby caused the constitutional deprivations of Broady as have been set forth herein.

103.   The failure to discipline or supervise, and other failures at the respective police departments or sheriff's department has resulted in members of the department using excessive force as a matter of custom in violation of clearly established law. Defendants' failure to supervise or discipline its officers is not objectively reasonable.

104.   As a result of the municipal and county defendants' failure to discipline or supervise their officers, they deprived Broady of his rights to be free from excessive force and unlawful and unreasonable seizure and inadequate medical care in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States and remediable under 42 U.S.C. § 1983.

105.   Defendants Hall, Durrah, Stephenson, and Black acted with deliberate indifference by failing to ensure that appropriate protocols and techniques, well known to law enforcement, were followed in Broady's arrest. Their failure to do so resulted in his death.

106.   The responding municipalities and/or agencies identified in this complaint reviewed the conduct by its officers, found no problems, and took no action. The responding municipalities and/or agencies approved their officers' conduct and the basis for it. Indeed, Sheriff Hall and Chief Stevenson had been previously sued for excessive force against Wallace Wilder.

107.   Former Pickens County and Sheriff Hall have also been indicted in the death of Glenn Foster, Jr., who passed away on December 6, 2021 in the custody of the Pickens

County Sheriff's Office. Foster was found unresponsive in the back of a police car and his autopsy showed signs of "neck compressions and strangulation." Foster's death has gone unexplained.

108. Defendants, in particular Pickens County, Sheriff Hall, Gordo, and Chief Stephenson, thus have a pattern and practice of treating the lives of those they are sworn to protect with carelessness and contempt, particularly African Americans and/or other people of color.

109. The subordinates of Hall, Stevenson, Durrah, and Black violated Mr. Broady's constitutional rights, when Hall, Stevenson, Durrah, and Black failed to supervise them by allowing them to delineate, which ultimately caused the death of Mr. Broady. Hall, Stevenson, Durrah, and Black were deliberately indifferent to the known and obvious consequences of these policies, practices, and customs of which they were aware of and authorized, rather than acting to correct them. Hall, Stevenson, Durrah, and Black were aware of the facts from which a reasonable policy maker could draw the inference that a substantial risk of serious harm or death and violations of constitutional rights existed, and actually drew that inference. They were likewise aware of the pattern or similar incidents that occurred before and after Broady's death, although it was also apparent and obvious that a constitutional violation was a highly predictable consequence of the municipalities and/or agencies above delineated policies.

110.   Consequently, the policies delineated above were a moving force of Mr. Broady's constitutional deprivations and injuries, and caused him to suffer severe damages and die.

111.   The acts of Defendants as described above were intentional, wanton, malicious, evil, and oppressive, or exhibited a reckless indifference to the federally protected rights of the plaintiff, thus entitling plaintiff to an award of punitive damages against Defendants.

**WHEREFORE PREMISES CONSIDERED,** Plaintiff seeks compensatory damages as allowed by law; statutory damages pursuant to 42 U.S.C. §§ 1983 and 1988; Punitive damages as allowed by law; reasonable attorneys' fees, court cost and expenses pursuant to 42 U.S.C. § 1988 or otherwise appropriate; that the Court determine and declare the actions of Defendants to be improper, illegal and/or unconstitutional and as such void and without legal effect; and such other further, and different relief as to which Plaintiff is entitled.

## COUNT FIVE

### § 1983 FAILURE TO TRAIN/*CANTON* LIABILITY AGAINST DEFENDANTS HALL, DURRAH, STEVENSON, BLACK, PICKENS COUNTY, CITY OF CARROLLTON, TOWN OF GORDO, CITY OF REFORM

112.   Plaintiff adopts and incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

113.   Defendant municipalities failed to properly train or modify its training to Defendant Officers and its other officers, including but not limited to, matters related to the reasonable and appropriate use of force during such arrests, and intervention in the excessive use of force by fellow officers.

114.   Effectuating an arrest, using force to effectuate an arrest, and intervening in the use of force is a usual and recurring situation with which Defendant municipalities' law enforcement officers and other agents encounter on a regular basis.

115.   As such, Defendant municipalities were aware of a need for more and different training. Defendant municipalities specifically knew that its officers needed training regarding the use of restraint and tasing and was required to provide its officers with such training.

116.   Defendant municipalities also specifically knew that its officers needed specific training on the use of tasing.

117.   With deliberate indifference to the rights of citizens, Defendant municipalities failed to provide adequate training to its officers on the use of tasing.

118.   Defendant municipalities were aware that deprivation of the constitutional rights of citizens was likely to result from its lack of training and the failure to modify its training.

119.   As such, Defendant municipalities were deliberately indifferent and exhibited reckless disregard with respect to the potential violation of constitutional rights.

120.   The failure to train and/or to appropriately modify training constituted official Defendant municipalities policies, practices, or customs.

121.   Defendant municipalities' failure to train and/or to modify training was behind the acts and omissions the Defendant Officers made toward Mr. Broady.

122.   As a direct and proximate result of Defendant municipalities acts and omissions, Mr. Broady suffered injuries, experienced pain and suffering, and ultimately died.

123.   As a direct and proximate result of the acts and omissions described herein, Mr. Broady suffered compensatory and special damages as defined under federal common law and in an amount to be determined by jury.

124.   Plaintiff is entitled to recovery of costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

125.   The conduct described in all of the preceding paragraphs amount to wrongful acts and omissions pursuant to federal and state law.

126.   As a direct and proximate result of these wrongful acts and omissions, Mr. Broady's next of kin have suffered pecuniary loss, including medical and funeral expenses, loss of aid, counsel, guidance, advice, assistance, protection, and support in an amount to be determined by a jury.

**WHEREFORE PREMISES CONSIDERED,** Plaintiff seeks compensatory damages as allowed by law; statutory damages pursuant to 42 U.S.C. § 1983 and § 1988; Punitive

damages as allowed by law; reasonable attorneys' fees, court cost and expenses pursuant to 42 U.S.C. § 1988 or otherwise appropriate; that the Court determine and declare the actions of Defendants to be improper, illegal and/or unconstitutional and as such void and without legal effect; and such other further, and different relief as to which Plaintiff is entitled.

## COUNT SIX

### § 1983 FOURTEENTH AMENDMENT INADEQUATE MEDICAL CARE DEFENDANTS HERD, TAYLOR, HOMAN, DOSS, EDDIE

127.   Plaintiff adopts and incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

128.   The officers knew that Broady posed no threat to any of them or to anybody else, and that a taser is supposed to be used only on those who are threatening or resisting.

129.   The officers knew that a taser can be considered deadly force if abused.

130.   The officers knew that Broady might be in a physically altered state due to some of the individual officers' knowledge of his drug problem and due to them finding him at a known drug location.

131.   The officers each had the duty to and the legal authority to attempt to stop the actions of the others or to dissociate himself from them in order to protect Broady, and none of them did so.

132.   Defendants were aware that Broady was in a condition requiring medical attention when they arrived at the Pickens County jail.

133.   While Broady was in custody at the jail, his medical condition steadily deteriorated in ways that were obvious and known to those around him, including Defendants.

134.   The deterioration of Broady's physical and mental health was obviously significant enough for him to require medical attention and stabilization and Defendants were aware of the seriousness of the deterioration.

135.   The deterioration of Broady's physical and mental health was at least partially caused by the individual officer defendants' unjustified and excessive use of tasers on Broady.

136.   Defendants were deliberately indifferent to the medical needs and the increase in those needs as Broady's health and condition declined while in their care, custody and control, and delayed taking him to a place where he could receive medical care, and in doing so did act with malice or reckless indifference to Broady's federally protected rights and in doing so they intentionally violated Broady's constitutional rights.

137.   As a direct and proximate result of Defendants' actions and purposeful inactions, Broady was injured and damaged and ultimately lost his life, being deprived of his right to adequate medical care under the Fourteenth Amendment to the United States Constitution.

138.   The Plaintiff claims damages against the Defendants for said constitutional violations.

**WHEREFORE PREMISES CONSIDERED,** Plaintiff seeks compensatory damages as allowed by law; statutory damages pursuant to 42 U.S.C. §§ 1983 and 1988; Punitive damages as allowed by law; reasonable attorneys' fees, court cost and expenses pursuant to 42 U.S.C. § 1988 or otherwise appropriate; that the Court determine and declare the actions of Defendants to be improper, illegal and/or unconstitutional and as such void and without legal effect; and such other further, and different relief as to which Plaintiff is entitled.

## COUNT SEVEN

### WRONGFUL DEATH (NEGLIGENCE)
### DEFENDANTS HERD, TAYLOR, HOMAN, DOSS, EDDIE, HALL, DURRAH, STEPHENSON, BLACK, CARROLLTON, GORDO, REFORM, AND PICKENS COUNTY

139.   Plaintiff adopts and incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

140.   The officers knew that Broady posed no threat to any of them or to anybody else, and that a taser is supposed to be used only on those who are threatening or resisting.

141.   The officers knew that a taser can be considered deadly force if abused.

142.   The officers knew that Broady might be in a physically altered state due to some of the individual officers' knowledge of his drug problem and due to them finding him at a known drug location.

143.   The officers each had the duty to and the legal authority to attempt to stop the actions of the others or to dissociate himself from them in order to protect Broady, and none of them did so.

144.   Defendants Hall, Durrah, Stephenson, and Black acted with deliberate indifference by failing to ensure that appropriate protocols and techniques, well known to law enforcement, were followed in Broady's arrest. Their failure to do so resulted in his death.

145.   The officers were never in a position where they needed to use deadly force to protect themselves, nor would a reasonable officer in their position have perceived themselves to be. The officers' unlawful actions created the conditions that resulted in Broady's death and were the proximate cause of his death.

146.   The officers' actions were deliberately indifferent to their potential consequences. The totality of the circumstances dictated that a reasonable officer in a similar situation would employ alternative approaches, of which Defendants were, or should have been, aware and which would have prevented Broady's unnecessary death.

147.   The negligent acts of the defendants, recounted above, led to Plaintiff's unnecessary, avoidable, and wrongful death.

**WHEREFORE PREMISES CONSIDERED,** Plaintiff seeks punitive damages as allowed by law; costs and attorneys fees, and such other further, and different relief as to which Plaintiff is entitled.

## COUNT EIGHT

WRONGFUL DEATH
DEFENDANT AXON

148.   Plaintiff adopts and incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

149.   Defendant Axon manufactured the Tasers which were used to shock Broady causing his death.

150.   Axon had a legal duty to protect foreseeable targets of the Taser, including Broady, from its dangers.

151.   Axon breached this duty by negligently designing, manufacturing, assembling, distributing, and/or marketing the Taser, the result being an unreasonably dangerous product capable of causing serious injury and death.

152.   Defendant Axon knew or should have known by exercising reasonable care that the Taser weapon is inherently dangerous or has dangerous propensities. Tasers distribute an electrical shock of up to 50,000 volts at 26 watts to their target subject for a period of at least 5 seconds. Exposure to such levels of electric shock can cause death or serious injury if the Taser is misused or overused.

153.   In the reasonable and ordinary course of business, Axon established or should have established standards governing the use of Tasers to prevent serious injury or death.

154.   In the reasonable and ordinary course of business, Axon foresaw or should have foreseen the possible uses of the Taser, including misuse or overuse, as well as the potential damage or injury that might result from such possible uses, misuses, or overuses, including serious injury and death.

155.   Axon impliedly warranted that the Taser was fit for the general purpose for which it was sold, provided, or distributed.

156.   The County and City Defendants reasonably relied on that warranty and on Axon's skill and judgment in the Taser's manufacture, design, installation, maintenance, and monitoring.

157.   The Tasers used to shock Broady were in fact not fit for the general purpose for which they were sold, provided, or distributed; they were unreasonably dangerous, defective, and unsafe.

158.   Axon owed a duty of reasonable care to foreseeable subject targets of the Taser, including Broady, to adequately warn or instruct users of the Taser about the possible unreasonably dangerous uses.

159.   Axon breached its duty of reasonable care by failing to design and/or manufacture to avoid, and/or warn or instruct the County and City Defendants about, the danger of serious injury and death when using the Taser.

160.   Specifically, Axon failed to warn about the amount, duration, and electricity level of charges that a human body can safely tolerate without causing serious injury or death to the person, or to design and/or manufacture the Taser to avoid those unreasonable risks.

161.   Axon's breaches of duty directly and proximately caused Broady's death.

162.   The use of a Taser has been a factor in hundreds, if not thousands, of deaths since the product went on the market.

163.   Axon has faced numerous lawsuits regarding deaths caused by the Taser.

164.   People with disabilities are especially at risk of severe injury or death after being shocked by a Taser.

165.   Axon is aware of the increased risk that Tasers face to those with physical and/or mental disabilities and has been aware for many years.

166.   Axon nonetheless continues to provide Tasers to entities, such as County and City Defendants, that Axon knows or should know are likely to use the Taser on those who have physical or mental disabilities.

167.   Axon has profited on the scale of billions and billions of dollars, in large part due to the lack of caution and lack of care used when disseminating their unreasonably dangerous product.

**WHEREFORE PREMISES CONSIDERED,** Plaintiff seeks punitive damages as allowed by law; costs and attorneys fees, and such other further, and different relief as to which Plaintiff is entitled.

## COUNT NINE

### WRONGFUL DEATH (WANTONNESS)
### DEFENDANTS HERD, TAYLOR, HOMAN, DOSS, EDDIE, HALL, DURRAH, STEPHENSON, BLACK, CARROLLTON, GORDO, REFORM, AND PICKENS COUNTY

168.   Plaintiff adopts and incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

169.   The officers knew that Broady posed no threat to any of them or to anybody else, and that a taser is supposed to be used only on those who are threatening or resisting.

170.   The officers knew that a taser can be considered deadly force if abused.

171.   The officers knew that Broady might be in a physically altered state due to some of the individual officers' knowledge of his drug problem and due to them finding him at a known drug location.

172.   The officers each had the duty to and the legal authority to attempt to stop the actions of the others or to dissociate himself from them in order to protect Broady, and none of them did so.

173.   Defendants Hall, Durrah, Stephenson, and Black acted with deliberate indifference by failing to ensure that appropriate protocols and techniques, well known to law enforcement, were followed in Broady's arrest. Their failure to do so resulted in his death.

174.   The officers were never in a position where they needed to use deadly force to protect themselves, nor would a reasonable officer in their position have perceived themselves to be. The officers' unlawful actions created the conditions that resulted in Broady's death and were the proximate cause of his death.

175.   The officers' actions were deliberately indifferent to their potential consequences. The totality of the circumstances dictated that a reasonable officer in a similar situation would employ alternative approaches, of which Defendants were, or should have been, aware and which would have prevented Broady's unnecessary death.

176.   The individual Defendants' conduct, jointly and severally, was willful, malicious or done in bad faith.

177.   The individual Defendants' conduct, jointly and severally, exhibited unskillfulness and was wanton.

178.   The malicious, and/or intentional acts of the defendants, recounted above, led to Plaintiff's unnecessary, avoidable, and wrongful death.

**WHEREFORE PREMISES CONSIDERED,** Plaintiff seeks punitive damages as allowed by law; costs and attorneys fees, and such other further, and different relief as to which Plaintiff is entitled.

## COUNT TEN

### MUNICIPAL LIABILITY
### DEFENDANTS CARROLLTON, GORDO, AND REFORM

179.   Plaintiff adopts and incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

180.   Ala Code 11-47-190 states:

> **"No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality engaged in work therefor and while acting in the line of his or her duty, or unless the said injury or wrong was done or suffered through the neglect or carelessness or failure to remedy some defect in the streets, alleys, public ways, or buildings after the**

**same had been called to the attention of the council or other governing body or after the same had existed for such an unreasonable length of time as to raise a presumption of knowledge of such defect on the part of the council or other governing body and whenever the city or town shall be made liable for damages by reason of the unauthorized or wrongful acts or negligence, carelessness, or unskillfulness of any person or corporation, then such person or corporation shall be liable to an action on the same account by the party so injured. However, no recovery may be had under any judgment or combination of judgments, whether direct or by way of indemnity under Section 11- 47-24, or otherwise, arising out of a single occurrence, against a municipality, and/or any officer or officers, or employee or employees, or agents thereof, in excess of a total $100,000 per injured person up to a maximum of $300,000 per single occurrence, the limits set out in the provisions of Section 11-93-2 notwithstanding."**

181.    The actions of the individual defendants employed by municipal Defendants

Carrollton, Gordo, and Reform were neglectful, careless and/or reflected unskillfulness.

**WHEREFORE**, Plaintiffs seek the following relief:

(a)     Such compensatory and punitive damages as a jury may award;

(b)     Her costs and reasonable attorney fees for pursuing this action; and

(c)     Such other, further and different relief as to which she may
        be entitled.


## COUNT ELEVEN

### § 1983 CONSPIRACY TO VIOLATE PLAINTIFF'S FOURTH AMENDMENT RIGHTS
### DEFENDANTS HERD, TAYLOR, HOMAN, DOSS, EDDIE

182.   Plaintiff adopts and incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

183.   The individual Defendants reached a mutual understanding and conspired with each other to violate Plaintiff's civil rights. In furtherance of this conspiracy, the Defendants committed several overt acts including, but not limited to, the following:

  a. Tasing Broady;
  b. Failing to prevent or stop the physical assault and battery on Broady;
  c. Failing to warn Broady prior to the use of a Taser on him;
  d. Tasing Broady when it was not reasonably necessary to do so;
  e. Tasing Broady more times and for a greater duration than reasonably necessary or permissible;

184.   The officers knew that Broady posed no threat to any of them or to anybody else, and that a taser is to be used only on those who are threatening or resisting.

185.   The officers knew that a taser can be considered deadly force if abused.

186.   The officers knew that Broady might be in a physically altered state due to some of the individual officers' knowledge of his drug problem and due to them finding him at a known drug location.

187.   The officers each had the duty to and the legal authority to attempt to stop the actions of the others or to dissociate himself from them in order to protect Broady, and none of them did so.

188.   The officers were never in a position where they needed to use deadly force to protect themselves, nor would a reasonable officer in their position have perceived themselves to be. The officers' unlawful actions created the conditions that resulted in Broady's death and were the proximate cause of his death.

189.   The officers' actions were deliberately indifferent to their potential consequences. The totality of the circumstances dictated that a reasonable officer in a similar situation would employ alternative approaches, of which Defendants were, or should have been, aware and which would have prevented Broady's unnecessary death.

190.   As a direct and proximate result of the conspiracy between and among the defendant law enforcement officers, Broady was unreasonably seized in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

191.   As a direct and proximate result of the conspiracy and attack by the Defendants, Broady suffered numerous serious injuries as described herein.

**WHEREFORE PREMISES CONSIDERED,** Plaintiff seeks compensatory damages as allowed by law; statutory damages pursuant to 42 U.S.C. §§ 1983 and 1988; Punitive damages as allowed by law; reasonable attorneys' fees, court cost and expenses pursuant to 42 U.S.C. § 1988 or otherwise appropriate; that the Court determine and declare the actions of Defendants to be improper, illegal and/or unconstitutional and as such void and

without legal effect; and such other further, and different relief as to which Plaintiff is entitled.

## COUNT TWELVE

### FOURTH AMENDMENT § 1983 *MONELL* CLAIM
### DEFENDANTS CARROLLTON, GORDO, REFORM, AND PICKENS COUNTY

192.   Plaintiff adopts and incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

193.   The conduct by the officers identified in this Complaint and described herein constitutes excessive force in violation of the Fourth Amendment to the United States Constitution, as incorporated through the Fourteenth Amendment.

194.   At all material times, the officers acted under color of state law, as agents of the various municipalities and entities identified in the complaint.

195.   At all material times, the officers wore their official department uniforms and were acting within the course and scope of their duties as officers and agents of the municipalities and/or agencies identified in this complaint.

196.   The officers were never in a position where they needed to use deadly force to protect themselves, nor would a reasonable officer in their position have perceived themselves to be. The officers' unlawful actions created the conditions that resulted in Broady's death and were the proximate cause of his death.

197.   The officers' actions were deliberately indifferent to their potential consequences. The totality of the circumstances dictated that a reasonable officer in a similar situation would employ alternative approaches, of which Defendants were, or should have been, aware and which would have prevented Broady's unnecessary death.

198.   Defendants Todd Hall, Anthony Durrah, Johnny Stephenson, and Richard Black were at all relevant times policy makers for their respective municipalities and/or agencies.

199.   Thus, the municipalities and/or agencies identified in this complaint ratified the following practices in place when officers placed Mr. Broady under arrest and tased him, resulting in his death;

a    Placing Mr. Broady under arrest, in handcuffs, and not placing him in a patrol car for more than 17 minutes;

b    Laughing and joking with Mr. Broady for approximately 17 minutes;

c    Although the purpose of the visit by the officers was precipitated by a 911 call made by Mr. Broady, and the allegation made by Broady was that someone in the home had threatened to kill Mr. Broady, no responding officer followed up on the complaint, and no one visited the home to investigate his claims;

d    Even though the responding officers knew, had reason to believe, or should have known that the house in question was a house that was known to have

drug activity, no officer searched the home or questioned any of the persons inside to determine if in fact a person threatened to kill Mr. Broady;

e       After some time, as the officers who had placed Mr. Broady under arrest were talking to him and joking amongst themselves, while Broady was in handcuffs behind his back, Broady reached into his back pocket, accessed his phone, and placed another call to 911, the officers failed to properly secure and search Mr. Broady, after they placed him under arrest;

f       As Mr. Broady was making the phone call, the officers noticed that he was accessing his phone, they told him to hang up, and proceeded to tase Mr. Broady, even though he was in handcuffs behind his back, he was compliant with the officers, and he was posing no threat of harm to the officers, the public, or to himself;

g       After several officers tased him, the officers placed Mr. Broady in the back of a patrol vehicle, did not secure his seatbelt, and proceeded to take him to jail;

h       Training officers that when a detainee is compliant, in restraints, and posing no threat, the use of the tasers in those situations constitutes excessive force;

i       Inadequate training and policies concerning de-escalation techniques;

j       Inadequate training and policies concerning de-escalation of force;

k        Inadequate training and policies concerning handcuffing and the use of Tasers;

l        Hiring officers who were unqualified or known to be inappropriate for law enforcement;

m        Failing to terminate officers despite knowledge of repeated unconstitutional, unlawful, or improper conduct; and,

n        Encouraging escalation rather than de-escalation.

200.   The responding municipalities and/or agencies identified in this complaint reviewed the conduct by its officers, found no problems, and took no action. The responding municipalities and/or agencies approved their officers' conduct and the basis for it. Indeed, Sheriff Hall and Chief Stevenson had been previously sued for excessive force against Wallace Wilder, and that conduct was also ratified.

201.   Pickens County and Sheriff Hall have also been accused in the death of Glenn Foster, Jr., who passed away on December 6, 2021 in the custody of the Pickens County Sheriff's Office. Foster was found unresponsive in the back of a police car and his autopsy showed signs of "neck compressions and strangulation." Foster's death has gone unexplained.

202.   Defendants, in particular Pickens County, Sheriff Hall, Gordo, and Chief Stephenson, thus have a pattern and practice of treating the lives of those they are sworn to protect with carelessness and contempt, particularly Black men.

203.   The subordinates of Hall, Stevenson, Durrah, and Black violated Mr. Broady's constitutional rights, when Hall, Stevenson, Durrah, and Black failed to supervise them by allowing them to delineate, which ultimately caused the death of Mr. Broady. Hall, Stevenson, Durrah, and Black were deliberately indifferent to the known and obvious consequences of these policies, practices, and customs of which they were aware of and authorized, rather than acting to correct them. Hall, Stevenson, Durrah, and Black were aware of the facts from which a reasonable policy maker could draw the inference that a substantial risk of serious harm or death and violations of constitutional rights existed, and actually drew that inference. They were likewise aware of the pattern or similar incidents that occurred before and after Broady's death, although it was also apparent and obvious that a constitutional violation was a highly predictable consequence of the municipalities and/or agencies above delineated policies.

204.   Consequently, the policies delineated above were a moving force of Mr. Broady's constitutional deprivations and injuries, and caused him to suffer severe damages and die.

**WHEREFORE  PREMISES  CONSIDERED,** Plaintiff seeks compensatory damages as allowed by law; statutory damages pursuant to 42 U.S.C. §§ 1983 and 1988; Punitive damages as allowed by law; reasonable attorneys' fees, court cost and expenses pursuant to 42 U.S.C. § 1988 or otherwise appropriate; that the Court determine and declare the actions of Defendants to be improper, illegal and/or unconstitutional and as such void

and without legal effect; and such other further, and different relief as to which Plaintiff is entitled.

## COUNT THIRTEEN

### AMERICANS WITH DISABILITIES ACT CLAIM
### DEFENDANTS CARROLLTON, GORDO, REFORM, AND PICKENS COUNTY

205.   Plaintiff adopts and incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

206.   Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132.

207.   Title II of the ADA requires public entities that receive federal funding, like the County and City Defendants, to reasonably accommodate people with disabilities in all programs and services for which people with disabilities are otherwise qualified.

208.   For ADA purposes, policing is a program and service provided by Pickens County and the cities of Carrollton, Gordo, and Reform. Here, Defendants Heard, Taylor, Homan, Doss, and Eddie were providing the service of taking Broady into custody safely.

209.   Broady is a qualified individual with a disability within the meaning of the ADA in that he had physical and/or mental impairments that substantially limited one or more major life activities.

210.   Defendant County and Cities and their law enforcement officers knew that Broady had a disability as defined under the ADA.

211.   Broady is qualified to receive the same law enforcement services that the County and Cities provide to other non-disabled individuals.

212.   In particular, Broady is entitled to the benefit of a lawful exercise of police powers, including the right not to be subjected to unlawful and excessive uses of force and to be provided with proper medical care.

213.   The officers knew that Broady posed no threat to any of them or to anybody else, and that a taser is supposed to be used only on those who are threatening or resisting.

214.   The officers knew that a taser can be considered deadly force if abused.

215.   The officers knew that Broady might be in a physically altered state due to some of the individual officers' knowledge of his drug problem and due to them finding him at a known drug location.

216.   The officers each had the duty to and the legal authority to attempt to stop the actions of the others or to dissociate himself from them in order to protect Broady, and none of them did so.

217.   Defendants Heard, Taylor, Homan, Doss, and Eddie violated Title II of the ADA by intentionally failing to provide Broady the reasonable accommodations that were needed and available to allow Broady to receive the benefits of the programs and services of Pickens County and the cities of Carrollton, Gordo, and Reform. The officers should have accommodated Broady by:

a   Refraining from using violence against Broady as he had surrendered, the officers had a previous history with Broady and knew or should have known of his disabilities, and the violence came after he identified and/or otherwise notified the officers of his disabilities;

b   Placing Broady in a police vehicle after they had already placed handcuffs on him rather than making him continue to stand around;

c   Not ignoring Broady when he complained of the tasers' effect on his body and breathing; and

d   Using de-escalation tactics when Broady's apparent physical and/or mental disabilities left him unable to fully comply with their commands; and

e   Ensuring that Broady received proper medical care and treatment.

218.   Failure to provide these reasonable accommodations was intentional and illegal discrimination under the ADA, entitling Plaintiff to compensatory relief.

219.   Defendant County and Cities failed to properly train and/or supervise officers to ensure proper compliance with Title II of the ADA.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff seeks compensatory damages as allowed by law; punitive damages as allowed by law; reasonable attorneys' fees, court costs and expenses pursuant to 42 U.S.C. § 1988 or otherwise appropriate; that the court determine and declare the actions of Defendants to be improper, illegal, and/or unconstitutional and as such void and without legal effect; and such other further and different relief to which Plaintiff is entitled.

## COUNT FOURTEEN

### VIOLATION OF § 504 OF THE REHABILITATION ACT, 29 U.S.C. § 794 DEFENDANTS CARROLLTON, GORDO, REFORM, AND PICKENS COUNTY

220.   Plaintiff adopts and incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

221.   Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States,… shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…"

222.   Defendants County and Cities are public entities receiving federal funding, and as such are subject to the terms of the Rehabilitation Act.

223.   Defendants County and Cities violated Broady's right to be free from discrimination on the basis of his disability pursuant to the Rehabilitation Act.

224.   Broady is a qualified individual with a disability within the meaning of the Rehabilitation Act in that he had physical and/or mental impairments that substantially limited one or more major life activities.

225.   Defendants County and Cities and their law enforcement officers knew that Broady had a disability as defined under the Rehabilitation Act.

226.   Broady is qualified to receive the same law enforcement services that the County and Cities provide to other non-disabled individuals.

227.   In particular, Broady is entitled to the benefit of a lawful exercise of police powers, including the right not to be subjected to unlawful and excessive uses of force and to be provided with proper medical care.

228.   The officers knew that Broady posed no threat to any of them or to anybody else, and that a taser is supposed to be used only on those who are threatening or resisting.

229.   The officers knew that a taser can be considered deadly force if abused.

230.   The officers knew that Broady might be in a physically altered state due to some of the individual officers' knowledge of his drug problem and due to them finding him at a known drug location.

231.   The officers each had the duty to and the legal authority to attempt to stop the actions of the others or to dissociate himself from them in order to protect Broady, and none of them did so.

232.   Defendants Heard, Taylor, Homan, Doss, and Eddie violated Title II of the ADA by intentionally failing to provide Broady the reasonable accommodations that were needed and available to allow Broady to receive the benefits of the programs and services of Pickens County and the cities of Carrollton, Gordo, and Reform. The officers should have accommodated Broady by:

a   Refraining from using violence against Broady as he had surrendered, the officers had a previous history with Broady and knew or should have known of his disabilities, and the violence came after he identified and/or otherwise notified the officers of his disabilities;

b   Placing Broady in a police vehicle after they had already placed handcuffs on him rather than making him continue to stand around;

c   Not ignoring Broady when he complained of the tasers' effect on his body and breathing; and

d   Using de-escalation tactics when Broady's apparent physical and/or mental disabilities left him unable to fully comply with their commands.

e   Ensuring that Broady received proper medical care and treatment.

233. Failure to provide these reasonable accommodations was intentional and illegal discrimination under the ADA, entitling Plaintiff to compensatory relief.

234. Defendant County and Cities failed to properly train and/or supervise officers to ensure proper compliance with Title II of the ADA.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff seeks compensatory damages as allowed by law; punitive damages as allowed by law; reasonable attorneys' fees, court costs and expenses pursuant to 42 U.S.C. § 1988 or otherwise appropriate; that the court determine and declare the actions of Defendants to be improper, illegal, and/or unconstitutional and as such void and without legal effect; and such other further and different relief to which Plaintiff is entitled.

## COUNT FIFTEEN

### VIOLATION OF THE ALABAMA PUBLIC RECORDS LAW
### AGAINST DEFENDANTS CARROLLTON, GORDO, REFORM, AND PICKENS COUNTY

235. Plaintiff adopts and incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

236. The Alabama Public Records Law, Ala. Code § 36-12-40, provides the public with "a right to inspect and take a copy of any public writing of this state, except as otherwise expressly provided by statute."

237.   Plaintiff has requested multiple records from all of the Defendants, including but not limited to other entities not specifically listed in this Compliant. These records are public writings within the meaning of Ala. Code § 36-12-40 and are not subject to any exemption from disclosure.

238.   Defendants have refused to give Plaintiff access to, or copies of the records requested, or otherwise obstructed Plaintiff's access to said records.

239.   Under the Alabama Public Record Law, "the party refusing disclosure shall have the burden of proving that the writings or records sought are within an exception and warrant nondisclosure of them." *Chambers v. Birmingham News Co.*, 552 So. 2d 854, 856–57 (Ala. 1989). These exceptions "must be strictly construed." Id. at 856.

240.   Defendants have not met their burden to justify refusing disclosure.

241.   Plaintiff has a statutory right to the public writings she seeks, and there is no legal basis for the Defendants' failure to disclose them.

242.   It is in the interest of the people of Alabama that these records be made available to the public.

243.   By failing to give Plaintiff access to and copies of the requested public writings within a reasonable time, Defendants have violated and are continuing to violate Ala. Code § 36-12-40 and Plaintiff's rights thereunder.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff requests that the court declare that the requested records are public writings within the meaning of Alabama's Public Records Law as defined by *Stone v. Consolidated Publishing Co.*, 404 So. 2d 678 (Ala. 1981) (citing Ala. Code § 36-12-2) and other decisions of the Alabama courts, that the court declare the Defendants' withholding of the requested public records unlawful and order Defendants to immediately make the requested records available to Plaintiff; compensatory damages as allowed by law; punitive damages as allowed by law; reasonable attorneys' fees, court costs and expenses; and such other further and different relief to which Plaintiff is entitled.

**Respectfully** submitted this the 18th day of August 2023,


*Johnathan F. Austin*
hnathan F. Austin
torney for Plaintiff

JSTIN LAW, P.C.
D. Box 321173
rmingham, AL 35212
: (205) 538-0169
x: (205) 707-1168
stin@jaustinlawpc.com

*Richard A. Rice*
chard A. Rice
torney for Plaintiff

IE RICE FIRM, LLC
5 Richard Arrington Jr. Blvd. North
rmingham, AL 35203
: (205) 618-8733
x: (888) 391-7193
ce@rice-lawfirm.com

**Attorneys for Plaintiff**

JURY DEMAND