# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | | |
|---|---|---|
| **DeQUITA DENISE BROADY, as** | ) | |
| **the personal representative of the** | ) | |
| **Estate of MICHAEL BROADY, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **7:23-cv-01097-LSC** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DEPUTY HERD, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OF OPINION

Michael Broady, Jr. (hereinafter "Broady") died while in the custody of several police officers. DeQuita Broady, his sister and personal representative, brought this action, alleging fifteen state and federal causes of action, against Deputy Herd, Deputy Taylor, Officer Homan, Officer Doss, Officer Anderson[1], Sheriff Hall, Chief Durrah, Chief Stephenson, Chief Black, Pickens County,[2] Town of Carrollton, City of Gordo, City of Reform, and Axon Enterprise, Inc. (hereinafter "Axon").

---

[1] Plaintiff refers to Officer Anderson as "Officer Eddie" in the Amended Complaint, but the Town of Carrollton has clarified that "Officer Eddie" is actually Officer Anderson. (Doc. 31 at 2 n.1.)

[2] Pickens County was voluntarily dismissed as a defendant on February 29, 2024. (Doc. 58.)

Presently before the Court are eight motions: the City of Reform's Motion to Dismiss State Law Claims in Plaintiff's First Amended Complaint (Doc. 26); Officer Homan, Richard Black, and the City of Reform's (collectively, "Reform Defendants") Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 27); Chief Johnny Stephenson's Motion to Dismiss First Amended Complaint (Doc. 28); Motion to Dismiss by Defendant Town of Carrollton, Alabama (Doc. 30); Motion to Dismiss by Defendant Chief Anthony Durrah (Doc. 31); Axon's Motion to Dismiss Amended Complaint (Doc. 33); Motion to Dismiss First Amended Complaint on Behalf of Defendants Jeremy Herd and Taylor Gregory (Doc. 48); and Defendant Todd Hall's Motion to Strike Paragraph 111 of the First Amended Complaint, and Motion to Dismiss First Amended Complaint (Doc. 50).

For the reasons stated below, the Court grants Axon's and Chief Stephenson's Motions. (Doc. 33; Doc. 28.) The Court grants in part and denies in part the City of Reform's Motion to Dismiss State Law Claims and the Town of Carrollton's Motion. (Doc. 26; Doc. 30.) The Court is still in the process of evaluating the remaining motions (Doc. 27; Doc. 31; Doc. 48; Doc. 50[3]) and will rule on them in due time.

---

[3] Docs. 48 and 50 are currently being briefed by the relevant parties.

## I.    FACTUAL BACKGROUND[4]

On August 22, 2021, Broady was at a house in Reform when an individual told Broady that he was going to kill him. (Doc. 25 ¶¶ 21–22.) Broady called 911, and Officer Homan responded to the call. (*Id.* ¶¶ 23–24.) Officer Homan then called for backup and Officers Herd, Taylor, Doss, and Anderson arrived shortly thereafter. (*Id.* ¶ 24.) Sheriff Hall, Chief Durrah, Chief Stephenson, and Chief Black were never physically present on the scene.

The responding officers then obtained a warrant for Broady's arrest after learning that Broady had an outstanding child support issue. (*Id.* ¶¶ 30–31.) Broady was voluntarily handcuffed but was not immediately placed into a police vehicle. (*Id.* ¶ 33.) At some point, Broady called 911 again and asked if he was going to be held on the child support issue. (*Id.* ¶ 34.) The officers asked Broady if he had dialed 911 again, to which Broady answered "no." (*Id.* ¶ 35.) It is alleged that "the officers immediately tackled [Broady], slamming him face-first down onto the rocky dirt road." (*Id.*) Plaintiff further alleges that each officer "tased Broady numerous times and 'dry-stunned' him while he was on the ground handcuffed." (*Id.* ¶ 37.) Plaintiff

---

[4] In evaluating a motion to dismiss, this Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012) (quoting *Ironworkers Loc. Union 68 v. AstraZeneca Pharm., LP*, 634 F.3d 1352, 1359 (11th Cir. 2011)). Therefore, the following "facts" are taken from the allegations contained in Plaintiff's Amended Complaint, and the Court makes no ruling on their veracity. These are "facts" for purposes of evaluating the Motions to Dismiss only.

also claims that "[w]hen the tasers made contact with Broady, the tasers provided more voltage to the 'taser prong,' beyond their capacity and at fatal levels, and/or the tasers malfunctioned while some of the officers were deploying their weapons." (*Id.* ¶ 39.)

The officers then placed Broady into the vehicle, but by the time they reached the Pickens County Jail, Broady was not moving. (*Id.* ¶¶ 40, 42.) Broady was still alive at this time (*Id.* ¶ 43), but "[t]he officers delayed taking Broady to the nearby hospital" (*Id.* ¶ 44). At some point while at the jail, the officers allegedly performed CPR. (*Id.* ¶ 45.) "The officers eventually drove Broady to the helipad at the closed Carrollton Hospital, where he was to be flown to another hospital." (*Id.* ¶ 46.) By the time they reached the helipad, Broady was dead. (*Id.* ¶ 47.)

## II. STANDARD OF REVIEW

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, to withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint "must plead enough facts to state a claim to relief that is plausible on its face." *Ray v. Spirit Airlines, Inc*., 836 F.3d 1340, 1347–48 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Stated another way, the factual allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Edwards v. Prime, Inc*., 602 F.3d 1276, 1291 (11th Cir. 2010). A complaint that "succeeds in identifying facts that are suggestive enough to render [the necessary elements of a claim] plausible" will survive a motion to dismiss. *Watts v. Fla. Int'l Univ*., 495 F.3d 1289, 1296 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556) (internal quotation marks omitted).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id*. Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id*. If the pleading "contain[s] enough information regarding the material elements of a cause of action to support recovery under some 'viable legal theory,'" it satisfies the notice pleading standard. *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011) (quoting *Roe v. Aware Woman Ctr. for Choice, Inc*., 253 F.3d 678, 683–84 (11th Cir. 2001)).

## III. ANALYSIS

**A. Axon's Motion to Dismiss Count Eight and Chief Stephenson's Motion to Dismiss Counts Seven and Nine are due to be granted because Plaintiff's claims are time-barred.**

Counts Seven, Eight, and Nine are all wrongful death claims arising under Alabama state law. Count Eight is the only claim asserted against Axon, while Counts Seven and Nine are the only state law claims asserted against Chief Stephenson. Both Axon and Chief Stephenson, the Chief of Police for the Town of Gordo, have moved to dismiss these claims due to Plaintiff's failure to commence the action within the "statute of limitations." As a threshold matter, when a federal court exercises supplemental jurisdiction over a state law claim, the state's substantive law, including the statute of limitations and tolling rules, apply. *See McDowell v. Brown*, 392 F.3d 1283, 1294 (11th Cir. 2004); *Cambridge Mut. Fire Ins. Co. v. City of Claxton*, 720 F.2d 1230, 1232 (11th Cir. 1983). Accordingly, Alabama's substantive law governs Counts Seven, Eight, and Nine.

Ala. Code § 6-5-410 requires all wrongful death actions to be commenced within two years of the decedent's death. Ala. Code § 6-5-410 is a "statute of creation," whereby it is "the essence of the cause of action." *Pollard v. H.C. P'ship*, 309 So. 3d 1189, 1194 (Ala. 2020) (quoting *Wood v. Wayman*, 47 So. 3d 1212, 1218 (Ala. 2010)); *Ex parte FMC Corp.*, 599 So.2d 592, 594 (Ala. 1992) ("It is well settled that the time limitation set out in § 6-5-410(d) is part of the substantive cause of

6

action."). It is not a statute of limitations, and it is not subject to tolling. *See Pollard*, 309 So. 3d at 1194 (citing *Wood*, 47 So. 3d at 1218).

Plaintiff filed its initial Complaint on August 18, 2023. (Doc. 1.) As Broady died on August 22, 2021, Plaintiff did file the initial Complaint within the two years prescribed by Ala. Code § 6-5-410. But to commence an action for statute of limitations purposes or for the purposes of Ala. Code § 6-5-410, "the complaint must be filed *and* there must also exist a 'bona fide intent to have it immediately served.'" *Precise v. Edwards*, 60 So. 3d 228, 231 (Ala. 2010) (quoting *Dunnam v. Ovbiagele*, 814 So. 2d 232, 237–38 (Ala. 2001); *see also Dukes v. Jowers*, 584 So. 2d 524, 525 (Ala. 1991). "[W]hen the plaintiff, at the time of filing, does not perform all the tasks required to effectuate service and delays a part of the process, a lack of the required bona fide intent to serve the defendant is evidenced." *Precise*, 60 So. 3d at 233. For example, when a plaintiff fails to provide the clerk with all the requisite information to serve by certified mail or neglects to pay the filing fee, that plaintiff will not have evidenced a bona fide intent to have the defendant immediately served. *See Dukes*, 584 So. 2d at 526; *De-Gas, Inc. v. Midland Res.*, 470 So. 2d 1218, 1221–22 (Ala. 1985).

It is undisputed that Plaintiff did not pay the filing fee until September 15, 2023: nearly a month after filing the initial complaint and well outside the two-year requirement of Ala. Code § 6-5-410. (*Docket Entry Entered 09/15/2023*; Doc. 33 at

4; Doc. 32 at 6; Doc. 41.) Plaintiff's counsel even acknowledged in an email with the Court's staff, dated September 7, 2023, that he had not yet paid the filing fee. Further, the summons to serve all defendants by certified mail was not issued until October 11, 2023. (Doc. 2.) It is therefore evident that Plaintiff did not commence this action within two years of Broady's death. Count Eight against Axon and Counts Seven and Nine against Chief Stephenson are time-barred.[5]

**B. The City of Reform and the Town of Carrollton's Motions to Dismiss Counts Seven, Nine, and Ten, are due to be granted because Plaintiff failed to comply with the notice-of-claim statutes. The Motions to Dismiss Count Fifteen are not due to be granted.[6]**

The only state law claims asserted against the City of Reform and the Town of Carrollton are Counts Seven, Nine, Ten, and Fifteen. The City of Reform and the Town of Carrollton contend that these counts are due to be dismissed for failure to comply with the notice-of-claim statutes. *See* Ala. Code § 11-47-192; Ala. Code 11-47-23. As stated in Ala. Code § 11-47-192:

---

[5] It also appears that Chief Stephenson is entitled to peace officer/state agent immunity, at least as to Count Seven. In Counts Seven and Nine, Plaintiff alleges that Chief Stephenson "fail[ed] to ensure that appropriate protocols and techniques, well known to law enforcement, were followed in Broady's arrest." (Doc. 25 ¶¶ 148, 177.) These allegations appear to refer to Chief Stephenson's training and supervising his subordinates, both of which are discretionary activities for which immunity attaches unless an exception, such as willful misconduct, applies. *See Howard v. City of Atmore*, 887 So. 2d 201, 210 (Ala. 2003) (citing *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000)). Unlike Count Nine, Plaintiff only alleges that Chief Stephenson's conduct was negligent in Count Seven and therefore he is entitled to immunity on that count.

[6] The City of Reform and the Town of Carrollton did not plead that Counts Seven and Nine were barred by the statute of limitations. If they had, for the same reasons set out in the above section, such motions would be due to be granted.

No recovery shall be had against any city or town on a claim for personal injury received, unless a sworn statement be filed with the clerk by the party injured or his personal representative in case of his death stating substantially the manner in which the injury was received, the day and time and the place where the accident occurred and the damages claimed.

Further, as stated in Ala. Code § 11-47-23, "Claims for damages growing out of torts shall be presented within six months from the accrual thereof or shall be barred." Counts Seven and Nine, which are wrongful death claims, and Count Ten, a municipal liability claim premised on the alleged negligence, carelessness, or unskillfulness of the municipalities' employees (Doc. 25 ¶ 185), are unquestionably tort claims that are subject to the notice-of-claim statutes. However, Count Fifteen is brought pursuant to the Alabama Public Records Law, and it is not clear whether it is grounded in tort and thus subject to the notice-of-claim statutes. As such, Count Fifteen will not be dismissed for failure to comply with the notice-of-claim statutes at this juncture.

Notice-of-claim statutes are not strictly construed, but plaintiffs must substantially comply with these statutes by either giving notice of their claims or filing an action within the six-month period. *See Stabler v. City of Mobile*, 844 So. 2d 555, 564 (Ala. 2002); *Hill v. City of Huntsville*, 590 So. 2d 876, 876–77 (Ala. 1991). Even if a municipality has actual knowledge of a potential claim, that does not excuse a plaintiff's failure to substantially comply with the notice-of-claim requirement. *See Stabler*, 844 So. 2d at 567.

Plaintiff states that the claims against the municipalities accrued on August 22, 2021, which was the date of Broady's death. (Doc. 41 at 5.) However, Plaintiff also argues that under Ala. Code § 6-2-14 that "the time between a person's death and the opening of a person's estate, up to a six-month period, is not to count against the executor of the estate" and "the notice-of-claim requirement ought to be tolled during that period as well." (*Id.* at 6.) This tolling argument for the notice-of-claim requirement is without merit. But regardless, measuring from either date, Plaintiff did not substantially comply with the notice-of-claim requirement within six months of "accrual."[7] It is undisputed that Plaintiff's counsel sent a notice-of-claim, which was unsworn and unsigned by the Plaintiff (Doc. 26, "Exhibit A" and "Exhibit 1"; Doc. 32-1), to the City of Reform and the Town of Carrollton on September 14, 2021 (Doc. 25 ¶ 53).[8]  (Doc. 41 at 3–6.) This action was not filed in this Court until August 18, 2023. (Doc. 1.)

---

[7] The Court notes "that—in regard to actions that must be brought by a personal representative— for the purposes of § 11-47-23, a wrongful death cause of action accrues at the time the personal representative is appointed." *Buck v. City of Rainsville*, 572 So. 2d 419, 423 (Ala. 1990).  Although, "[t]o avoid misunderstanding," measuring accrual at this point for the notice-of-claim statutes "in no way affects the remedy restriction provision of § 6–5–410, which requires that a wrongful death action be brought within two years after the death of the testator or intestate." *Id.* at 424. Therefore, for Counts Seven and Nine, the proper date of accrual in terms of the notice-of-claim requirement was likely January 31, 2022, which is when the City of Reform states that the Probate Court of Lamar County issued Letters of Administration. (Doc. 45 at 8.) Regardless, Plaintiff still failed to substantially comply with the notice-of-claim requirement.

[8] The Eleventh Circuit has held that "a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment . . . if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed[,] . . . meaning the authenticity of the document is not challenged." *Horsley v. Feldt*, 304 F.3d 1124, 1134 (11th Cir. 2002). The

By failing to submit a *sworn* statement with the municipalities or file this action within six months of the claims' accrual, Plaintiff failed to substantially comply with the Ala. Code § 11-47-192's dictate to file a "sworn statement . . . with the clerk by the party injured or his personal representative in case of his death stating substantially the manner in which the injury was received, the day and time and the place where the accident occurred and the damages claimed." *See also Arceo v. Beedle*, No. 2:06-cv-4810-TMP, 2007 WL 9717216, at *6 (N.D. Ala. Dec. 6, 2007) ("'[S]ubstantial' compliance requires something more than an unsworn letter from counsel."). While the Alabama Supreme Court excused a plaintiff's failure to file a sworn statement with a municipality in *City of Montgomery v. Weldon*, that excusal was allowed under an estoppel theory because the municipality had actively misled the, at the time, *pro se* plaintiff "by representing to him that his claim is sufficiently filed and perfected, and by urging him not to hire an attorney or take any further action for a year." 195 So. 2d 110, 112–13 (Ala. 1967). In contrast, while Plaintiff does allege that the municipalities confirmed that they received the notices, "thus giving Plaintiff the illusory satisfaction that something was being done" (Doc.

---

notice-of-claim letters here are undoubtedly central to Plaintiff's claims and the authenticity has not been challenged.

41 at 5),[9] this is a far cry from the active deception of a *pro se* plaintiff that occurred in *Weldon*, and it does not excuse Plaintiff's failure to file a sworn notice.

Accordingly, because Plaintiff never filed a sworn notice with the municipalities and because Plaintiff did not file this case until August 18, 2023, which is well beyond six months of August 22, 2021, Plaintiff did not substantially comply with § 11-47-192 and § 11-47-23. For that reason, Plaintiff cannot pursue Counts Seven, Nine, or Ten against the City of Reform or the Town of Carrollton.

## C. The Town of Carrollton's Motion to Dismiss Counts Five and Twelve is due to be granted because Plaintiff has not alleged that the Town caused a constitutional violation.[10]

The Town of Carrollton further argues that Count Five: § 1983 Failure to Train/*Canton* Liability and Count Twelve: Fourth Amendment § 1983 *Monell* Claim are due to be dismissed against it because Plaintiff has failed to plead a valid basis for holding it liable consistent with *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978) and its progeny. (Doc. 32 at 4.)[11] Under *Monell*, municipal liability will not

---

[9] The City of Reform denies that its clerk confirmed Plaintiff's notice of claim and points out that Plaintiff's citation to the City's "confirmation" is a preservation letter from the City's counsel. (Doc. 45 at 6 (citing Doc. 41-4).)

[10] The Town of Carrollton has also moved to dismiss the entire Amended Complaint for being a "shotgun pleading." (Doc. 30.) The Court declines to dismiss the entire Amended Complaint for that reason.

[11] The Town of Carrollton has not clearly moved to dismiss the other § 1983 claim asserted against it—Count Four: § 1983 Failure to Supervise, Control or Discipline—for failure to state a claim under *Monell*.

attach under a theory of vicarious liability. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Rather, a municipality will only be liable under § 1983 when the "municipality *itself* causes the constitutional violation at issue" through the execution of its official policy or custom. *Id.* Further, the municipality's custom or policy must be enacted "with the requisite degree of culpability[,] . . . with deliberate indifference to its known or obvious consequences." *McDowell v. Brown*, 392 F.3d 1283, 1291 (quoting *Davis ex rel. Doe v. Dekalb Cnty. Sch. Dist.*, 233 F.3d 1367, 1375–76 (11th Cir. 2000)).

In Count Twelve, Plaintiff primarily alleges that Chief Durrah, the Chief of Police and a "policy maker" for the Town of Carrollton, "ratified" a series of allegedly unconstitutional practices. (Doc. 25 ¶¶ 202–03.) To state a *Monell* claim under a ratification theory, a plaintiff must allege that "policymakers have had the opportunity to review subordinates' decisions before they become final." *Thomas ex. rel. Thomas v. Roberts*, 261 F.3d 1160, 1174 (11th Cir. 2001), *vacated on other grounds by Thomas v. Roberts*, 536 U.S. 953 (2002). The policymaker must ratify not only the unconstitutional decision but also the unconstitutional basis for the decision. *See Matthews v. Columbia County*, 294 F.3d 1294, 1297 (11th Cir. 2002). Plaintiff lists fourteen allegedly unconstitutional decisions that Chief Durrah ratified on the Town's behalf "when [Officer Anderson] placed Mr. Broady under arrest and tased him, resulting in his death." (Doc. 25 ¶ 203.) But as Chief Durrah never had

13

the chance to review these decisions prior to Officer Anderson's alleged actions, these allegations cannot give rise to claim under the ratification theory.

Even if the Court were to evaluate some of the allegations within Count Twelve as a general *Monell* claim, rather than under the ratification theory, those allegations would still not state a claim. For instance, Plaintiff alleges "[i]nadequate training and policies concerning de-escalation"; "[i]nadequate training and policies concerning handcuffs and the use of Tasers"; hiring unqualified officers; "[f]ailing to terminate officers despite knowledge of repeated unconstitutional, unlawful, or improper conduct"; and "[e]ncouraging escalation rather than de-escalation." (*Id.*)

The Court will evaluate whether the allegations regarding failure to train state a claim below, and the Court will now analyze whether the allegations regarding hiring, failing to terminate, and encouraging escalation state a general *Monell* claim. First, Plaintiff has not alleged any previous misconduct by or specific lack of qualification of Officer Anderson that would show Chief Durrah was "deliberately indifferent to the risk that a violation of a particular constitutional or statutory right [would] follow" from hiring or failing to terminate him. *See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 411 (1997) (explaining that a sheriff's hiring decision was not deliberately indifferent because, even though the sheriff failed to adequately review the deputy's record, it was not plainly obvious that excessive force would be used as a consequence of that hiring decision). Regarding the

14

allegation that Chief Durrah "encouraged escalation rather than de-escalation," Plaintiff's allegation is plainly conclusory. Further, this allegation does not show how such a policy would have directly and obviously caused the alleged excessive force in this case. According to Plaintiff's own allegations, at the time the alleged excessive force began, Broady was "already detained, in handcuffs, and compliant." (Doc. 25 ¶ 35.) Holding the Town liable for any "escalation" would impermissibly hold the Town vicariously liable for its officer's own actions.

Now to training, which Plaintiff pleads as a basis for liability in Count Five and Twelve, and supervision, which Plaintiff also alleges in Count Twelve. "[T]he inadequacy of police training [or supervision] may serve as the basis for § 1983 [municipal] liability only where the failure to train [or supervise] amounts to deliberate indifference to the rights of persons with whom the police come into contact," and this failure actually causes the constitutional violation. *City of Canton*, 489 U.S. at 388; *see also Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). To show deliberate indifference, "a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold*, 151 F.3d at 1350. To establish that the municipality was on notice of the need for further training, a plaintiff generally must allege a "pattern of similar constitutional violations," *Connick v. Thompson*, 563 U.S. 51, 62 (2011), or possibly "even a single

earlier constitutional violation," *Am. Fed'n of Lab. & Cong. Of Indus. Orgs.*, 637 F.3d at 1189. But in *City of Canton v. Harris*, "the Supreme Court left open the possibility that a need to train could be 'so obvious,' resulting in a City's being liable without a pattern of prior constitutional violations." *Gold*, 151 F.3d at 1352. The Supreme Court in *City of Canton* provided the hypothetical example of the obvious need to train "officers who are armed on how to deal with fleeing felons, given the frequency of that particular occurrence," *Cooper v. Rutherford*, 828 F. App'x 619, 622 (11th Cir. 2020), and the "predictability that an officer lacking specific tools to handle that situation will violate citizens' rights," *Bryan Cnty.*, 520 U.S. at 409. Other than that one hypothetical example, it does not appear that the Supreme Court or the Eleventh Circuit has provided another example of when the need to train could be "so obvious."

Plaintiff specifically alleges that The Town's training was deficient regarding tasing (Doc. 25 ¶¶ 121, 203), the use of restraint and handcuffing (*Id.* ¶¶ 119, 203), escalation (*Id.* ¶ 203), and "the reasonable and appropriate use of force . . . and intervention in the excessive use of force by fellow officers" (*Id.* ¶ 117). Plaintiff also alleges that Chief Durrah's failure to supervise Officer Anderson resulted in deliberate indifference. (*Id.* ¶ 207.) However, Plaintiff has not alleged a single instance of similar constitutional violations by the Town's officers that would put Chief Durrah or any other Town policy makers on notice of the need for more

training or supervision. The Court further does not believe that this case falls into the Supreme Court's hypothetical category of cases where the need for more training or supervision was just "so obvious." Again, Plaintiff alleges that the defendant officers tased Broady repeatedly while he was handcuffed and compliant. This type of behavior is not an occurrence that is so frequent that it is highly predictable that officers would violate Broady's rights without further training or supervision. Rather, "[w]here the proper response . . . is obvious to all without training or supervision, then the failure to train or supervise is generally not 'so likely' to produce a wrong decision as to support an inference of deliberate indifference by city policymakers to the need to train or supervise." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 490 (11th Cir. 1997) (quoting *Walker v. City of New York*, 974 F.2d 293, 299–300 (2d Cir. 1992), *cert. denied*, 507 U.S. 972 (1993)). Accordingly, the Court cannot say that, under the facts alleged, the Amended Complaint demonstrates that the Town was deliberately indifferent in failing to further train or supervise Officer Anderson. Counts Five and Twelve are due to be dismissed against the Town.

### D. Chief Stephenson is entitled to qualified immunity on Counts Four and Five.

In addition to Counts Seven and Nine, Plaintiff asserts Count Four: § 1983 Failure to Supervise, Control or Discipline and Count Five: § 1983 Failure to

17

Train/*Canton* Liability against Chief Stephenson.[12] These claims are asserted against Chief Stephenson in his supervisory capacity. Chief Stephenson contends that he is entitled to qualified immunity on these counts.

"The doctrine of qualified immunity provides that 'the government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Case v. Eslinger*, 555 F.3d 1317, 1325 (11th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To assert qualified immunity, a government official must first show that his actions were within the scope of his discretionary authority. *See Case*, 555 F.3d at 1325. After making this showing, the burden shifts to the plaintiff to establish that 1) a constitutional right has been violated and 2) the right was clearly established. *See Roberts v. Spielman*, 643 F.3d 899, 904 (11th Cir. 2011).

Chief Stephenson was clearly acting within his discretionary authority when making decisions regarding the supervision, discipline, and control of his subordinate officers. *See Hardy v. Town of Hayneville*, 50 F. Supp. 2d 1176, 1189 (M. D. Ala. 1999) ("It cannot be seriously contested that decisions concerning hiring, training, and supervision of officers fall within the discretionary authority of the

---

[12] These are the only four claims asserted against Chief Stephenson.

Chief of Police."). Thus, the burden shifted to the Plaintiff to establish that Chief Stephenson violated a clearly established right.

"It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)), *abrogated in part on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010). Rather, "supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360. Plaintiff does not allege that Chief Stephenson personally participated in the alleged unconstitutional conduct, as Chief Stephenson was indisputably not present during Broady's time in custody. Therefore, to hold Chief Stephenson liable in his supervisory capacity, Plaintiff must establish a causal connection between Chief Stephenson's actions and the alleged unconstitutional deprivation.

To establish the requisite causal connection for Count Four: § 1983 Failure to Supervise, Control or Discipline, Plaintiff must either allege (1) "a history of widespread abuse [that] puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so"; (2) the supervisor's "custom

or policy . . . result[s] in deliberate indifference to constitutional rights"; or (3) "that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* (quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1234–35 (11th Cir. 2003)). For most supervisory liability cases, in determining whether a supervisor's custom or policy results in deliberate indifference to constitutional rights, "a plaintiff must point to multiple instances or multiple reports of prior misconduct by a particular employee." *Piazza v. Jefferson County*, 923 F.3d 947, 957 (11th Cir. 2019) (citations omitted).

First, Plaintiff does not allege that Chief Stephenson directed his subordinate officer, Officer Doss, to deprive Broady of his constitutional rights or that Chief Stephenson directly knew that Officer Doss would use excessive force, conduct an unlawful seizure, or provide inadequate medical care. Additionally, Plaintiff has not alleged a history of widespread abuse that would place Chief Stephenson on notice of the need to correct constitutional violations. Plaintiff merely alleged that Chief Stephenson had been previously sued once for excessive force. (Doc. 25 ¶ 110.) This is insufficient to place Chief Stephenson on notice. Lastly, Plaintiff has not alleged that Chief Stephenson's customs or policies resulted in deliberate indifference. "Deliberate indifference requires the following: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Keith v. Dekalb County*, 749 F.3d 1034, 1047 (11th Cir. 2014). Plaintiff

20

has simply not established that Chief Stephenson had subjective knowledge of a risk that Officer Doss would seriously harm Broady or any other citizen. The one prior allegation of excessive force brought against Chief Stephenson, which may have not even involved Officer Doss (Doc. 25 ¶ 110), is not sufficient. Accordingly, Plaintiff has not alleged that Chief Stephenson violated a clearly established constitutional right and therefore he is entitled to qualified immunity on the § 1983 Failure to Supervise, Control or Discipline claim.

When a plaintiff asserts a claim against a supervisory official for failure to train, that allegation "implicates a different, albeit similar rule: under § 1983, a supervisor can be held liable for failing to train his or her employees 'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact.'" *Keith*, 749 F.3d at 1052 (quoting *City of Canton*, 489 U.S. at 388). This means that the supervisor had "'actual or constructive notice that a particular omission in their training program causes [his or her] employees to violate citizens' constitutional rights,' and that armed with that knowledge the supervisor chose to retain that training program." *Keith*, 749 F.3d at 1052 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). Establishing notice ordinarily requires a "pattern of similar constitutional violations." *Connick*, 563 U.S. at 61. Though, as discussed above, "the Supreme Court has left open the possibility that a single incident may prove sufficient to hold a supervisor liable for a failure to train"

21

when the need to train is just "so obvious." *Keith*, 749 F.3d at 1053 n.56 (citing *Canton*, 489 U.S. at 390 n.10). As previously mentioned, Plaintiff has not alleged a pattern of constitutional violations against Gordo police officers that would place Chief Stephenson on notice of the need for further training. Additionally, as discussed in the previous section, this is not a situation where the need for further training was "so obvious" as to provide notice.[13] Therefore, Chief Stepheson is entitled to qualified immunity on Count Five.

## IV.   CONCLUSION

For the reasons discussed above, the Court grants Axon and Chief Stephenson's Motions. (Doc. 33; Doc. 28.) The Court grants in part and denies in part the City of Reform's Motion to Dismiss State Law Claims and the Town of Carrollton's Motion. (Doc. 26; Doc. 30.)[14]   The remaining Motions remain pending.

---

[13] Even if this were a situation where the need for further training was "so obvious" that Chief Stephenson would have been on notice of the need for further training and thus would have violated Broady's constitutional rights, Chief Stephenson would still be entitled to qualified immunity because the constitutional right would not be clearly established. A constitutional right is clearly established if it is one that "a reasonable person would have known." *Harlow*, 457 U.S. at 818. There are "three sources of law that would put a government official on notice of statutory or constitutional rights: specific statutory or constitutional provisions; principles of law enunciated in relevant decisions; and factually similar cases already decided by state and federal courts in the relevant jurisdiction." *Goebert v. Lee County*, 510 F.3d 1312, 1330 (11th Cir. 2007). As the Court has been unable to locate, and the Plaintiff has not directed the Court to, a case where the need to train in this situation was "so obvious," the Court cannot say that Chief Stephenson violated a right that was clearly established.

[14] The Court further agrees with the City of Reform and the Town of Carrollton's contention that punitive damages cannot be recovered against them on the remaining claims. *See* Ala. Code § 6-11-26; *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

(Doc. 27; Doc. 31; Doc. 48; Doc. 50; Doc. 52.) The Court will enter an Order consistent with this Memorandum of Opinion.

**DONE** and **ORDERED** on March 5, 2024.

L. Scott Coogler
United States District Judge

215755