FILED
2024 Aug-09 AM 11:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **DeQUITA DENISE BROADY, as** | ) | |
| **the personal representative of the** | ) | |
| **Estate of MICHAEL BROADY, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **7:23-cv-01097-LSC** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DEPUTY HERD, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OF OPINION

There are several pending motions before the Court: Officer Homan, Chief Richard Black and the City of Reform's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 27) and their Amended Motion to Dismiss (Doc. 68, Exhibit "A"); Motion to Dismiss by Defendant Chief Anthony Durrah (Doc. 31); Motion to Dismiss First Amended Complaint on Behalf of Defendants Deputies Jeremy Herd and Taylor Gregory (Doc. 48) and their Amended Motion to Dismiss (Doc. 65-3); Defendant Sheriff Todd Hall's Motion to Strike Paragraph 111 of the First Amended Complaint, and Motion to Dismiss First Amended Complaint (Doc. 50), along with his Amended Motion to Dismiss (Doc. 65-1); Defendant Town of Gordo's Motion to Dismiss First Amended Complaint (Doc. 62) and its Motion for Summary Judgment (Doc. 91); and Plaintiff's Motion for Leave to File a Second Amended

1

Complaint and to Re-Add Pickens County as a Defendant (Doc. 77). The Court has converted the parts of Officer Homan, Chief Richard Black, the City of Reform's Motion to Dismiss (Doc. 68); Sheriff Hall, Deputy Herd, and Deputy Taylor Gregory's Motion to Dismiss (Doc. 65-1; Doc. 65-3); and the Town of Gordo's Motion to Dismiss (Doc. 62) that assert a statute of limitations argument into motions for summary judgment.

For the reasons provided below, the following defendants are entitled to summary judgment on Plaintiff's state-law wrongful death claims: Officer Homan and Chief Richard Black; the Town of Gordo; and Sheriff Todd Hall, Deputy Jeremy Herd, and Deputy Taylor Gregory. As to the motions to dismiss, the remaining parts of Officer Homan, Chief Richard Black and the City of Reform's Motion are denied; Deputy Herd and Deputy Taylor Gregory's Motion is granted in part and denied in part; Sheriff Hall's Motion is granted, as is his Motion to Strike; Chief Anthony Durrah's Motion is denied; and the Town of Gordo's Motion is granted in part and denied in part. Plaintiff's Motion to Amend is granted as to the remaining defendants, but Plaintiff is not permitted to "re-add" Pickens County as a defendant. Plaintiff is further directed to refile a third amended complaint, if appropriate in accordance with Rule 11, to cure the duplication and shotgun pleading deficiencies in the Second Amended Complaint, within fourteen (14) days of this Opinion. The Alabama Public Records Law claim is dismissed as to all Defendants.

# I.    PROCEDURAL HISTORY

Plaintiff DeQuita Broady, the personal representative of the Estate of Michael Broady Jr., filed the initial Complaint in this action on August 18, 2023. (Doc. 1.) She filed her first Amended Complaint on November 20, 2023. (Doc. 25.) The Amended Complaint alleged fifteen state and federal causes of action against fourteen defendants: Deputy Herd, Deputy Taylor Gregory, Officer Homan, Officer Doss, Officer Anderson, Sheriff Todd Hall, Chief Durrah, Chief Stephenson, Chief Black, Pickens County, Town of Carrollton, City of Gordo, City of Reform, and Axon Enterprise, Inc. In response, most of the defendants filed motions to dismiss. (Doc. 26; Doc. 27; Doc. 28; Doc. 30; Doc. 31; Doc. 33; Doc. 48; Doc. 50; Doc. 52.)

On February 28, 2024, Plaintiff voluntarily dismissed Defendant Pickens County, mooting its Motion to Dismiss (Doc. 52). (Doc. 57.) On March 5, 2024, the Court partially ruled on the remaining motions to dismiss, granting Axon Enterprise, Inc and Chief Johnny Stephenson's Motions, dismissing them as defendants. (Doc. 59.) In that Opinion, the Court also granted in part and denied in part the City of Reform's Motion to Dismiss State Law Claims and the Town of Carrollton's Motion. (*Id.*) The Court reserved judgment on the remaining motions.

After the Court issued its Opinion, the City of Gordo filed a Motion to Dismiss, which argued in part that the state-law wrongful death claims and the state-law municipal liability claim, along with the federal law § 1983 claims, were barred

by the statute of limitations. (Doc. 62.) Defendants Sheriff Hall, Deputy Herd, Deputy Taylor Gregory moved to amend their Motion to Dismiss so that they could assert the statute of limitations defense as to the state-law wrongful death claims and federal law § 1983 claims. (Doc. 65.) Defendants Officer Homan, Chief Richard Black, and the City of Reform subsequently moved to amend their Motion to assert the statute of limitations defense as to the § 1983 claims. (Doc. 68.) The Court granted these Motions for Leave to Amend. (Doc. 67; Doc. 75.) On April 30, 2024, the Court converted the parts of the Motions to Dismiss asserting a statute of limitations argument as to the state-law wrongful death claims and the federal-law § 1983 claims (Doc. 62; Doc. 68, Exhibit "A"; Doc. 65-1; Doc. 63-3) into a motion for summary judgment. (Doc. 88.) The Court gave the parties the opportunity to submit evidence and provide further briefing. (*Id.*) The Court clarified that the remaining parts of the motions to dismiss would be evaluated as motions to dismiss. (*Id.*)

On March 27, 2024, Plaintiff filed a Motion for Leave to File Plaintiff's Second Amended Complaint and to Re-Add Pickens County as a Defendant. (Doc. 77.) The proposed Second Amended Complaint added a few additional factual paragraphs and added two new counts. (*Id.*) Defendants primarily opposed the amendment on futility grounds. (Doc. 82; Doc. 83; Doc. 84; Doc. 85; Doc. 86.)

All of the Motions are now fully briefed and ripe for review. Because the Court is evaluating parts of certain motions under the summary judgment standard and then evaluating the remaining parts of each remaining motion under the motion to dismiss standard, the Court splits this Opinion into two parts. First, the Court provides the summary judgment analysis. Then, the Court provides the motion to dismiss analysis.

## II.    SUMMARY JUDGMENT

### A.    RELEVANT FACTS

On August 22, 2021, Michael Broady, Jr. died while in the custody of several police officers. On August 18, 2023, DeQuita Broady, his sister and personal representative, initiated this action by filing an initial complaint. (Doc. 1.) The initial complaint did not contain any defendants' address or instructions for service. (*Id.*) In addition, Plaintiff did not pay the filing fee in this action until September 15, 2023. (*Docket Entry Entered 09/15/2023*). The summons to serve all defendants by certified mail was not issued until October 11, 2023. (Doc. 2.) Plaintiff has not disputed that a summons for each defendant was not supplied to the clerk's office until October 11, 2023. (Doc. 89 ¶ 4; Doc. 90 ¶ 6; Doc. 91 ¶ 5.)

Defendants Officer Homan, Chief Richard Black, and the City of Reform were all subsequently served by certified mail: Officer Homan was served on October 26, 2023 (Doc. 11); Chief Richard Black was served on October 17, 2023

(Doc. 4); and the City of Reform was served on October 19, 2023 (Doc. 6). The Town of Gordo was provided a request to waive service on January 17, 2024, which it agreed to do. (Doc. 46.)

Sheriff Todd Hall, Deputy Jeremy Herd, and Deputy Taylor Gregory were initially served on October 19, 2023 (Doc. 6.) Prior to service, Plaintiff's counsel and counsel for these Defendants had conferred about these Defendants waiving service; however, Plaintiff's counsel instead arranged for the summons and complaint to be served via certified mail through the clerk's office. (Doc. 8 ¶ 2.) After Sheriff Hall, Deputy Herd, and Deputy Taylor Gregory filed a Motion to Quash (Doc. 8), Plaintiff's counsel supplied the requisite waiver forms and these Defendants waived service. (Doc. 10; Doc. 37.) The waiver request was officially sent to Sheriff Hall, Deputy Herd, and Deputy Taylor Gregory on December 7, 2023. (Doc. 37.)

## B. STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court "must view all evidence most favorably toward the nonmoving party, and all justifiable inferences are to be drawn in the nonmoving party's favor." *Hoffman v. Allied Corp.*, 912 F.2d 1379, 1383 (11th Cir. 1990). The Court does not weigh the evidence as fact-finder; rather, it must

"determin[e] whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986).

## C. ANALYSIS

### 1. THE TOWN OF GORDO

As previously stated, in its Motion to Dismiss, the Town of Gordo asserted a statute of limitations defense as to the state-law wrongful death and the municipal liability claims, as well as the federal law § 1983 claims, asserted against it in the first Amended Complaint. (Doc. 62.) After the Court converted these parts of the Motion to Dismiss into a summary judgment motion, the Town of Gordo then filed a Motion for Summary Judgment on Statute of Limitations Defense and Brief in Support Thereof. (Doc. 91.) In this Motion, the Town of Gordo further asserts that a two-year statute of limitations applies to the Americans with Disabilities and the Rehabilitation Act claims, indicating that these claims are also barred by the statute of limitations. (*Id.* at 3.)[1] The Court begins by analyzing whether the state-law

---

[1] While the Town of Gordo summarily claims that "all claims" asserted against it are barred by the statute of limitations, the Town only provides argument as to the state-law wrongful death and the municipal liability claims, the § 1983 claims, and the Americans with Disabilities and Rehabilitation Act claims. (Doc. 62; Doc. 91.) Accordingly, the Court only evaluates whether these claims are barred by the statute of limitations.

wrongful death and the municipal liability claims are barred by the statute of limitations.

### i.    STATE-LAW CLAIMS

As outlined in the previous Opinion (Doc. 59), Ala. Code § 6-5-410 requires all wrongful death actions to be commenced within two years of the decedent's death. While for convenience sake the Court will refer to Ala. Code § 6-5-410 as a statute of limitations, it is technically a "statute of creation," whereby it is "the essence of the cause of action*." Pollard v. H.C. P'ship*, 309 So. 3d 1189, 1194 (Ala. 2020) (quoting *Wood v. Wayman*, 47 So. 3d 1212, 1218 (Ala. 2010). The significance of this is that Ala. Code § 6-5-410 is not subject to tolling. *See Pollard*, 309 So. 3d at 1194 (citing *Wood*, 47 So. 3d at 1218). As to the municipal liability claim, the Town of Gordo only off-handedly asserts that this claim is barred by the statute of limitations, and it does not even provide what that statute of limitations for this cause of action is. Therefore, the Court will not grant summary judgment on the municipal liability claim but will evaluate whether this claim is nonetheless due to be dismissed in the second part of this Opinion.

In arguing that her state-law wrongful death claims are not barred by the statute of limitations, Plaintiff raises two arguments. (Doc. 76.) First, she contends that the Alabama requirement that to commence an action for statute of limitations purposes the plaintiff must file a complaint and have a bona fide intent to have it

immediately served, *see Precise v. Edwards*, 60 So. 3d 228, 230–31 (Ala. 2010), does not apply. Rather, she argues Federal Rule of Civil Procedure 4(m)—which provides that the Court must dismiss an action if the defendant is not served within ninety days after filing the complaint unless good cause is shown—controls, and therefore her wrongful death claims are not time-barred. Second, she argues that, even assuming the Alabama requirement applies, she did have a bona fide intent to serve the Defendants at the time she filed the initial Complaint.

The first argument implicates the doctrine that has developed around the seminal case of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Under the *Erie* doctrine, when a federal court is presented with claims arising from its diversity or supplemental jurisdiction, essentially "state law govern[s] substance and federal law govern[s] procedure." *Tillman v. Georgia*, 466 F. Supp. 2d 1311, 1314 (S.D. Ga. 2006). However, the difference between "substance" and "procedure" is often quite complicated, and so courts take a bifurcated approach to *Erie* questions. *See* Adam N. Steinman, *What Is the Erie Doctrine? (And What Does It Mean for the Contemporary Politics of Judicial Federalism?)*, 84 Notre Dame L. Rev. 245, 258, 260 (2008) (citing *Hanna v. Plumer*, 380 U.S. 460 (1965)).

If there is a "direct collision" between one of the Federal Rules of Civil Procedure and a state-law rule, the Court must apply the federal rule unless it is invalid, constitutionally or under the Rules Enabling Act. *See Hanna*, 380 U.S. at

471. But if there is no direct clash between the federal rule and the state law rule, the Court engages in a "relatively unguided *Erie* choice." *Id.* at 470; *Walker v. Armco Steel Corp.*, 446 U.S. 740, 752 (1980). In an unguided *Erie* choice, the test is "outcome-determinative," with "reference to the twin aims of the Erie rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Hanna*, 380 U.S. at 468; *see also Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99 (1945). If not following the state rule would encourage forum shopping or result in inequitable administration of the laws, the Court applies the state rule so as to eliminate any outcome disparity. *See Walker*, 446 U.S. at 752–53.

Plaintiff essentially contends that the Alabama requirement directly collides with Rule 4(m), and she relies heavily on *Tillman v. Georgia*, 466 F. Supp. 2d 1311 (S.D. Ga. 2006) for this assertion. In *Tillman*, the plaintiff brought § 1983 and state-law claims against a law enforcement officer. *Id.* at 1313. The plaintiff filed the complaint within Georgia's statute of limitations period but did not serve the defendant until 110 days later, which was after the statute of limitations period had run. *Id.* at 1314. In Georgia, a plaintiff can stop the statute of limitations clock by filing the complaint and serving the defendant "(1) within five days; or (2) after five days, so long as the plaintiff is diligent in perfecting service. If the plaintiff complies with (1) or (2), the service relates back to the date the suit is filed, which then controls for statute of limitations purposes." *Id.* at 1315 (internal citations omitted).

Therefore, the relevant issue as to the state-law claims was whether Georgia's "five-day-or-reasonable-diligence scheme" directly collided with Fed. R. Civ. P. 4(m). *Id.* at 1317.

The *Tillman* court found that there was a direct collision between Fed. R. Civ. P. 4(m) and the Georgia rule, and that Rule 4(m) was a validly adopted rule. *Id.* at 1320. In reaching this conclusion, the *Tillman* court explained that Rule 4(m) was enacted after the Supreme Court's decision in *Walker v. Armco Steel Corp.* and the Eleventh Circuit's decision in *Cambridge Mut. Fire Ins. v. City of Claxton*, 720 F.2d 1230 (11th Cir. 1983). In *Walker*, the Supreme Court held that Fed. R. Civ. P. 3, which states that a "civil action is commenced by filing a complaint," did not directly collide with an Oklahoma statute that provided: an action is not "commenced" for purposes of the statute of limitations until summons is served on the defendant, but if the plaintiff files the complaint within the statute of limitations period and serves the defendant within sixty days of filing, the action is deemed to have commenced from the date of filing. 446 U.S. at 742–43. *Cambridge* relied on *Walker* in finding that the Georgia five-days-or-reasonable-diligence rule, not Rule 3, controlled whether a defendant's action was time-barred. *Cambridge*, 720 F.2d at 1232. The *Tillman* court also determined that the question of whether Rule 4(m) directly collided with the Georgia rule was "most aptly analyzed under the Court's non-*Erie* decision in *Henderson v. United States*, 517 U.S. 654 (1996)." *Tillman*, 466 F. Supp.

11

2d at 1320. And principally relying on *Henderson*, the *Tillman* court was persuaded that Rule 4(m) and the Georgia rule directly collided.

In *Henderson*, a merchant mariner filed a seaman's personal injury action against the United States under the federal Suits in Admiralty Act ("SAA"). *Henderson*, 517 U.S. at 656. The merchant mariner timely commenced his action within the statute of limitations by filing his complaint with the court, as is required for actions based on federal law under Fed. R. Civ. P. 3; but he did not comply with § 2 of the SAA, which required service "forthwith." *Id.* at 657–59. The Supreme Court found that the SAA's service "forthwith" requirement could not be read harmoniously with Rule 4(m). *Id.* at 661. The Supreme Court further held that the SAA's service "forthwith" requirement was not "substantive" or "jurisdictional," but rather was a "rule of procedure superseded by Rule 4[m]." *Id.* at 668–72; *see also id.* at 656 ("We hold that, in actions arising under federal law, commenced in compliance with the governing statute of limitations, the manner and timing of serving process are generally nonjurisdictional matters of 'procedure' controlled by the Federal Rules."). As the Supreme Court explained, "[service of process's] essential purpose is auxiliary, a purpose distinct from the substantive matters . . .— who may sue, on what claims, for what relief, *within what limitations period*." *Id.* at 671–72 (emphasis added).

Upon due consideration, the Court is convinced that the question of whether Rule 4(m) collides with the Alabama requirement is controlled by *Walker*, not *Henderson*. *Henderson* dealt with two "case processing rules," which directly collided as to the time permitted for the service of process in federal court. *Henderson*, 517 U.S. at 668. There was no substantive statute of limitations issue— there was no *Erie* question at all. While *Walker* specifically examined the *Erie* question regarding Rule 3 "commencement" and a state statute's requirement for "commencement" for purposes of the statute of limitations, its logic holds strong in examining the *Erie* question posed by Rule 4(m) and the Alabama requirement.

The Court believes that as in *Walker*, "the scope of the Federal Rule [is] not as broad as [Plaintiff] urge[s], and therefore, there being no Federal Rule which cover[s] the point in dispute, *Erie* command[s] the enforcement of state law." *Walker*, 446 U.S. at 748 (quoting *Hanna*, 380 U.S. at 470). This is not a situation like *Hanna v. Plumer*, where the Supreme Court found a direct collision between Rule 4(e)—then Rule 4(d)(1))—which enumerates ways in which a plaintiff may serve process, and a Massachusetts service of process rule that required service to be delivered in hand. 380 U.S. at 470. Rather, Rule 4(m) simply states that a court must dismiss an action if a defendant is not served within 90 days and the plaintiff does not show good cause for the delay. It is a procedural case-management rule that provides a mechanism for courts to ensure their dockets do not get stale. For

instance, if an action is filed well in advance of the end of the statute of limitations and has been sitting on a court's docket for a year, the court may dismiss the action and the dismissal will have no effect on the action's statute of limitations timeliness. "There is no indication that the Rule was intended to toll a state statute of limitations. . . ." *Walker*, 446 U.S. at 750–51. Thus, Rule 4(m) and the Alabama rule inhabit different spheres: the Alabama rule directly governs when an action is commenced for statute of limitations purposes, while Rule 4(m), like Rule 3, "governs the date from which various timing requirements of the Federal Rules begins to run, but does not affect state statutes of limitations." *Id.* at 751. A contrary finding would impermissibly "give [the cause of action] longer life in the federal court than it would have had in the state court without adding something to the cause of action." *Walker*, 446 U.S. at 746 (quoting *Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 533–34 (1949)).

The finding of no collision is also consistent with a panel of the Eleventh Circuit's decision in *Goldthrip v. DePuy Orthopaedics, Inc.*, 665 F. App'x 808 (11th Cir. 2016). In *Goldthrip*, the panel concluded that the plaintiffs' Alabama state-law claims were time-barred because the plaintiffs did not demonstrate a bona fide intent to have the complaint immediately served within the statute of limitations period. *Id.* at 809–10. Therefore, while the panel admittedly did not undertake an *Erie* analysis,

it directly applied the Alabama rule to determine when the action had commenced for statute of limitations purposes.

As evidenced by this Court's previous Opinion (Doc. 59), application of the Alabama rule is outcome determinative. Therefore, as not applying the Alabama rule would at least result in an inequitable administration of the law, the Court applies the Alabama bona fide intent standard to Plaintiff's state-law wrongful death claims.

Now to Plaintiff's second argument regarding her state-law claims—whether she nevertheless did exhibit a bona fide intent to immediately serve the Town of Gordo within the statutory period. Whether a Plaintiff has a bona fide intent to immediately serve a defendant is viewed objectively. *See Precise*, 60 So. 3d at 231. "[W]hen the plaintiff, at the time of filing, does not perform all the tasks required to effectuate service and delays a part of the process, a lack of the required bona fide intent to serve the defendant is evidenced." *Precise*, 60 So. 3d at 233. It is the "*unexplained* failure to perform tasks required to effectuate service" that constitutes a lack of bona fide intent to have the defendant immediately served. *Id.* For example, when a plaintiff fails to supply the clerk with the summons to serve defendants by certified mail when those defendants' addresses are known or easily obtainable, or neglects to pay the filing fee, which is a prerequisite to the issuance of a summons, that plaintiff will not have evidenced a bona fide intent to have the defendant immediately served. *See Dukes v. Jowers*, 584 So. 2d 524, 526 (Ala. 1991); *Dunnam*

15

*v. Ovbiagele*, 814 So. 2d 232, 239 (Ala. 2001); *De-Gas, Inc. v. Midland Res.*, 470 So. 2d 1218, 1221–22 (Ala. 1985) (comparing Ala. Code § 12-19-70 with 28 U.S.C. § 1914).

Plaintiff did not demonstrate a bona fide intent to immediately serve the Town of Gordo for two reasons. First, Plaintiff does not deny that the filing fee was not paid until September 15, 2023, which was nearly a month after the filing of the initial complaint and well outside the two-year requirement of Ala. Code § 6-5-410. (*Docket Entry Entered 09/15/2023*.) Plaintiff's counsel even acknowledged in an email with the Court's staff, dated September 7, 2023, that he had not yet paid the filing fee. As clerks of the district courts are not creditors, the failure to pay the filing fee within the statutory period prevented a summons from being issued and halted service by certified mail. *De-Gas, Inc.*, 470 So. 2d at 1220 (citing *Turkett v. United States*, 76 F. Supp. 769 (N.D.N.Y. 1948)).

Second, Plaintiff did not provide the requisite papers within the statutory period. It appears that Plaintiff took two differing approaches towards effectuating service on the Town of Gordo. First, she supplied summonses to the clerk's office to serve all defendants by certified mail. (Doc. 2.) These summonses were not issued until October 11, 2023, and Plaintiff did not demonstrate that she had provided the clerk's office with the summonses prior to this date. Rather, she has not disputed that she did not provide the clerk's office with summonses until October 11, 2023.

(Doc. 89 ¶ 4; Doc. 90 ¶ 6; Doc. 91 ¶ 5.) Second, Plaintiff provided the Town of Gordo with a request to waive service on January 17, 2024. (Doc. 46.) In either case, service, or a request for waiving service, on the Town of Gordo was delayed well outside the statutory period provided by Ala. Code § 6-5-410. Plaintiff has not provided any explanation for this delay—nor could she as a municipality's service address is easily obtainable. Plaintiff merely contends that "[d]ue to miscommunications between the multiple law firms involved in this case, service was unfortunately delayed for a period of time, but this procedural logistical mistake does not negate the intent to serve." (Doc. 76 at 9–10.) But whether Plaintiff evidenced a bona fide intent to immediately serve the Town of Gordo is measured objectively, not subjectively. *See Dunnam*, 814 So. 2d at 239 (explaining that a "misunderstanding and oversight" by an attorney's assistant did not excuse a delay in service). Because Ala. Code § 6-5-410 required this action be commenced for statute of limitations purposes within two years of Broady's death on August 22, 2021, any state-law wrongful death claims brought against the Town of Gordo are time-barred.[2]

## ii.   FEDERAL-LAW CLAIMS

---

[2] In the First Amended Complaint (Doc. 25), this would include Counts Seven and Nine. In the Second Amended Complaint (Doc. 77-1), which as further discussed below, the Town of Gordo opposes on futility grounds (Doc. 83), this would include Counts Seven and Eight.

As to the federal claims, Plaintiff argues that these claims are not time-barred because they are not subject to the bona fide intent to serve standard. (Doc. 76 at 2.) She does not provide any tolling argument. (*Id.*)[3] "Section 1983 has no statute of limitations of its own, and instead is governed in each case by the forum state's general personal injury statute of limitations." *Reynolds v. Murray*, 170 F. App'x 49, 50 (11th Cir. 2006) (per curiam) (citing *Owens v. Okure*, 488 U.S. 235, 236 (1989)). In Alabama, "the governing limitations period is two years," as provided by Ala. Code § 6-2-38. *See McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008). Similarly, "for discrimination claims under Title II of the ADA and the Rehabilitation Act, which were both enacted prior to 1990, the applicable limitations period is governed by the most analogous state statute of limitation. In Alabama, where this action was brought, the applicable limitations period is two years." *Horsely v. Univ. of Ala.*, 564 F. App'x 1006, 1008 (11th Cir. 2014) (first citing *Everett v. Cobb Cnty. Sch. Dist.*, 138 F.3d 1407, 1409–10 (11th Cir. 1998); then citing Ala. Code § 6-2-38(l)).

---

[3] The Town of Gordo stresses that § 1983 claims are also subject to state-law tolling rules. (Doc. 91 at 4.) That is correct. *See Hardin v. Straub*, 490 U.S. 536, 539 (1989). But the bona fide intent to serve standard is a commencement rule, not a tolling rule. *See Flood*, 263 F. Supp. 3d at 1223 (citing *Sentry Corp. v. Harris*, 802 F.2d 229, 237 (7th Cir. 1986) ("[C]ourts and commentators have generally distinguished between those provisions relating to traditional tolling doctrines (fraudulent concealment, minority, other legal disabilities) and commencement provisions. With regard to the former, the traditional rule has been that state law controls; with regard to the latter, federal law controls.") (citations omitted)).

It does not appear that the Eleventh Circuit has ever addressed whether the bona fide intent to serve standard applies to claims arising under § 1983, or Title II of the ADA and the Rehabilitation Act. However, two courts in this district have held that the bona fide intent to serve standard does not apply. *See Flood v. City of Jacksonville*, 263 F. Supp. 3d 1213, 1223 (N.D. Ala. 2017); *Overby v. City of Birmingham*, 2:21-cv-01416-ACA, 2022 WL 3330147, at *2 (N.D. Ala. Aug. 11, 2022).

In explaining why the bona fide intent to serve standard does not apply to these types of actions, the *Flood* court began by discussing the Supreme Court's decision in *West v. Conrail*, 481 U.S. 35 (1987). In *West*, the plaintiff brought a federal duty of fair representation claim against his union and union representative. *Id.* at 36. Because "Congress did not enact a federal statute of limitations that is expressly applicable to federal duty of fair representation claims," the Supreme Court "filled that gap in federal law by deciding that the 6-month period prescribed in § 10(b) [of the National Labor Relations Act] should be applied." *Id.* at 37–38 (citations omitted). The issue then became whether the filing and the service of the complaint had to be completed within the six-month period, as was contemplated by § 10(b). *Id.* at 38. The Supreme Court held that "when the underlying cause of action is based on federal law and the absence of an express federal statute of limitations makes it necessary to borrow a limitations period from another statute, the action is

not barred if it has been 'commenced' in compliance with Rule 3 within the borrowed period." *Id.* at 39 (citing 4 C. Wright & A. Miller, Federal Practice and Procedure § 1056 (1969)). The Supreme Court explained "when it is necessary for us to borrow a statute of limitations for a federal cause of action, we borrow no more than necessary." *Walker*, U.S. at 39. And in dicta, the Supreme Court went on to explain that when a court exercises diversity jurisdiction and a service rule is an integral part of the statute of limitations, that service rule must be respected under *Walker v. Armco*. *See West*, 481 U.S. at 39 n.4. But "[t]his requirement, naturally, does not apply to federal-question cases." *Id.*

After discussing *West*, the *Flood* court acknowledged that *West* did not answer the precise question before the court: "Does Rule 3 tell us when a suit commences where (like *West*) the cause of action is federal, but where (unlike *West*) the statute of limitations is borrowed from state rather than federal law?" *Flood*, 263 F. Supp. 3d at 1222 (quoting *Sain v. City of Bend*, 309 F.3d 1134, 1138 (9th Cir. 2002)). However, the *Flood* court explained that "the First, Fourth, Fifth, Seventh, and Ninth Circuits all agree that Rule 3 of the Federal Rules of Civil Procedure should <u>only</u> be used to determine when an action based on <u>federal</u> law and filed in federal court commences." *Flood*, 263 F. Supp. 3d at 1222 (collecting cases). The *Flood* court found those decisions were consistent with the Supreme Court's dicta in *West*, and thus were persuasive. *Id.* at 1223.

20

This Court is likewise persuaded that when a federal cause of action filed in federal court borrows a state statute of limitations, the question of whether the action commenced, for statute of limitations purposes or otherwise, is a question of federal law. Under Fed. R. Civ. P. 3, "A civil action is commenced by filing a complaint with the court." Therefore, because Plaintiff filed this action on August 18, 2023, which was less than two years after Broady's death on August 22, 2021, the federal claims are not time-barred.

### 2. SHERIFF HALL, DEPUTY HERD, DEPUTY TAYLOR GREGORY

As previously discussed, in their Amended Motions to Dismiss, Sheriff Hall, Deputy Herd, and Deputy Taylor Gregory asserted a statute of limitations defense as to the state-law wrongful death claims and federal-law § 1983 claims asserted against them. (Doc. 65-1; Doc. 65-3.) Plaintiff similarly argued that the state-law wrongful death claims were not time-barred because she did have a bona fide intent to serve them at the time of filing the complaint and that the § 1983 claims were not subject to the bona fide intent to immediately serve standard. (Doc. 72.) For the reasons provided above, the Court agrees that the § 1983 claims are not subject to the bona fide intent to serve standard and thus are not time-barred.

However, it is likewise clear that Plaintiff's state-law wrongful death claims—Counts Seven and Nine in the First Amended Complaint (Doc. 25), Counts Seven and Eight in the Second Amended Complaint (Doc. 77-1)—are time-barred. As with

the Town of Gordo, Plaintiff initially requested to serve Sheriff Hall, Deputy Herd, and Deputy Taylor Gregory by certified mail (Doc. 2) but later requested that these Defendants waive service (Doc. 37). In any event, Plaintiff did not complete all the tasks required of her to either effectuate service or the waiver of service within the statutory period. *See Precise*, 60 So. 3d at 233. Broady died on August 22, 2021, but Plaintiff, admittedly, did not provide a summons to the clerk's office until October 11, 2023 (Doc. 2; Doc. 90 ¶ 6). Additionally, Plaintiff did not send these Defendants a waiver request until December 7, 2023. (Doc. 37.) And further, Plaintiff did not pay the filing fee in this action until September 15, 2023. (*Docket Entry Entered 09/15/2023*). While Plaintiff argues that she nonetheless had a bona fide intent to immediately serve the complaint at the time of filing (Doc. 72 at 5) because the miscommunications between the various law firms involved in this case caused the delay in service, the Alabama Supreme Court has rejected a similar excuse. *Dunnam*, 814 So. 2d at 238. Because Ala. Code. § 6-5-410 requires that a wrongful death action be commenced within two years of the decedent's death, and Plaintiff failed to commence this action, for statute of limitations purposes until at least October 11, 2023, the wrongful death claims are time-barred.

### 3.   OFFICER HOMAN, CHIEF BLACK, CITY OF REFORM

In their Amended Motion to Dismiss, Officer Homan, Chief Black, and the City of Reform initially asserted a statute of limitations defense only as to § 1983

claims. (Doc. 68, Exhibit "A".) But in the subsequent briefing pursuant to the Court's Order, Officer Homan, Chief Black, and the City of Reform asserted that the § 1983, ADA, Rehabilitation, and state-law wrongful death claims were all barred by the statute of limitations. (Doc. 89.) Plaintiff did not respond to Officer Homan, Chief Black, and the City of Reform's statute of limitations defense, which the Court pointed out in a previous order. (Doc. 88 at 2 n.1.)

While Plaintiff's failure to respond to these Defendants' statute of limitations defense suggests a failure to prosecute these claims, dismissal on that ground is a harsh sanction that the Court will not employ at this time. *See Richardson v. Beck*, No. 21-10874, 2022 WL 17336223, at *2 (11th Cir. 2022). Accordingly, the Court will evaluate whether these Defendants are entitled to summary judgment on their statute of limitations defense despite Plaintiff's failure to respond. Plaintiff is warned that future failures will result in dismissal.

As to the federal claims, for the reasons stated above, the Court finds that these claims are not time-barred. Regarding the state-law wrongful death claims asserted against Officer Homan and Chief Black,[4] as with all the other defendants, Plaintiff did not supply the summons to serve them by certified mail until October 11, 2023. (Doc. 2; Doc. 91 ¶ 5.) Plaintiff did not provide the clerk's office with any addresses

---

[4] The Court previously dismissed the state-law wrongful death claims against the City of Reform on other grounds. (Doc. 59.)

or instructions for service prior to this date. (Doc. 1.) Further, Plaintiff did not pay the filing fee until September 15, 2023, thereby delaying service. (*Docket Entry Entered 09/15/2023*). Therefore, Plaintiff did not exhibit a bona fide intent to immediately serve Officer Homan and Chief Black, and as a result, Plaintiff did not commence this action against them within the statutory period. The state-law wrongful death claims brought against these two defendants—Counts Seven and Nine in the First Amended Complaint (Doc. 25), Counts Seven and Eight in the Second Amended Complaint (Doc. 77-1)—are time-barred.

## III.    MOTIONS TO DISMISS

### A. RELEVANT FACTS

Because the Defendants oppose Plaintiff's Motion to Amend on futility grounds, the Court takes the following "facts" from the allegations contained in both Plaintiff's Amended Complaint and Second Amended Complaint, and the Court makes no ruling on their veracity. *See Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012) (quoting *Ironworkers Loc. Union 68 v. AstraZeneca Pharm., LP*, 634 F.3d 1352, 1359 (11th Cir. 2011)) (explaining that in evaluating a motion to dismiss that the Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff"). These are the "facts" for the purposes of evaluating the motions to dismiss only.

On August 22, 2021, Broady was at a house in Reform when an individual told Broady that he was going to kill him. (Doc. 77-1 ¶¶ 18–19.) Broady called 911, and Officer Homan responded to the call. (*Id.* ¶¶ 20–21.) Officer Homan then called for backup and Officers Herd, Taylor Gregory, Doss, and Anderson arrived shortly thereafter. (*Id.* ¶ 21.) Sheriff Hall, Chief Durrah, and Chief Black were never physically present on the scene.

The responding officers then obtained a warrant for Broady's arrest after learning that Broady had an outstanding child support issue. (*Id.* ¶¶ 27–28.) Broady was voluntarily handcuffed but was not immediately placed into a police vehicle. (*Id.* ¶ 29.) At some point, Broady called 911 again and asked if he was going to be held on the child support issue. (*Id.* ¶ 31.) The officers asked Broady if he had dialed 911 again, to which Broady answered "no." (*Id.* ¶ 32.) It is alleged that "the officers immediately tackled [Broady], slamming him face-first down onto the rocky dirt road." (*Id.*) Plaintiff further alleges that each officer "tased Broady numerous times and 'dry-stunned' him while he was on the ground handcuffed." (*Id.* ¶ 35.)

The officers then placed Broady into the vehicle, but by the time they reached the Pickens County Jail, Broady was laying down in the back of the police car and was not moving. (*Id.* ¶¶ 37, 40.) "Broady was pale, his lips appeared to be blue in

color, and he appeared lifeless. (Doc. 77-2 ¶ 13.)[5] Broady was still alive at this time
(Doc. 77-1 ¶ 38), but "[t]he officers delayed taking Broady to the nearby hospital
and instead themselves attempted to resuscitate Broady, despite the fact that none of
them knew how to use a defibrillator and they were not able to correctly perform
CPR." (*Id.* ¶ 42). "After attempting to revive Broady at the jail for 20 to 30 minutes,
the officers eventually drove Broady to the helipad at the closed Carrollton Hospital,
where he was to be flown to another hospital." (*Id.* ¶ 464) By the time they reached
the helipad, Broady was dead. (*Id.* ¶ 45.)

### B. STANDARD OF REVIEW

In general, a pleading must include "a short and plain statement of the claim
showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, to
withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint "must
plead enough facts to state a claim to relief that is plausible on its face." *Ray v. Spirit
Airlines, Inc*., 836 F.3d 1340, 1347–48 (11th Cir. 2016) (quoting *Bell Atl. Corp. v.
Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). "A claim
has facial plausibility when the plaintiff pleads factual content that allows the court
to draw the reasonable inference that the defendant is liable for the misconduct

---

[5] Plaintiff attached the Affidavit of Sidny Briana Driver,a correctional officer who worked at
Pickens County Jail. Because this document is central to Plaintiff's claim and its authenticity has
not been disputed, the Court may properly consider its contents. *Day v. Taylor*, 400 F.3d 1272,
1276 (11th Cir. 2005).

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Stated another way, the factual allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Edwards v. Prime, Inc*., 602 F.3d 1276, 1291 (11th Cir. 2010). A complaint that "succeeds in identifying facts that are suggestive enough to render [the necessary elements of a claim] plausible" will survive a motion to dismiss. *Watts v. Fla. Int'l Univ*., 495 F.3d 1289, 1296 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556) (internal quotation marks omitted).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id*. Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id*. If the pleading "contain[s] enough information regarding the material elements of a cause of action to support recovery under some 'viable legal theory,'" it satisfies the notice pleading standard. A*m. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011) (quoting *Roe v. Aware Woman Ctr. for Choice, Inc*., 253 F.3d 678, 683–84 (11th Cir. 2001)).

### C. ANALYSIS

### 1. OFFICER HOMAN, CHIEF RICHARD BLACK, AND THE CITY OF REFORM'S MOTION TO DISMISS

The Court starts with Officer Homan, Chief Black, and the City of Reform's Motion to Dismiss (Doc. 27), which is incorporated by reference into their Amended Motion to Dismiss (Doc. 68, Exhibit "A"). In the Motion, these Defendants essentially argue that the entire complaint is a shotgun pleading. (Doc. 27 at 8.); *see Weiland v. Palm Beach Cnty. Sherriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). As explained in *Weiland*, there are four types of shotgun pleadings:

> The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Weiland*, 792 F.3d at 1321–23. These Defendants argue that the complaint falls into the first and fourth type of shotgun pleadings. (Doc. 27 at 8.)

While these Defendants are correct that the First Amended Complaint did impermissibly incorporate by reference all preceding paragraphs in each count, Plaintiff's Second Amended Complaint fixes this problem. (Doc. 77-1.) As to these Defendants' second argument, it is true that both the First and Second Amended

Complaints often refer to the "Defendants" or the "officers" in general. (Doc. 25; Doc. 77-1.) But each count clearly sets out which defendants the claim is being asserted against. (Doc. 25; Doc. 77-1.) At this stage, nothing more is required. Defendants Officer Homan, Chief Black, and the City of Reform's Motion to Dismiss, arguing that the complaint constitutes a shotgun pleading, is denied. (Doc. 27; Doc. 68, Exhibit "A".)

### 2.  CHIEF ANTHONY DURRAH'S MOTION TO DISMISS

Chief Anthony Durrah has also filed a Motion to Dismiss. (Doc. 31.) In the Motion, he asserts that Plaintiff's complaint is due to be dismissed for two reasons: 1) it is an impermissible shotgun pleading; and 2) it fails to state a claim upon which relief can be granted. (*Id.*) Specifically, he contends the complaint falls into the first and fourth categories of shotgun pleadings. (Doc. 32 at 9–14.)

As explained above, Plaintiff's Second Amended Complaint cures any deficiency that would make the earlier complaint a shotgun pleading. Chief Durrah provides no substantive argument as to why Plaintiff has failed to state a claim, and therefore the Court denies the Motion to Dismiss at this juncture.

### 3.  THE TOWN OF GORDO'S MOTION TO DISMISS

In the First Amended Complaint, Plaintiff asserted nine causes of action against the Town of Gordo: Count Four—§ 1983 Failure to Supervise, Control or Discipline; Count Five—§ 1983 Failure to Train/*Canton* Liability; Count Seven—

29

Wrongful Death (Negligence); Count Nine—Wrongful Death (Wantonness); Count Ten—Municipal Liability; Count Twelve—Fourth Amendment § 1983 *Monell* Claim; Count Thirteen—Americans with Disabilities Act Claim; Count Fourteen—Violation of the Rehabilitation Act, 29 U.S.C. § 794; Count Fifteen—Violation of the Alabama Public Records Law. (Doc. 25.) In the proposed Second Amended Complaint, which the Town of Gordo opposes on futility grounds (Doc. 83), Plaintiff asserts these same claims against the Town of Gordo (though some counts are renumbered), along with one new claim for § 1983 Civil Conspiracy. (Doc. 77-1.)

As a preliminary matter, the Town of Gordo contends that all claims against it are due to be dismissed on shotgun pleading grounds. The Town of Gordo asserts that the First Amended Complaint is a shotgun pleading of the first and fourth type, that is a complaint that incorporates each paragraph into each count and one that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions. (Doc. 64 at 8.) However, as the Court explained when discussing this argument in relation to the Reform Defendants, Plaintiff's Second Amended Complaint cures any deficiency that would make the earlier complaint a shotgun pleading. The Court therefore rejects the Town of Gordo's assertion that all claims against it are due to be dismissed on shotgun pleading grounds.

30

The Court will now evaluate the arguments and issues specific to the state-law claims and will then turn to the federal-law claims.

### i.    STATE-LAW CLAIMS[6]

As discussed in the summary judgment section of this Opinion, the wrongful death claims asserted against the Town of Gordo are time-barred. As to the municipal liability claim, the Court finds that this claim is due to be dismissed because Plaintiff failed to comply with the notice-of-claim statutes. The notice-of-claim statutes require that, for torts, a personal representative file a sworn statement with the clerk within six months of accrual of the injury. *See* Ala. Code § 11-47-192; Ala. Code § 11-47-23. Plaintiffs must substantially, not strictly, comply with these statutory provisions. *Stabler v. City of Mobile*, 844 So. 2d 555, 564, 567 (Ala. 2002); *Brasher v. City of Birmingham*, 341 So. 2d 137, 138 (1976). As the Court thoroughly explained in its previous opinion (Doc. 59 at 8–12), a plaintiff's failure to submit a

---

[6] The Town of Gordo has also argued that it is entitled to immunity pursuant to Ala. Code § 11-47-190 on the state-law wrongful death and municipal liability claims. The Court agrees that the Town of Gordo is entitled to immunity on the state-law wrongful death (wantonness) claim. *See Town of Loxley v. Coleman*, 720 So. 2d 907, 909 (Ala. 1998) ("This Court has construed § 11-47-190 to exclude liability for wanton conduct."). As to the state-law wrongful death (negligence) claim, the Court has previously indicated that the Town of Gordo's employee, Chief Stephenson, would be entitled to peace officer/state agent immunity on this count. (Doc. 59 at 8 n. 5.) The Town of Gordo's other employee involved in this case, Officer Doss, has not plead immunity at this point. Accordingly, it is further apparent that the Town would be entitled to immunity for any claims premised on the negligence of Chief Stephenson, though the Court reserves judgment on any claims premised on the negligence of Officer Doss. *See Howard v. City of Atmore*, 887 So. 2d 201, 211 (Ala. 2003) ("It is well established, that if a municipal peace officer is immune pursuant to § 6-5-338(a), then . . . the city by which he is employed is also immune.").

*sworn* statement with the municipalities or file this action within six months of the claim's accrual amounts to a failure to substantially comply with the notice-of-claim statutes. *See Arceo v. Beedle*, No. 2:06-cv-4810-TMP, 2007 WL 9717216, at *6 (N.D. Ala. Dec. 6, 2007) ("'[S]ubstantial' compliance requires something more than an unsworn letter from counsel."); *Hill v. City of Huntsville*, 590 So. 2d 876, 876–77 (Ala. 1991).

Here, Plaintiff indicates that the claim accrued on August 22, 2021.[7]  (Doc. 76 at 15–16.) Plaintiff also does not dispute that she never filed a sworn statement with the Town's clerk or filed this action within the six-month period. (*Id.*) The Town has further provided the purported notice of claim sent on September 14, 2021, which is clearly unsworn and unsigned by the Plaintiff. (Doc. 64-1.)[8] While Plaintiff argues that the Town of Gordo was on notice of the events, actual notice does not excuse a plaintiff's failure to substantially comply with the notice-of-claim statutes. *See Stabler*, 844 So. 2d at 567. And while the Alabama Supreme Court excused a plaintiff's failure to file a sworn statement with a municipality in *City of Montgomery v. Weldon*, that case is distinguishable because that case involved the

---

[7] The latest the claim could have possibly accrued was January 22, 2022 when Ms. Broady was appointed personal representative. (Doc. 59 at 10 n.7.) Regardless, Plaintiff did not substantially comply with the notice-of-claim statutes within the six-month period.

[8] Because this document is central to Plaintiff's claim and its authenticity has not been disputed, the Court may properly consider its contents without converting the motion to dismiss into a motion for summary judgment. *See Horsley v. Feldt*, 304 F.3d 1124, 1134 (11th Cir. 2002).

active deception of a *pro se* plaintiff. 195 So. 2d 110, 112–13 (Ala. 1967). For this reason, the municipal liability claim—Count Ten in the First Amended Complaint, Count Nine in the Second Amended Complaint—is due to be dismissed.[9]

As to the final state-law claim, which is brought under the Alabama Public Records Law and is Count Fifteen in the First Amended Complaint and restyled as Count Sixteen in the Second Amended Complaint, the Town of Gordo argues that 1) Plaintiff has not provided specific factual allegations as to what records she has requested and 2) supplemental jurisdiction does not exist over this claim. The Court turns first to whether this claim falls within its subject matter jurisdiction. The Alabama Public Records Act claim is a state-law claim, and as there is no diversity of jurisdiction, it must fall within the Court's supplemental jurisdiction or this Court will have no subject matter jurisdiction over this claim at all. For a claim to fall within the Court's supplemental jurisdiction, there must be federal law claim with "substance sufficient to confer subject matter jurisdiction on the court" and [t]he state and federal claims must derive from a common nucleus of operative fact" such that one "would ordinarily expect to try them all in one judicial proceeding." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

---

[9] Had the Court not granted summary judgment on the state-law wrongful death claims, they would be due to be dismissed for this reason as well.

The first requirement is easily met because Plaintiff has asserted federal claims arising under § 1983, the ADA, and the Rehabilitation Act. But the Town of Gordo has directed the Court to *Estate of West v. Smith*, which persuasively held that there was not a common nucleus of operative fact between a plaintiff's § 1983 claims and the Alabama Open Records Act. No. 17-0291-CG-MU, 2017 WL 11512583 (S.D. Ala. Sept. 8, 2017). In *Estate of West*, the estate of a pretrial detainee brought § 1983 claims against various fictitious defendants regarding the pretrial detainee's medical treatment while housed at the Escambia County Jail. *Id.* at *1, 3. The Plaintiff also brought an Alabama Public Records Act claim against the county sheriff regarding the sheriff's alleged failure to provide records related to the pretrial detainee's detention. *Id.* at *1. The court found that supplemental jurisdiction was lacking, explaining: "[T]he Open Records Act claim bears, at best, some attenuated, tangential connection to the federal claims asserted primarily against fictitious defendants because it seeks records regarding West's incarceration. However, this claim requires proof of an entirely separate set of facts unrelated to the remaining defendants' alleged misconduct." *Id.* at *3.

Similarly, the Court agrees that the facts regarding the municipalities' alleged failure to provide records relevant to Broady's arrest are not sufficiently related to the facts regarding Broady's death itself. For instance, for the Alabama Public Records Act claim, the relevant facts will relate to when records requests were made,

what was requested, what was withheld, and whether the failure to provide was wrongful. In contrast, the facts relevant to the federal claims will involve who tased Broady, how many times he was tased, whether he was compliant throughout the tasing, what disabilities was he suffering from, etc. Accordingly, the Court finds it lacks supplemental jurisdiction over this Alabama Public Records Law claim and dismisses it as to all defendants.

### ii.    FEDERAL-LAW CLAIMS

Now to the federal-law claims, specifically the claims asserted under § 1983 provided in both complaints. Under *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978) and its progeny, a municipality cannot be liable under § 1983 pursuant to a theory of vicarious liability. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Rather, a municipality is only liable under § 1983 when the "municipality *itself* causes the constitutional violation at issue" through the execution of its official policy or maintenance of a custom. *Id.* "A policy is a decision that is officially adopted by the municipality," while "[a] custom is a practice that is so settled and permanent that it takes on the force of law." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). "[R]andom acts or isolated incidents are insufficient to establish a custom." *Depew v. City of St. Mary's*, 787 F.2d 1496, 1499 (11th Cir. 1986).

When the municipal policy is itself facially unconstitutional, meaning the municipality's policy itself violates the constitution or directs its employees to do so, "resolving 'issues of fault and causation is straightforward.'" *Am. Fed'n of Lab. & Cong. Of Indus. Orgs. v. City of Miami*, 637 F.3d 1178, 1187 (11th Cir. 2011) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997)). But when "a facially-lawful municipal action is alleged to have caused a municipal employee to violate a plaintiff's constitutional rights, the plaintiff must establish 'that the municipal action was taken with "deliberate indifference" as to its known or obvious consequences.'" *Am. Fed'n of Lab. & Cong. Of Indus. Orgs.*, 637 F.3d at 1187 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 407). Further, "a municipality's failure to correct the constitutionally offensive actions of its employees can rise to the level of a custom or policy 'if the municipality tacitly authorizes these actions or displays deliberate indifference' towards the misconduct." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1308 (11th Cir. 2001) (quoting *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987)).

As explained in the Court's previous opinion (Doc. 59 at 13–14), in Count Twelve—Fourth Amendment § 1983 *Monell* Claim (Count Eleven in the Second Amended Complaint), Plaintiff primarily alleges that Chief Stephenson, the Chief of Police and a "policy maker" for the Town of Gordo, "ratified" a series of allegedly unconstitutional practices. (Doc. 25 ¶¶ 202–03; Doc. 77-1 ¶ 180.) There are two

varieties of ratification theories under *Monell*. When a plaintiff relies on a single incident of alleged unconstitutional conduct, the plaintiff must allege that "policymakers have had the opportunity to review subordinates' decisions before they become final." *Thomas ex. rel. Thomas v. Roberts*, 261 F.3d 1160, 1174 (11th Cir. 2001), *vacated on other grounds by Thomas v. Roberts*, 536 U.S. 953 (2002). The policymaker must ratify not only the unconstitutional decision but also the unconstitutional basis for the decision. *See Matthews v. Columbia County*, 294 F.3d 1294, 1297 (11th Cir. 2002). But when a plaintiff relies on a pattern of unconstitutional conduct, "persistent failure to take disciplinary action against officers can give rise to the inference that a municipality has ratified conduct, thereby establishing a[n] [unconstitutional] 'custom' within the meaning of *Monell*." *Thomas ex Thomas*, 261 F.3d at 1175 n.12 (quoting *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1443 (11th Cir. 1985)).

Here, Plaintiff lists fourteen allegedly unconstitutional decisions that Chief Stephenson allegedly ratified on the Town's behalf "when [Officer Doss] placed Mr. Broady under arrest and tased him, resulting in his death." (Doc. 25 ¶ 203; Doc. 77-1 ¶ 180.) But as Chief Stephenson never had the chance to review these decisions prior to Officer Doss's alleged actions, these allegations cannot give rise to claim under the first type of ratification theory.

Even construing Plaintiff's claim as the latter type of ratification theory and more liberally as a general *Monell* claim, those allegations would still not state a claim. For instance, Plaintiff alleges "[i]nadequate training and policies concerning de-escalation"; "[i]nadequate training and policies concerning handcuffs and the use of Tasers"; hiring unqualified officers; "[f]ailing to terminate officers despite knowledge of repeated unconstitutional, unlawful, or improper conduct"; and "[e]ncouraging escalation rather than de-escalation." (Doc. 25 ¶ 203; Doc. 77-1 ¶ 180.) Plaintiff also alleges that the Town of Gordo "maintains a policy, custom, and/or widespread practice of permissiveness regarding the excessive and/or deadly use of force by city officers against unarmed and non-dangerous citizens." (Doc. 77-1 ¶ 13.) The Court will explain why the allegations regarding failure to train do not state a claim below, and the Court will now explain why the allegations regarding hiring, failing to terminate, encouraging escalation, and maintaining a "policy" or custom of permissiveness regarding unconstitutional use of force do not state a general *Monell* claim.

First, the Court starts with the alleged "policy" or custom of permissiveness regarding the unconstitutional use of force. While Plaintiff frames the Town of Gordo's alleged permissiveness towards excessive force as a policy, Plaintiff does not allege that the Town ever directed officers to use excessive force. Accordingly, the alleged permissiveness is more properly categorized as a custom. To show a

custom, "it is 'generally necessary to show a persistent and wide-spread practice.'"

*McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004) (quoting *Wayne v. Jarvis*,

197 F.3d 1098, 1105 (11th Cir. 1999), *overruled on other grounds by Manders v.*

*Lee*, 338 F.3d 1304 (11th Cir. 2003)). However, the only allegations related to an

alleged custom of permissiveness regarding the use of excessive force is a singular

allegation that Chief Stephenson had previously been sued for excessive force

against Wallace Wilder (Doc. 77-1 ¶ 181)[10] and the allegation, newly added to the

Second Amended Complaint, that: "It was common for officers in these law

enforcement departments to use Tasers cavalierly and callously, even when it was

evident that the use of a Taser was not required in order for the person being tased

to be compliant. This included consistent use of tasing to 'wake up' detainees who

were asleep, drugged, or otherwise unconscious" (Doc. 77-1 ¶ 36). But one prior

allegation of excessive force, for which no further information is supplied, and the

conclusory statement that unnamed officers in these departments "common[ly]"

misused tasers does not demonstrate that the Town of Gordo was both culpable for

---

[10] While Plaintiff also references "interactions with Glenn Foster, Jr." in briefing, Plaintiff's complaints allege that Foster died in the custody of the Pickens County Sheriff's Office on December 6, 2021, and that Foster was found unresponsive with signs of neck compressions and strangulation. (Doc. 77-1 ¶ 182.) Plaintiff does not connect this incident to the Town of Gordo at all, nor does Plaintiff explain how this factually distinct event, occurring after Broady's death, could demonstrate a custom causing Broady's death.

and caused a constitutional violation, particularly when there is no allegation that Broady was woken up by tasing in this case.[11]

As to the allegations regarding Chief Stephenson's hiring and failing to terminate Officer Doss, which are facially constitutional decisions, Plaintiff has not alleged any previous misconduct by or specific lack of qualification of Officer Doss that would show Chief Stephenson was "deliberately indifferent to the risk that a violation of a particular constitutional or statutory right [would] follow" from hiring or failing to terminate him. *See Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 411 (explaining that a sheriff's hiring decision was not deliberately indifferent because, even though the sheriff failed to adequately review the deputy's record, it was not plainly obvious that excessive force would be used as a consequence of that hiring decision). Regarding the allegation that Chief Stephenson "encouraged

---

[11] These allegations are distinguishable from the allegations presented in *Hoefling v. City of Miami*, 811 F.3d 1271 (11th Cir. 2016). There, the Eleventh Circuit found a plaintiff had sufficiently plead a *Monell* claim for procedural due process and Fourth Amendment violations related to the seizure and destruction of his boat where the plaintiff alleged that a friend called him and told him the police were seizing boats prior to the police seizing plaintiff's boat, the plaintiff alleged that "local mariners" informed him and he was "independently aware" of police failing to adhere to the law regarding the investigation of and destruction of potentially derelict vessels, and plaintiff alleged that the City referred to the "systemic roundup and destruction of ugly boats in its waters" as the "cleanup program." *Id.* at 1280. Here, unlike in *Hoefling*, Plaintiff has not plead any facts of any specific instance where Gordo officers excessively tased compliant and handcuffed arrestees, nor has Plaintiff alleged facts sufficient to plausibly suggest that the Town had unofficially authorized such conduct. To the extent Plaintiff argues that its conclusory allegations are sufficient under *Fundiller*, where the Eleventh Circuit found that a district court improperly dismissed a *Monell* claim where the complaint alleged that the city "ha[d] a custom of excessive force," *Fundiller*, 777 F.2d at 1443, that case was a precursor to the plausibility standard of *Twombly* and *Iqbal*.

escalation rather than de-escalation," Plaintiff's allegation is plainly conclusory. Further, this allegation does not show how such a policy would have directly and obviously caused the alleged excessive force in this case. According to Plaintiff's own allegations, at the time the alleged excessive force began, Broady was "already detained, in handcuffs, and compliant." (Doc. 77-1 ¶ 35.) Holding the Town liable for any "escalation" would impermissibly hold the Town vicariously liable for its officer's own actions.

Now to training, which Plaintiff pleads as a basis for liability in Count Five and Eleven/Twelve, and supervision/control, which Plaintiff also alleges in Count Eleven/Twelve and Count Four. "[T]he inadequacy of police training [or supervision] may serve as the basis for § 1983 [municipal] liability only where the failure to train [or supervise] amounts to deliberate indifference to the rights of persons with whom the police come into contact," and this failure actually causes the constitutional violation. *City of Canton*, 489 U.S. at 388; *see also Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). To show deliberate indifference, "a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold*, 151 F.3d at 1350. To establish that the municipality was on notice of the need for further training or supervision, a plaintiff generally must allege a "pattern of similar constitutional violations," *Connick v. Thompson*,

563 U.S. 51, 62 (2011), or possibly "even a single earlier constitutional violation," *Am. Fed'n of Lab. & Cong. Of Indus. Orgs.*, 637 F.3d at 1189. But in *City of Canton v. Harris*, "the Supreme Court left open the possibility that a need to train could be 'so obvious,' resulting in a City's being liable without a pattern of prior constitutional violations." *Gold*, 151 F.3d at 1352. The Supreme Court in *City of Canton* provided the hypothetical example of the obvious need to train "officers who are armed on how to deal with fleeing felons, given the frequency of that particular occurrence," *Cooper v. Rutherford*, 828 F. App'x 619, 622 (11th Cir. 2020), and the "predictability that an officer lacking specific tools to handle that situation will violate citizens' rights," *Bryan Cnty.*, 520 U.S. at 409. Other than that one hypothetical example, it does not appear that the Supreme Court or the Eleventh Circuit has provided another example of when the need to train could be "so obvious."

Plaintiff specifically alleges that the Town's training was deficient regarding tasing (Doc. 77-1 ¶¶ 118, 180), the use of restraint and handcuffing (*Id.* ¶¶ 116, 180), escalation (*Id.* ¶ 180), and "the reasonable and appropriate use of force . . . and intervention in the excessive use of force by fellow officers" (*Id.* ¶ 114). Plaintiff also alleges that Chief Stephenson's failure to supervise Officer Doss resulted in deliberate indifference. (*Id.* ¶¶ 110, 184.) However, other than the conclusory statement that officers in the various police departments involved in this case

"common[ly]" misuse tasers (*Id.* ¶ 36), Plaintiff has not alleged a single instance of similar constitutional violations by the Town's officers that would put Chief Stephenson or any other Town policy makers on notice of the need for more training or supervision. The Court further does not believe that this case falls into the Supreme Court's hypothetical category of cases where the need for more training or supervision was just "so obvious." Again, Plaintiff alleges that the defendant officers tased Broady repeatedly while he was handcuffed and compliant. This type of behavior is not an occurrence that is so frequent that it is highly predictable that officers would violate Broady's rights without further training or supervision. Rather, "[w]here the proper response . . . is obvious to all without training or supervision, then the failure to train or supervise is generally not 'so likely' to produce a wrong decision as to support an inference of deliberate indifference by city policymakers to the need to train or supervise." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 490 (11th Cir. 1997) (quoting *Walker v. City of New York*, 974 F.2d 293, 299–300 (2d Cir. 1992), *cert. denied*, 507 U.S. 972 (1993)). Accordingly, the Court cannot say that, under the facts alleged, the Plaintiff has demonstrated that the Town was deliberately indifferent in failing to further train or supervise/control Officer Doss.

Additionally, to the extent Plaintiff argues that the Town of Gordo is liable for failing to discipline Officer Doss, the Court finds that Plaintiff has failed to state

a *Monell* claim. As discussed, Plaintiff has not sufficiently alleged that Officer Doss had ever previously used excessive force. Therefore, Plaintiff has not shown that the Town of Gordo is culpable for failure to discipline him or that this failure to discipline caused Broady's alleged constitutional deprivation.

The Court now turns to the Americans with Disabilities Act claim and the Rehabilitation Act claim, which are Counts Thirteen and Fourteen in the First Amended Complaint and Counts Twelve and Thirteen in the Second Amended Complaint. "Discrimination claims under the ADA and the Rehabilitation Act are governed by the same standards." *J.S., III by and through J.S. Jr. v. Houston Cnty. Bd. of Educ.*, 877 F.3d 979, 985 (11th Cir. 2017). A plaintiff must establish: "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007) (explaining the applicability of the ADA and the Rehabilitation Act to police conduct during arrests). The Town of Gordo succinctly argued that these claims are due to be dismissed because Plaintiff has failed to establish even this first element.

In the proposed Second Amended Complaint, which Plaintiff proffered after the Town of Gordo filed its initial brief, Plaintiff claims that Broady was a qualified

individual because he suffered from depression and drug addiction, and some of the officers knew of his drug problem and that he might be in an altered state as a result. (Doc. 77-1 ¶¶ 191, 197, 207, 213, 219.) Plaintiff also states that Broady's "disabilities left him unable to fully comply with [the officers'] commands." (*Id.* ¶¶ 199, 215.) Plaintiff further alleges that Broady was denied the "benefit of a lawful exercise of police powers" (*Id.* ¶¶ 194, 210) and the violence began "after he identified and/or otherwise notified the officers of his disabilities" (*Id.* ¶¶ 199, 215).

A disability is defined as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102 (1). Courts in this Circuit have found that both depression and drug addiction can constitute such physical or mental impairments. *See Pritchard v. Southern Co. Servs.*, 92 F.3d 1130, 1132 (11th Cir. 1996) (explaining that depression is an impairment when it substantially limits a major life activity); *Caron Foundation of Fla., Inc. v. City of Delray Beach*, 879 F. Supp. 2d 1353, 1364 (S.D. Fla. 2012) (explaining that drug addiction can be an impairment) (citing 28 C.F.R. § 35.104(1)(ii)). Under the EEOC regulations, "major life activities" include activities such as "[c]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others,

and working," along with "[t]he operation of a major bodily function." 29 C.F.R. §§ 1630.2(i)(1)(i), (ii) (2012).

In light of Plaintiff's proposed amendment and the limited argument on this issue, the Court declines to dismiss these claims at this juncture. The Town may reassert and further develop these arguments at the dispositive motion stage or trial.[12]

Lastly, Plaintiff has asserted a new claim against the Town of Gordo in the Second Amended Complaint for § 1983 Civil Conspiracy (Count Fourteen). Specifically, Plaintiff alleges that the Town of Gordo is liable for the arresting officers' conspiracy to taser Broady and delay his medical care "because their official policies and procedures, lackadaisical and negligent at best, gave rise to the custom or practice of the use of excessive force." (Doc. 77-1 ¶ 223.) However, as discussed above, Plaintiff has not alleged sufficient facts to establish that the Town of Gordo fostered a custom of excessive force so as to give rise to a *Monell* claim. Accordingly, allowing amendment to assert this claim would be futile.

### 4. DEPUTY HERD & DEPUTY TAYLOR GREGORY'S MOTION TO DISMISS

Turning to Deputy Herd and Deputy Taylor Gregory's Motion to Dismiss. (Doc. 48; Doc. 65-3.) In the First Amended Complaint, Plaintiff asserted seven claims against these Defendants: Count One—§ 1983 Fourteenth Amendment

---

[12] The Court does note that punitive damages are not available for these claims. *See Jeter v. City of Birmingham*, 2:20-cv-00470-ACA, 2020 WL 2747113 (N.D. Ala. May 27, 2020) (citing *Barnes v. Gorman*, 536 U.S. 181, 189 (2002)).

Deprivation of Life; Count Two—§ 1983 Fourth Amendment Unreasonable Seizure; Count Three—§ 1983 Fourth Amendment Excessive Force; Count Six—§ 1983 Fourteenth Amendment Inadequate Medical Care; Count Seven—Wrongful Death (Negligence); Count Nine—Wrongful Death (Wantonness); and Count Eleven—§ 1983 Conspiracy to Violate Plaintiff's Fourth Amendment Rights. (Doc. 25.) In the proposed Second Amended Complaint, Plaintiff asserts these same claims against Deputy Herd and Deputy Taylor Gregory (though Count Nine was renumbered to Count Eight and Count Eleven was renumbered to Count Ten), along with two new claims: Count Fourteen—§ 1983 Civil Conspiracy and Count Fifteen—State Law Civil Conspiracy. (Doc. 77-1.)

The Court will evaluate the state-law claims asserted against these Defendants, and then turn to the federal-law claims.

### i. STATE-LAW CLAIMS

As discussed in the first part of this Opinion, the state-law wrongful death claims asserted against Deputy Herd and Deputy Taylor Gregory are time-barred.[13] In objecting to Plaintiff's Motion to File a Second Amended Complaint, these

---

[13] Deputy Herd and Deputy Taylor Gregory have also argued that they are entitled to State immunity on these claims. (Doc. 65-4.) However, because Plaintiff alleged that these Defendants "acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law," and the State is not immunized in "actions for damages brought against State officials in their individual capacity" for such conduct, these Defendants would not be entitled to State immunity. *Birmingham Broadcasting (WVTM-TV) LLC v. Hill*, 303 So. 3d 1148, 1159 (Ala. 2020) (quoting *Ex parte Moulton*, 116 So. 3d 119, 1141 (Ala. 2013)).

Defendants have asserted that Count Fifteen—State Law Civil Conspiracy would also be barred by the statute of limitations. (Doc. 86 at 3.) Alabama state-law civil conspiracy claims are also subject to a two-year statute of limitations under § 6-2-38(l), and as discussed above, Plaintiff did not exhibit a bona fide intent to immediately serve these Defendants until after two years had passed from Broady's death. *See Freeman v. Holyfield*, 179 So. 3d 101, 105 (Ala. 2015). Accordingly, the Court agrees that Plaintiff's amendment to assert this claim against Deputy Herd and Deputy Taylor Gregory would be futile.[14]

### ii.    FEDERAL-LAW CLAIMS

As to the remaining claims asserted in the First Amended Complaint, which are brought to pursuant § 1983, Deputy Herd and Deputy Taylor Gregory raise a variety of different arguments, and they also plead qualified immunity.[15] Qualified immunity shields government officials from being sued for damages in their personal capacity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "In order to

---

[14] While Chief Black and Officer Homan also oppose the Second Amended Complaint on futility grounds, they have not explicitly argued that the state-law civil conspiracy claim would be barred by the statute of limitations. (Doc. 84.) Accordingly, the Court will allow this claim against Chief Black and Officer Homan to proceed.

[15] Deputies Herd and Taylor Gregory also argue that Plaintiff is not entitled to declaratory relief because Broady faces no future harm and because declaratory relief is not permitted under § 1983 in individual capacity lawsuits. Plaintiff does not dispute this, and further Deputies Herd and Taylor Gregory are correct. *See Dowdell v. Chapman*, 930 F. Supp. 533, 553 (M.D. Ala. 1996); *Jones v. Buckner*, 963 F. Supp. 2d 1267, 1281 (N.D. Ala. 2013). Plaintiff is not entitled to declaratory relief on these claims against these Defendants.

be entitled to qualified immunity, an official must first establish that he was acting within his discretionary authority when he engaged in the allegedly unlawful conduct." *Hunter v. City of Leeds*, 941 F.3d 1265, 1278 (11th Cir. 2019) (citing *Morton v. Kirkwood*, 707 F.3d 1276, 1280 (11th Cir. 2012)). A government official acts within his discretionary authority if his actions "are of a type that fell within the employee's job responsibilities." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). After the official establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that 1) the defendant violated a constitutional right and 2) the right was clearly established at the time of the violation. *See Hunter*, 941 F.3d at 1278 (citing *Morton*, 707 F.3d at 1281).

Deputy Herd and Deputy Taylor Gregory were clearly acting within their discretionary authority when they arrested and transported Broady. *See* Ala. Code § 36-22-3. Further, any decisions made regarding Broady's medical care also fell within Deputy Herd and Deputy Taylor Gregory's discretionary authority. Thus, the burden then shifted to Plaintiff to establish that these Defendants violated Broady's clearly established constitutional rights.

### a. Count One

The Court starts with Count One—§ 1983 Fourteenth Amendment Deprivation of Life. Defendants assert that, under *Graham v. Connor*, "*all* claims

that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach" under the Fourteenth Amendment. 490 U.S. 386, 395 (1989); *see also Carr v. Tatangelo*, 338 F.3d 1259, 1267–71 (11th Cir. 2003). Courts likewise evaluate failure to intervene in the use of excessive force claims under the Fourth Amendment standard. *See Jackson v. City of Atlanta*, 97 F.4th 1343, 1364 (11th Cir. 2024); *Steger v. Johnson*, No. 12-cv-3918, 2015 WL 1513884, at *4–5 (N.D. Ala. Mar. 31, 2015). Plaintiff did not respond to this argument or otherwise provide any argument as to why Defendants are not entitled to qualified immunity on Count One. (Doc. 56.) Regardless, Defendants are correct that *Graham* plainly forecloses Fourteenth Amendment claims when, as here, law enforcement officers allegedly used excessive force to execute a seizure or failed to intervene in such circumstances. Defendants are entitled to qualified immunity on this Count.

### b.    Counts Two and Three

For Count Two—§ 1983 Fourth Amendment Unreasonable Seizure and Count Three—§ 1983 Fourth Amendment Excessive Force, Deputies Herd and Taylor Gregory raise three arguments, in addition to pleading qualified immunity: 1) the parts of these claims asserting assault/battery and seeking damages for Broady's pain

and suffering abated with Broady's death; 2) these counts are duplicative; and 3) these counts constitute an impermissible shotgun pleading. In response, Plaintiff contends that the damages for pre-death injury did not abate and that these counts are not a shotgun pleading. Plaintiff does not provide any argument as to whether Counts Two and Three are duplicative, nor does Plaintiff provide any substantive argument as to whether these Defendants are entitled to qualified immunity. The Court addresses each of Deputies Herd and Taylor Gregory's arguments in turn.

Initially, the Court agrees that to the extent Plaintiff asserts an assault/battery claim for Broady's pre-death injuries, that claim would have abated under the clear precedent of *Ex parte Gilliam. See Ex parte Gillam ex. rel. Waldroup v. City of Prattville*, 639 F.3d 1041, 1050 (11th Cir. 2011) (holding that a § 1983 excessive force claim that did not result in a decedent's death abates under Alabama law). However, "[t]he question of what damages are available to a § 1983 plaintiff in Alabama alleging that a constitutional deprivation resulted in the decedent's death has not received a thorough treatment nor a definitive answer in the Eleventh Circuit Court of Appeals." *Gunn v. City of Montgomery*, No.: 2:16-cv-557-WKW-WC, 2018 WL 3154466, at *5 (M.D. Ala. Jan. 24, 2018).

The Eleventh Circuit has explained that "state tort law provides the appropriate starting point for the inquiry into the proper measure of damages under § 1983," but "[t]he focus of any award of damages under § 1983 is to compensate

51

for the actual injuries caused by a particular constitutional deprivation." *Gilmere v. City of Atlanta*, 864 F.2d 734, 738–39 (11th Cir. 1989). Accordingly, "federal courts adjudicating § 1983 claims are afforded flexibility . . . in determining the kinds of damages available to the plaintiff in order to satisfy the objectives of § 1983." *Gunn*, 2018 WL 3154466, at *6 (citing *Gilmere*, 864 F.2d at 739); *see Gilmere*, 864 F.2d at 740 (holding that the "district court did not err in refusing to award the state wrongful death measure of damages to compensate for the violation of the decedent's constitutional rights" and instead using its discretion to decide the damages award). For instance, in *Gillam*, the Eleventh Circuit opined, in *dicta*, that when a constitutional violation is asserted through the Alabama wrongful death statute, which only allows for punitive damages, "the kinds of damages that are recoverable are determined by federal law." *Gillam*, 639 F.3d at 1047 n.9; *see Gilmere*, 864 F.2d at 740 ("Because the statute is inconsistent with the rule that damages in § 1983 actions are to be compensatory, reliance on the Alabama wrongful death statute would not be proper under § 1988."). The district court in *Gunn* expounded on this principle to find that, consistent with the purpose of § 1983 to compensate the victim of an unconstitutional tort, a plaintiff could pursue compensatory damages for pre-death suffering, at least at the motion to dismiss stage. *See Gunn*, 2018 WL3154466, at *8. Accordingly, the Court, in its discretion, will allow Plaintiff to pursue damages sufficient to compensate the alleged

unconstitutional injury, though Defendants are permitted to reassert this argument at a later juncture.

Further, the Court agrees that Counts Two and Three are duplicative because they "stem from identical allegations, [] are decided under identical standards, and [] identical relief is available." *Manning v. Carnival Corp.*, No. 12-22258-CIV 2012 WL 3962997, at *2 (S.D. Fla. Sept. 11, 2012) (quoting *Wultz v. Islamic Republic of Iran*, 755 D. Supp. 2d 1, 81 (D.D.C. 2010)); *see also Corbitt v Vickers*, 929 F.3d 1304, 1315 (11th Cir. 2019) ("To establish a Fourth Amendment claim for excessive force, a plaintiff 'must allege (1) that a seizure occurred and (2) that the force used to effect the seizure was unreasonable.'" (quoting *Troupe v. Sarasota County*, 419 F.3d 1160, 1166 (11th Cir. 2005)). And while the Court maintains that the Second Amended Complaint is not a shotgun pleading of the first or fourth type, the Court agrees that these counts fall into the third category of shotgun pleadings because it asserts excessive force claims and failure to intervene claims in the same count without explaining which defendants used excessive force and which defendants failed to intervene. *See Weiland*, 792 F.3d at 1321–23; *Dukes v. Miami-Dade County*, 232 F. App'x 907 (11th Cir. 2007) (analyzing excessive force and failure to intervene as different counts). Plaintiff would therefore have to further amend her complaint to cure both of these deficiencies, which at this stage, she would be entitled to do if these Defendants are not entitled to qualified immunity. *See Vibe*

*Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) ("In the special circumstance of non-merits dismissals on shotgun pleading grounds, we have required district courts to sua sponte allow a litigant one chance to remedy such deficiencies.").

While Plaintiff failed to provide substantive argument as to whether these Defendants are entitled to qualified immunity (Doc. 92; Doc. 56),[16] the Court would be remiss if it also did not conduct a qualified immunity analysis on these Counts. *See generally See Hartley v. Butler*, 147 F. App'x 61, 61–62 (11th Cir. 2005). Based on the facts alleged in the complaint, Defendants Herd and Taylor Gregory are not entitled to qualified immunity at this stage for unreasonable seizure/excessive force and failure to intervene. Plaintiff alleges that these Defendants tackled Broady while he was handcuffed and compliant, then tased him numerous times. Alternatively, she argues that these Defendants failed to intervene while other officers tackled and tased Broady.

It is clearly established that the "gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force." *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008) (holding that an officer was not entitled to qualified

---

[16] By "substantive argument," the Court means that Plaintiff has not explained either how Defendants' alleged conduct amounted to a constitutional violation, or how this conduct violated clearly established law. In its May 24, 2024 Order, the Court warned Plaintiff that she had provided no substantive qualified immunity argument on these counts and gave Plaintiff the opportunity to conduct further briefing. (Doc. 92.) Plaintiff declined this opportunity.

immunity when he punched a non-resisting suspect in the stomach) (first citing *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002) (holding that an officer was not entitled to qualified immunity when the officer slammed the plaintiff's head on the hood of her car when the suspect was handcuffed and non-threatening); then citing *Slicker v. Jackson*, 215 F.3d 1225 (11th Cir. 2000) (holding that officers used excessive force when they kicked a handcuffed and non-resisting arrestee and beat his head into the ground)). The Eleventh Circuit has further held that a reasonable jury could find that repeated tasing of an immobilized and non-dangerous suspect constitutes excessive force. *Oliver v. Fiorino*, 586 F.3d 898, 906–08 (11th Cir. 2009) (finding that officers were not entitled to qualified immunity when they tased the non-threatening plaintiff at least eight times, including when he was completely immobilized on the pavement); *see also Helm v. Rainbow City*, 989 F.3d 1265 (11th Cir. 2021) (finding that an officer's use of a taser three times on a non-dangerous minor, while four men were holding her down, could be excessive). These alleged facts closely mirror the aforementioned circumstances in *Oliver* and *Helm*. Therefore, Deputies Herd and Taylor Gregory are not entitled to qualified immunity, at this stage, for the unreasonable seizure/excessive force claim based on the theory that they repeatedly tased a compliant and handcuffed Broady.

Further, "[t]he principle that an officer must intervene when he or she witnesses unconstitutional force has been clearly established in this Circuit for

decades." *Helm*, 989 F.3d at 1272. For example, in *Helm*, the Eleventh Circuit denied qualified immunity to officers who failed to intervene when their fellow officer gratuitously tased a minor and her mother, both of whom were restrained. *Id.* at 1277, 1280–81. The minor was held down and tased for "a couple of minutes." *Id.* at 1277. The mother was tackled, restrained, told she was going to be tased, and then gratuitously tased. *Id.* at 1270, 1280. To the extent Deputies Herd and Taylor Gregory argue that a failure to intervene theory cannot lie because there was no time to intervene, *see Priester v. City of Riviera Beach*, 208 F.3d 919, 924 (11th Cir. 2000), Plaintiff alleges that the tasing occurred repeatedly. A reasonable jury could therefore determine, on these alleged facts, that there was time to intervene and that Deputies Herd and Taylor Gregory failed to do so. Because clearly established law put these Defendants on notice that a reasonable jury could find their behavior unconstitutional, Deputies Herd and Taylor Gregory are not entitled to qualified immunity for unreasonable seizure/excessive force and failure to intervene.

### c.    Count Six

For Count Six—§ 1983 Fourteenth Amendment Inadequate Medical Care, these Defendants argue that Plaintiff has failed to plausibly state a claim for deliberate indifference to serious medical needs, and as previously mentioned, that

they are entitled to qualified immunity.[17] Plaintiff has simply responded that she has alleged enough "specific facts regarding the lack of medical care provided by Defendants to the decedent, such as the fact that Defendants knew the decedent had medical issues, that Defendants tasered the decedent needlessly, and that Defendants left decedent in the back of the car uncared for after tasering him numerous times, that the claim for inadequate medical care survives." (Doc. 56 at 7.) However, Plaintiff has provided no other response as to why Deputies Herd and Taylor Gregory are not entitled to qualified immunity on this count.

As with Counts Two and Three, because Deputies Herd and Taylor Gregory will not be entitled to qualified immunity if it is so obvious from the allegations in the complaint that they violated Broady's rights, the Court now conducts a qualified immunity analysis. To establish a claim for deliberate indifference to medical needs, Plaintiff must show: "(1) that Broady had an objectively 'serious medical need,' (2) that [these Defendants] acted with subjective 'deliberate indifference to [that] serious medical need,' and (3) that [Broady] suffered an 'injury . . . caused by [these Defendants'] wrongful conduct." *Patel v. Lanier County*, 969 F.3d 1173, 1188 (11th

---

[17] Part of these Defendants' argument rests on the fact that some of the allegations in the First Amended Complaint were based "upon information and belief." However, Plaintiff's Second Amended Complaint largely cures any defect caused by making allegations "upon information and belief." (Doc. 77-1.) The Court thus addresses this part of the argument no further.

Cir. 2020) (quoting *Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007)).[18]

To establish deliberate indifference, Plaintiff must show that these Defendants "acted with 'subjective recklessness as used in the criminal law,' and to do so [she] must show that the[se] defendant[s] w[ere] actually, subjectively aware that [their] own conduct caused a substantial risk of serious harm to [Broady]." *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024) (quoting *Farmer v. Brennan*, 511 U.S. 825, 839). Further, "even if the defendant[s] 'actually knew of a substantial risk to [Broady's] health or safety,'" they are still not liable if they "responded reasonably to th[at] risk." *Wade*, 106 F.4th at 1253 (quoting *Farmer*, 511 U.S. at 844).

There are a variety of a different types of deliberate indifference to medical needs claims. As the Eleventh Circuit has summarized:

> Our cases have consistently held that knowledge of the need for medical care and an intentional refusal to provide that care constitutes deliberate indifference. *Carswell v. Bay County,* 854 F.2d 454, 457 (11th Cir. 1988); *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 704 (11th Cir. 1985). Medical treatment that is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" constitutes deliberate indifference. *Rogers v. Evans,* 792 F.2d 1052, 1058 (11th Cir. 1986). "A doctor's decision to take an easier and less efficacious course of treatment" also constitutes deliberate indifferen[ce]. *Waldrop v. Evans,* 871 F.2d 1030, 1033 (11th Cir. 1989). Additionally, when the need for medical treatment is obvious, medical care that is so cursory as to amount to no treatment at all may constitute deliberate indifference. *See Ancata,* 769 F.2d at 704. Also, delay in access to medical care that is "tantamount to 'unnecessary and wanton infliction of pain,'" may constitute deliberate

---

[18] The deliberate indifference standard is the same under the Fourteenth Amendment as it is under the Eighth Amendment. *See Ireland v. Prummell*, 53 F.4th 1274, 1287 n.4 (11th Cir. 2022).

indifference to a prisoner's serious medical needs. *Brown v. Hughes,* 894 F.2d 1533, 1537 (11th Cir. 1990) (per curiam) (quoting *Estelle,* 429 U.S. at 104, 97 S. Ct. at 291), *cert. denied,* 496 U.S. 928. Some delay in rendering medical treatment may be tolerable depending on the nature of the medical need and the reason for the delay. *Harris v. Coweta County,* 21 F.3d 388, 393–94 (11th Cir. 1994).

*Adams v. Poag*, 61 F.3d 1537, 1543–44 (11th Cir. 1995).

Here, Plaintiff's Second Amended Complaint does not allege that Deputies Herd and Taylor Gregory knew Broady was in medical distress until they reached the Pickens County Jail. The Second Amended Complaint merely states that all officers placed Broady into the back of the police car after tasering him, and that Broady was alive at this point. (Doc. 77-1 ¶¶ 37–38.) Upon arriving at the Pickens County Jail, Plaintiff alleges that Broady was immobile and "appeared lifeless." (Doc. 77-2 ¶ 13; *see* Doc. 77-1 ¶¶ 37, 40.) The officers then allegedly "delayed" taking Broady to the hospital and instead attempted to resuscitate Broady for 20 to 30 minutes, despite that none of the officers knew how to use a defibrillator and they were unable to correctly perform CPR. (Doc. 77-1 ¶¶ 42–44.)

Plaintiff's claims appear to implicate two varieties of deliberate indifference to medical needs claims: intentional delay in treatment and grossly inadequate treatment. To be sure, the Eleventh Circuit has found that officers were not entitled to qualified immunity when they knowingly delayed a plaintiff's access to medical treatment for "no good or legitimate reason as he faced life-threatening injuries." *Valderrama v. Rousseau*, 780 F.3d 1108, 1120 (11th Cir. 2015) (affirming denial of

qualified immunity when officer did not request any medical assistance at all for a gunshot victim for 3.5 minutes and then misrepresented the 911 call to further delay an ambulance by 7 minutes); *see also Bozeman v. Orum*, 422 F.3d 1265, 1273 (11th Cir. 2005), *abrogated on other grounds by Kingsley v. Hendrickson*, 576 U.S. 389 (2015). For example, in *Bozeman*, the court reasoned that when an inmate appeared lifeless to officers for 14 minutes and the officers did not "(1) check [his] breathing or pulse; (2) call for medical assistance; or (3) administer CPR themselves, during the fourteen minutes in question," a reasonable jury could find deliberate indifference.  422 F.3d at 1274.  However, Deputies Herd and Taylor Gregory did not completely delay medical treatment in this case. As alleged by the Plaintiff, they did attempt CPR and to use a defibrillator when they saw that Broady was in distress.

To the Court's knowledge, Deputies Herd and Taylor Gregory are not medical professionals.  Accordingly, perhaps their attempt to perform CPR and use a defibrillator themselves, rather than immediately calling for professional help, could constitute grossly inadequate treatment.[19] *See Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985) ("Although the plaintiff has been provided with aspirin, this may not constitute adequate medical care." (quoting *West v. Keve*, 671

---

[19] While case law has evolved to suggest that there is a difference between "real" medical help and that provided by an officer, that case law did not exist at the time of Broady's death. *See Wade v. Daniels*, 36 F.4th 1318, 1327 (11th Cir. 2022) (explaining that an officer pressing on a gunshot wound did not constitute acceptable medical care and a reasonable jury could find deliberate indifference when officers delayed in calling an ambulance for a gunshot victim for four minutes; although, the court further found that this conduct did not violate clearly established law).

F.2d 158, 162 (3d Cir. 1978)). However, to demonstrate that a constitutional right was clearly established, the plaintiff may take three approaches:

> First, he can point to a materially similar case decided by the Supreme Court, [the Eleventh Circuit], or the highest court of the relevant state that clearly establishes the unlawfulness of the police conduct. *Morton v. Kirkwood*, 707 F.3d 1276, 1282 (11th Cir. 2013). Second, even in the absence of such precedent, a plaintiff can point to a "broader, clearly established principle [that] should control the novel facts in [his] situation," *id.* (alterations in original) (quoting *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005)), provided that the principle gives the officer "reasonable warning that the conduct at issue violated constitutional rights," *Hope v. Pelzer*, 536 U.S. 730, 740 (2002). Third, a plaintiff can show that the conduct at issue "lies so obviously at the very core of what the [Constitution] prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law." *Lee v. Ferraro*, 284 F.3d 1188, 1199 (11th Cir. 2002).

*Hunter*, 941 F.3d at 1278 (cleaned up).

Plaintiff has not directed the Court to any binding case, nor has the Court found one, where it was determined that an officer's attempt to use CPR or a defibrillator, rather than immediately calling for professional help, would constitute deliberate indifference. Further, the Court does not believe it was plainly obvious or against a clearly established principle that attempting to provide life-saving measures, rather than immediately calling for an ambulance, would violate Broady's rights. Therefore, the Court finds that Deputies Herd and Taylor Gregory's conduct regarding Broady's medical care did not violate clearly established law. Deputies Herd and Taylor Gregory are entitled to qualified immunity on this Count.

### d.    Count Eleven/Ten

61

As to Count Eleven/Count Ten—§ 1983 Conspiracy to Violate Plaintiff's Fourth Amendment Rights, these Defendants argue that "Plaintiff fails to allege any non-conclusory facts that would allow the Court to infer that the deputies agreed to join a conspiracy to deprive the deceased of his 4th Amendment rights. . . . Plaintiff only provides conclusory and generalized allegations that the deputies had an agreement with the other Defendants to deprive the deceased of his constitutional rights." (Doc. 65-4 at 17.) Plaintiff failed to respond to this argument whatsoever. Regardless, to allege a conspiracy, a plaintiff must provide sufficient factual allegations that "the defendants reached an understanding to deny the plaintiff's rights." *Hadley v. Gutierrez*, 526 F.3d 1324, 1332 (11th Cir. 2008); *Grider v. City of Auburn*, 618 F.3d 1240, 1260 (11th Cir. 2010) ("A plaintiff may state a § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed that resulted in the actual denial of some underlying constitutional rights."); *see also Am. Fed'n of Labor & Cong. Of Indus. Orgs.*, 637 F.3d at 1192 ("[A]n agreement may be inferred from the relationship of the parties, their overt acts and concert of action, and the totality of their conduct."). "It is not enough to simply aver in the complaint that a conspiracy existed." *Fullman v. Graddick*, 739 F.3d 553, 557 (11th Cir. 1984); *see also Twombly*, 550 U.S. at 556–57.

As alleged in the Second Amended Complaint, after speaking with Broady about his second 911 call, the officers all "immediately tackled him." (Doc. 77-1 ¶

32.) The officers thereafter allegedly commenced the tasing. (*Id.* ¶ 35.) Nothing suggests that the officers had plotted to use excessive force or thereafter made an agreement to do so. Accordingly, Plaintiff has not met her burden in establishing a conspiracy, and Defendants Herd and Taylor Gregory are entitled to qualified immunity on this claim.

### e.    Count Fourteen

Lastly, these Defendants have opposed Plaintiff's further amendment of the complaint to assert an additional count for conspiracy because the proposed count (Count Fourteen—§ 1983 Civil Conspiracy) still fails to allege any non-conclusory facts that would allow the Court to infer that the Defendants agreed to join a conspiracy to deprive Broady of his constitutional rights. (Doc. 86 at 17.) Plaintiff did not respond to this argument.

Count Fourteen in the proposed Second Amended Complaint states: "The officers, Defendants Herd, Taylor, Homan, Doss, and Anderson, implicitly or explicitly agreed to engage their Tasers on a nonresisting and nondangerous Broady, and further implicitly or explicitly agreed to delay his access to medical treatment when it became clear that Broady was in medical distress." (Doc. 77-1 ¶ 219.) As discussed above, the facts alleged do not establish that a conspiracy to use excessive force existed. As to any alleged conspiracy to delay Broady's access to medical treatment, Plaintiff has not established an underlying claim for deliberate

indifference to medical needs. Accordingly, allowing amendment of the complaint to assert this claim against Deputies Herd and Gregory would be futile.

For the reasons explained above, Deputies Herd and Taylor Gregory are entitled to qualified immunity on Counts One, Six, and Eleven/Ten. Plaintiff's proposed amendment to add Count Fourteen as to these Defendants would be futile. Plaintiff is directed to file a new complaint, if appropriate under Rule 11, within fourteen (14) days of this Opinion to cure the duplicity and shotgun pleading deficiency plaguing Counts Two and Three.

### 5. SHERIFF HALL'S MOTION TO DISMISS AND MOTION TO STRIKE

The Court now turns to Sheriff Hall's Motion to Strike Paragraph 111 of the First Amended Complaint (now Paragraph 108 of the Second Amended Complaint). (Doc. 50; Doc. 65-1.) In the relevant paragraph, Plaintiff asserts:

> Former Pickens County Sheriff Hall has also been indicted in the death of Glenn Foster, Jr., who passed away on December 6, 2021 in the custody of the Pickens County Sheriff's Office. Foster was found unresponsive in the back of a police car and his autopsy showed signs of "neck compressions and strangulation." Foster's death has gone unexplained.

(Doc. 25 ¶ 111; Doc. 77-1 ¶ 108.)

Under Fed. R. of Civ. P. 12(f), "The court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." While motions to strike are generally disfavored, the Court nonetheless finds that it is appropriate in this case because the relevant paragraph is both scandalous and immaterial. *See Schmidt v. Life Ins. Co. of North America*, 289 F.R.D. 357, 358 (M.D. Fla. 2012). It is

scandalous because it falsely accuses Sheriff Hall of being indicted of a crime. *See Blake v. Batmasian*, 318 F.R.D. 698, 700 n.4 (S.D. Fla. 2017) (explaining that a matter is scandalous when it is "both grossly disgraceful (or defamatory) and irrelevant to the action or defense"). It is immaterial because the alleged events took place after Broady's arrest, and it is not even clear that the alleged events involved the same officers that arrested Broady. *See id.* at 700 n.2 ("An allegation is immaterial if it has no value in developing the issues of the case.") While Plaintiff argues that this paragraph is relevant because it shows actions not taken by Sheriff Hall after Broady's death, i.e. his failure to discipline (Doc. 55), it is unclear how Sheriff Hall's alleged failure to discipline his officers after Broady's death could have caused a deprivation of Broady's rights. *See Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003*), abrogated in part on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010) (explaining that supervisory liability under § 1983 requires the supervisor, in some way, to have caused the plaintiff's constitutional violation). This paragraph is struck.

Now to Sheriff Hall's Motion to Dismiss. (Doc. 50; Doc. 65-1.) In the First Amended Complaint, Plaintiff asserted four counts against Sheriff Hall: Count Four—§ 1983 Failure to Supervise, Control or Discipline; Count Five—§ 1983 Failure to Train/*Canton* Liability; Count Seven—Wrongful Death (Negligence); and Count Nine—Wrongful Death (Wantonness). (Doc. 25.) In the proposed Second

Amended Complaint, Plaintiff asserts these same claims against Deputy Herd and Deputy Taylor Gregory (though Count Nine was renumbered to Count Eight), along with two new claims: Count Fourteen—§ 1983 Civil Conspiracy and Count Fifteen—State Law Civil Conspiracy. (Doc. 77-1.) The Court first discusses the state-law claims and then discusses the federal-law claims.

### i.    STATE-LAW CLAIMS

As discussed in the first half of this Opinion, the state-law wrongful death claims asserted against Sheriff Hall are barred by the statute of limitations.[20] In objecting to Plaintiff's Motion to File a Second Amended Complaint, Sheriff Hall has also asserted that Count Fifteen—State Law Civil Conspiracy would also be barred by the statute of limitations. (Doc. 86 at 3.) Alabama state-law civil conspiracy claims are subject to a two-year statute of limitations under § 6-2-38(l), and as discussed above, Plaintiff did not exhibit a bona fide intent to immediately serve Sheriff Hall until after two years had passed from Broady's death. *See Freeman v. Holyfield*, 179 So. 3d 101, 105 (Ala. 2015). Accordingly, the Court agrees that Plaintiff's amendment to assert this claim against Sheriff Hall would be futile.

### ii.    FEDERAL-LAW CLAIMS

---

[20] Sheriff Hall also argues that he is entitled to State Immunity on the wrongful death claims, which Plaintiff has not contested (Doc. 55).

As to the remaining two claims asserted in the First Amended Complaint, which are brought under § 1983 against Sheriff Hall in his supervisory capacity, Sheriff Hall pleads qualified immunity. Once a government official shows that they were acting within their discretionary authority, the burden shifts to the plaintiff to establish that the official violated a clearly established constitutional right. *See Hunter*, 941 F.3d at 1278. Sheriff Hall was clearly acting within his discretionary authority when making decisions regarding the supervision, discipline, control, and training of his subordinate officers. *See Hardy v. Town of Hayneville*, 50 F. Supp. 2d 1176, 1189 (M.D. Ala. 1999) ("It cannot be seriously contested that decisions concerning hiring, training, and supervision of officers fall within the discretionary authority of the Chief of Police."). Thus, the burden shifts to the Plaintiff to establish that Sheriff Hall violated a clearly established right.

The standard to hold a supervisor liable in his supervisory capacity is "extremely rigorous." *Christmas v. Harris County*, 51 F.4th 1348, 1355 (11th Cir. 2022) (citation omitted). As explained in the Court's prior opinion, "supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360. As Plaintiff does not allege that Sheriff Hall was present at any time during the alleged events, the Court evaluates whether Plaintiff has

established a causal connection between Sheriff Hall's actions and any alleged constitutional violation, specifically the use of excessive force, unreasonable seizure, or inadequate medical care.

### a.    Count Four

To establish the requisite causal connection for Count Four: § 1983 Failure to Supervise, Control or Discipline, Plaintiff must either allege (1) "a history of widespread abuse [that] puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so"; (2) the supervisor's "custom or policy . . . result[s] in deliberate indifference to constitutional rights"; or (3) "that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* (quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1234–35 (11th Cir. 2003)). The history of widespread abuse must be "obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences." *Keith v. Dekalb County*, 749 F.3d 1034, 1048–49 (11th Cir. 2014) (first quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999). To prove that a supervisor's custom or policy (or absence of a policy) resulted in deliberate indifference to constitutional rights, "a plaintiff must point to multiple instances or multiple reports of prior misconduct by a particular employee." *Piazza v. Jefferson County*, 923 F.3d 947, 957 (11th Cir. 2019) (citations omitted). *But see Harper v. Lawrence County*, 592 F.3d 1227, 1237 (11th Cir. 2010) (denying

qualified immunity to supervisors based on the specific allegations regarding customs and policies and a "strikingly similar" incident that took place one month before). This is because a policy is an official decision of the department, while "[a] custom is an unwritten practice that is applied consistently enough to take the same effect as a policy." *Goebert*, 510 F.3d at 1332.

Plaintiff claims that she has sufficiently alleged "a pattern of excessive force" within the Pickens County Police Department that Sheriff Smith has failed to correct. (Doc. 55 at 4.) Specifically, Plaintiff alleges: "It was common for officers in these law enforcement departments to use Tasers cavalierly and callously, even when it was evident that the use of a Taser was not required in order for the person being tased to be compliant. This included consistent use of tasing to 'wake up' detainees who were asleep, drugged, or otherwise unconscious." (Doc. 77-1 ¶ 36.) She also alleges that Sheriff Hall has previously been sued once for excessive force against Wallace Wilder (*Id.* ¶ 107) and, as previously mentioned, that Sheriff Hall has been indicted for the death of Glen Foster, Jr. (*Id.* ¶ 108). She additionally attached an affidavit to the Second Amended Complaint sworn to by Sidny Briana Driver, a correctional officer in the Pickens County Sheriff's Office, who states that she had "[p]rior to the incident involving Mr. Broady, witnessed several incidents in which Pickens County deputies and correctional officers used physical force against

inmates and detainees including use of their tasers at times when a detainee or inmate was restrained or was otherwise being compliant." (Doc. 77-2 ¶ 20.)

Plaintiff's allegations are insufficient to demonstrate a causal connection. First, the allegations do not portray a "history of widespread abuse that puts [a] reasonable supervisor on notice," *Cottone*, 326 F.3d at 1360, because the only specific allegations pertain to the alleged use of excessive force against Wallace Wilder and the stricken, and further inapposite, allegation regarding the suspicious death and possible strangulation of Glen Foster, Jr.  Plaintiff's remaining allegations are plainly conclusory and not the kind of "rampant" conduct that would place Sheriff Hall on actual or constructive notice. *See Doe v. Sch. Bd. of Broward Cnty.*, 604 F.3d 1248, 1266 (11th Cir 2010) (explaining that the conclusory assertion of a "history of widespread abuse" was insufficient to put a supervisor on notice). For instance, Plaintiff states it was "common" for officers to use tasers callously and that there have been "several instances" of officers using tasers against compliant detainees, but she does not allege any specific factual detail of these instances, such as over what period of time these acts took place, what were the circumstances, how many times it occurred, or by which officers. *See Hawk v. Klaetsch*, 522 F. App'x 733, 736 (11th Cir. 2013) (explaining that three incidents over five years did not constitute widespread abuse). Further, to the extent Plaintiff alleges that it was

"common" for officers to callously use their tasers by waking up detainees, there is no allegation the officers misused their tasers in that way in this case.

Second, Plaintiff does not allege that Sheriff Hall directed his subordinate officers, Deputies Herd and Taylor Gregory, to act unlawfully or directly knew that they would use excessive force, conduct an unlawful seizure, or provide inadequate medical care. Lastly, Plaintiff has not alleged that Sheriff Hall's customs or policies resulted in deliberate indifference. Deliberate indifference requires showing "that the defendant was actually aware that his own conduct caused a substantial risk of serious harm to the plaintiff." *See Wade v. McDade*, 106 F.4th 1251, 1261 (11th Cir. 2024). Plaintiff has simply not established that Sheriff Hall had subjective knowledge of a risk that Deputies Herd or Taylor Gregory would seriously harm Broady or any other citizen, as she has not pointed to any prior instances of their misconduct. *See Piazza*, 923 F.3d at 95. Other than the one prior excessive force lawsuit brought against Sheriff Hall, which may have not even involved these deputies (Doc. 77-1 ¶ 108), there is no indication that Sheriff Hall knew of any "custom" of misusing tasers, delaying medical care, or conducting illegal seizures. Because Plaintiff has not sufficiently alleged that Sheriff Hall violated a clearly established constitutional right, he is entitled to qualified immunity on Count Four— § 1983 Failure to Supervise, Control or Discipline claim.

**b.    Count Five**

As to Count Five—§ 1983 Failure to Train/*Canton* Liability, this claim "implicates a different, albeit similar rule: under § 1983, a supervisor can be held liable for failing to train his or her employees 'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact.'" *Keith*, 749 F.3d at 1052 (quoting *City of Canton*, 489 U.S. at 388). This means that the supervisor had "'actual or constructive notice that a particular omission in their training program causes [his or her] employees to violate citizens' constitutional rights,' and that armed with that knowledge the supervisor chose to retain that training program." *Keith*, 749 F.3d at 1052 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). Establishing notice ordinarily requires a "pattern of similar constitutional violations." *Connick*, 563 U.S. at 61. Though, as discussed above, "the Supreme Court has left open the possibility that a single incident may prove sufficient to hold a supervisor liable for a failure to train" when the need to train is just "so obvious." *Keith*, 749 F.3d at 1053 n.56 (citing *Canton*, 489 U.S. at 390 n.10).

As previously mentioned, Plaintiff has not alleged a pattern of constitutional violations against Pickens County deputies that would place Sheriff Hall on notice of the need for further training. Additionally, as previously discussed, this is not a

situation where the need for further training was "so obvious" as to provide notice.[21]

To the contrary, this is a situation "[w]here the proper response . . . is obvious to all

without training" so that a failure to train "is generally not 'so likely' to produce a

wrong decision as to support an inference of deliberate indifference." *Sewell*, 117

F.3d at 490 (quoting *Walker*, 974 F.2d at 299–300). Accordingly, Sheriff Hall is

entitled to qualified immunity on Count Five—§ 1983 Failure to Train/*Canton*

Liability.

### c.    Count Fourteen

Lastly, Sheriff Hall contends that Plaintiff's attempt to assert a new claim

against him in the Second Amended Complaint, Count Fourteen—§ 1983 Civil

Conspiracy, is futile. In the Second Amended Complaint, Plaintiff merely states that

Defendant Hall is liable for an alleged conspiracy to taser Broady and to delay his

access to medical care because he "created a custom or practice within [his]

respective law enforcement agenc[y] to taser people when it was not warranted or

justified." (Doc. 77-1 ¶ 222.) But, as indicated above, "[d]emonstrating a policy or

custom requires 'show[ing] a persistent and wide-spread practice." *Goebert*, 510

F.3d at 1332 (quoting *Depew v. City of St. Mary's*, 787 F.2d 1496, 1499 (11th Cir.

---

[21] Even if this were a situation where the need for further training was "so obvious" that Sheriff
Hall would have been on notice of the need for further training and thus would have violated
Broady's constitutional rights, Sheriff Hall would still be entitled to qualified immunity because
the constitutional right would not be clearly established. As discussed in the prior Opinion, the
Court has been unable to locate, and the Plaintiff has not directed the Court to, a case where the
need to train in this situation was "so obvious."

1986)). Plaintiff's allegations do not establish a custom or practice of excessive force from the use of tasers. Further, "Plaintiff['s] claims under a theory of supervisory liability fail because the underlying § 1983 claims fail." *Mann v. Taser Intern'l, Inc.*, 588 F.3d 1291, 1308 (11th Cir. 2009); *see also Knight through Kerr v. Miami-Dade County*, 856 F.3d 1251, 1261 (11th Cir. 2017) ("There can be no policy-based liability or supervisory liability when there is no underlying constitutional violation.") (first citing *City of Los Angeles v. Heller*, 475, U.S. 796, 799 (1986); then citing *Miller v. Harget*, 458 F.3d 1251, 1261 (11th Cir. 2006)).  As explained above, Plaintiff did not establish a conspiracy that Deputies Herd and Taylor Gregory were a part of.  For these reasons, allowing amendment of the First Amended Complaint to state this claim against Sheriff Hall would be futile.

As no claims against Sheriff Hall remain, he is due to be dismissed as a defendant.

### 6. PICKENS COUNTY'S OBJECTION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND TO RE-ADD CLAIMS AGAINST PICKENS COUNTY

Pickens County objects to Plaintiff's Motion for Leave to File a Second Amended Complaint and to Re-Add Pickens County as a Defendant (Doc. 77) because Plaintiff's pleading is procedurally deficient. The objection is due to be sustained. When Plaintiff voluntarily dismissed Pickens County on February 28, 2024 pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i), the dismissal "ha[d] the effect of

placing the parties in a position as if the suit had never been filed." *Dade County v. Rohr Indus., Inc.*, 826 F.2d 983, 989 (11th Cir. 1987). The Court then only retained jurisdiction over collateral issues, not over the merits of the case. *See Absolute Activist Value Master Fund Limited v. Devine*, 998 F.3d 1258, 1266 (11th Cir. 2021). As a result, the Court cannot simply "re-add" Pickens County as a defendant. Plaintiff must either file a new lawsuit against Pickens County or amend its complaint to add new claims against Pickens County. Plaintiff's proposed Second Amended Complaint does not assert any claims against Pickens County. (Doc. 77-1.) Accordingly, allowing Plaintiff to file her proposed Second Amended Complaint (Doc. 77-1) would not insert Pickens County back into this lawsuit.[22]

## IV.  CONCLUSION

For the reasons discussed above, the following defendants are entitled to summary judgment on Plaintiff's state-law wrongful death claims: Officer Homan, Chief Richard Black; the Town of Gordo; and Sheriff Todd Hall, Deputy Jeremy Herd, and Deputy Taylor Gregory. As to the motions to dismiss, the remaining parts of Officer Homan, Chief Richard Black and the City of Reform's Motion is denied; Deputy Herd and Deputy Taylor Gregory's Motion is granted in part and denied in

---

[22] Further, even if Plaintiff had followed the proper procedure to state new claims against Pickens County, Plaintiff's amendment would likely have been futile. As Broady died on August 22, 2024 and most, if not all, of Plaintiff's original claims against Pickens County were subject to a two-year statute of limitations, the statute of limitations to initiate a new action against Pickens County had long past by the date Plaintiff filed her Motion. *See Dade County*, 826 F.2d at 989.

part; Sheriff Hall's Motion is granted, as is his Motion to Strike; Chief Anthony Durrah's Motion is denied; and the Town of Gordo's Motion is granted in part and denied in part. Plaintiff's Motion to Amend is granted as to the remaining defendants, but Plaintiff is not permitted to "re-add" Pickens County as a defendant. Plaintiff is further directed to refile a third amended complaint to cure the duplication and shotgun pleading deficiencies, if appropriate under Rule 11, within fourteen (14) days of this Opinion. The Alabama Public Records Law claim is dismissed as to all Defendants.

The Court will enter an Order consistent with this Memorandum of Opinion.

**DONE** and **ORDERED** on August 9, 2024.

_____
L. Scott Coogler
United States District Judge

215755

76