FILED
2025 Dec-09 PM 11:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **DeQUITA DENISE BROADY, as** | ) | |
| **personal representative of the Estate of** | ) | |
| **Michael Broady, Jr.,** | ) | **JURY TRIAL DEMANDED** |
| **Plaintiff,** | ) | |
| **v.** | ) | **CASE NO.** |
| | ) | **7:23-cv-01097-LSC** |
| **DEPUTY HERD, et al.,** | ) | |
| **Defendants.** | | |

## FOURTH AMENDED COMPLAINT

COMES NOW Plaintiff, by and through her undersigned counsel, alleging the following facts, asserting the following causes of action, and seeking to recover the following damages against Defendants. This Fourth Amended Complaint is being filed pursuant to this Court's previous orders dismissing various claims and parties and allowing Plaintiff leave to amend. (Docs. 60, 94, 140, and 159). Due to the process of discovery continuing to uncover previously unavailable evidence, Plaintiff will also file another Motion for Leave to Amend to assert additional claims.

## INTRODUCTORY STATEMENT, JURISDICTION AND PARTIES

1. This is an action to vindicate the constitutional rights of the decedent, Michael Broady, Jr., ("Broady"), who was killed by Defendants Deputy

1

Brian Herd ("Herd"), Deputy Taylor Gregory ("Gregory"), Officer Kallenna Homan ("Homan"), and Officer Austin Moss ("Moss"), with the complicity and participation of all defendants, on or about August 22, 2021. Plaintiff alleges that Broady was tased and killed as a result of the actions of defendants as described below, in violation of his Fourteenth Amendment right not to be deprived of his life without due process of law and his Fourth Amendment right, made applicable to the states via the due process clause of the Fourteenth Amendment, against unreasonable seizure.

2.      This Court has jurisdiction over this matter pursuant to 42 U.S.C. §1983, which provides a cause of action for anyone whose constitutional rights are violated by one acting under color of state law. This Court also has jurisdiction pursuant to 28 U.S.C. §1331 (federal question) and 28 U.S.C. §1343 (civil rights). This Court has jurisdiction over any asserted state law claims pursuant to its supplemental jurisdiction under 28 U.S.C. §1367. Venue is proper in the United States District Court for the Northern District of Alabama pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2). Plaintiff asserts that the Western Division is the proper Division for the filing of this action because all the acts complained of occurred there.

3.      DeQuita Broady ("Ms. Broady" or "Plaintiff") is Broady's sister and has been appointed as the personal representative of his estate by the Probate Court of Lamar County, Alabama. She is suing in that capacity on behalf of Broady's estate.

4.      Defendant Deputy Brian Herd ("Herd") was at all relevant times an officer with the Pickens County Sheriff's Department and was acting in that capacity under color of state law. She is sued in her individual capacity.

5.      Defendant Deputy Taylor Gregory ("Gregory") was at all relevant times an officer with the Pickens County Sheriff's Department and was acting in that capacity under color of state law. He is sued in his individual capacity.

6.      Defendant Officer Kallenna Homan ("Homan") was at all relevant times an officer with the Reform Police Department and was acting in that capacity under color of state law. She is sued in her individual capacity

7.      Defendant Officer Austin Moss ("Moss") was at all relevant times an officer with the Gordo Police Department and was acting in that capacity under color of state law. He is sued in his individual capacity.

8.      At all times relevant, all defendants were acting under color of state law.

**FACTS**

3

9.    At all relevant times giving rise to this complaint, Michael Broady, Jr. was a father to three minor children.

10.    Prior to the events described in this complaint, Michael Broady, Jr. had been taken in multiple times by the Pickens County Sheriff's Department, Carrollton Police Department, Gordo Police Department, and the Reform Police Department for minor, relatively harmless offenses. He was thus known personally to all of the departments listed above. These Defendants knew that Broady was not dangerous or a threat to any person, that he had a history of mental health issues, and that he had a prior drug history.

11.    On or about August 22, 2021, Broady was at a house in Reform that was known to the Reform Police Department as one that sometimes harbored drug activity.

12.    Another individual at the house told Broady that he was going to kill Broady.

13.    Broady called 911 from another room in the house.

14.    Defendant Homan arrived at the house and immediately called for backup. The other individual officer defendants (Herd, Gregory, and Moss; with Homan, henceforth "the officers") arrived shortly afterward.

15.    Broady exited the house without his shoes on.

4

16.  When officers arrived, Broady was disoriented, sweating profusely, and incoherent. His behavior—including his speech, movements, and demeanor—made it obvious to all present that he was under the influence of drugs and suffering an acute impairment.

17.  The officers asked Broady directly when he had las used methamphetamine, and Broady answered "last night"

18.  The officers therefore knew that Broady was high, intoxicated, and suffering from a drug-induced mental-health crisis, yet they failed to summon medical assistance or activate any crisis-intervention or de-escalation procedure.

19.  The officers asked Broady who it was that was trying to kill him. Broady was initially reluctant to answer because he did not want any trouble from the individual.

20.  After about the fourth time he was asked, Broady told the officers that the individual who wanted to kill him was Trey Waldrop.

21.  Waldrop has a meth problem known to all of the agencies involved and to several of the officers.

22.  At no point did any of the officers go into the house to investigate or interview anyone else at the scene, including Waldrop.

23.     Broady knew that he had a pending child support issue for which he could

        be taken to jail. He also knew that it was not something that would have him

        in jail for a long time, and was willing to cooperate.

24.     At some point, the officers obtained a warrant for Broady's arrest.

25.     Broady asked what the police were going to do. The officers told him that

        they were going to detain him, and Broady voluntarily put his hands behind

        his back.

26.     The officers put Broady in handcuffs, but for the next 16 to 17 minutes, the

        officers did not put him in a police vehicle. Instead, they casually chatted,

        amongst themselves and with Broady, and played on their phones.

27.     At some time after, Broady took his cell phone out of his pocket and dialed

        911 again, to ask if he was going to be held on the child support issue.

28.     The officers remarked on and laughed at Broady redialing 911.

29.     Broady spoke to the 911 operator, who asked if officers had arrived yet.

30.     Broady replied that they had not, which agitated the officers, particularly

        Defendant Gregory.

31.     Defendant Gregory began approaching Broady telling him to hang up the

        phone.

32.    Defendant Gregory tackled him, slamming him face-first down onto the rocky dirt road while he was already detained, in handcuffs, unarmed, and compliant.

33.    Defendants Homan and Moss approached Defendant Gregory and Broady, and Defendant Moss fired his taser at Broady.

34.    Broady was already handcuffed and was posing no threat to the officers, to himself, or to any other person.

35.    Broady was well-known by the officers because of his prior run-ins with law enforcement that led to him spending time in the city or county jails, and he was known as a good guy who was never violent and was trusted by the jail officials so much that he served as a "trustee" in the jails on the occasions that he was incarcerated there.

36.    Despite this knowledge, the officers, including each individual officer, tased Broady numerous times and "dry-stunned" him while he was on the ground handcuffed, and already pinned down.

37.    Officer Moss initiated the physical use of force by tasing Broady while he was already on the ground and handcuffed by other officers.

38.    Moss tased Broady multiple times while Broady's hands were cuffed behind his back.

39.   Moss used his flashlight to repeatedly strike Broady while he was
      handcuffed, on the ground.

40.   Moss then used his police flashlight as a choking device, pressing it against
      Broady's neck until Broady's body went limp. The medical examiner later
      confirmed an acute fracture of the left hyoid bone with local soft-tissue
      hemorrhage, consistent with a chokehold or blunt trauma to the neck.

41.   While Broady lay prone, another officer on the scene, Officer Anderson, also
      tased Broady repeatedly, despite his hands being cuffed.

42.   While Broady lay handcuffed on the ground and was already being tased by
      other officers, Defendant Officer Taylor Gregory stepped in and delivered a
      violent kick to Broady's body, further injuring him and compounding the
      trauma he was already suffering.

43.   As Broady lay on the ground being attacked by Defendants, his physical
      condition deteriorated in ways that were plainly observable to any layperson.
      This included gasping for air, slowed and labored breathing, slurred and
      markedly slowed speech, intermittent unresponsiveness, and statements
      indicting numbness and an inability to move his extremities.

44.   Once Broady was completely subdued, handcuffed, and his legs shackled,
      Moss and Anderson forcibly lifted him into the back seat of a police vehicle.

45.    While Broady lay on his side in the back of the vehicle, Moss fired a Taser directly into the car, striking Broady again while he was fully restrained. Moss continued to tase Broady more than 4 times, while he was handcuffed, lying on his stomach and side, in the back of the police vehicle.

46.    Anderson, observed by Moss, Herd, Gregory, and Homan, slammed the car door on Broady's head several times, causing additional injury.

47.    During the course of Defendants getting Broady fully into the vehicle, which was a struggle in large part due to Broady's inability to move all extremities due to Defendants' assault, Broady became partially or completely wedged between the back of the front seats and the bottom lip of the back seat and was unable to twist out of the position.

48.    Officers then closed the car doors and left Broady unresponsive inside the patrol vehicle for several minutes before realizing he was no longer breathing.

49.    The officers did not seat Broady upright, put a safety harness over his chest, or put a safety belt across his lap.

50.    As Homan got into the vehicle and began to drive, Broady attempted to speak to her but his communication was more unintelligible.

51.    During transport, Homan appeared to communicate with Broady, looking
       back several times, and calling his name. At one point, Homan made a
       phone call to an individual, presumably regarding the situation with Broady.
       This portion of the audio was mute.

52.    When the officers reached the Pickens County Jail, Broady was laying down
       and not moving in the back of the police car with his hands and feet
       handcuffed, chest bare, and Taser prongs embedded in his skin.

53.    Initially, they attempted to place Broady in a restraining chair after removing
       his body from the police vehicle.

54.    Upon closer examination, the officers, including Homan, Moss, and
       Gregory, realized that Broady was not breathing.

55.    Sidny Driver, aka Briana Starnes, was working as a jailer/correctional officer
       for Pickens County and was witness to the following events that occurred at
       Pickens County Jail that evening.

56.    The officers laid Broady's limp body on the concrete pavement next to the
       police vehicle, uncuffed him, and began attempting to perform CPR.

57.    While one officer was doing chest compressions, Moss retrieved a oxygen
       tank to connect to a breathing apparatus to supply Broady with oxygen.

58.    Moss connected the oxygen tank but soon realized that the tank was empty.

59.    Moss then went to a police car and retrieved another oxygen tank. This tank was not empty.

60.    In addition to the chest compressions being done by various officers, they also attempted to use a AED. However, from the video, it appears that none of the officers were either properly trained or did not know how to use that device.

61.    After several minutes of CPR and discussions around what to do, the officers decided to take Broady to an abandoned hospital.

62.    Upon arrival at the abandoned hospital, the videos turn off.

63.    Broady was later pronounced dead.

64.    The coroner's report determined that Broady's death was caused by a combination of asphyxia, blunt-force trauma, and complications of restraint, consistent with the events depicted in the body-camera and surveillance footage.

65.    The coroner found that Broady's hyoid bone was fractured and that his anterior strap muscles of his left neck had focal hemorrhaging.

66.    These diagnoses are consistent with injuries to Broady's neck, exacerbated by being repeatedly Tasered, having caused his death.

67.    The facts alleged herein demonstrate that Defendants were confronted with clear and observable indications that Mr. Broady was experiencing a serious and emergent medical crisis. After being subjected to multiple Taser deployments, Mr. Broady displayed visible signs of drug intoxication and medical distress, including heavy and labored breathing, impaired responsiveness, and slurred or altered speech. Following the use of force—including being tased, choked with a flashlight, and kicked—Mr. Broady's demeanor and level of consciousness abruptly deteriorated, and he verbally acknowledged being under the influence of illicit narcotics.

68.

69.    Defendants thereafter placed Mr. Broady in the backseat of a patrol vehicle in a prone or otherwise medically hazardous position while he remained handcuffed behind his back and restrained at the ankles, further compromising his ability to breathe. Despite these escalating symptoms, Defendants failed to summon EMS or arrange for emergency medical evaluation. Even after observing that Mr. Broady had become unconscious and was no longer breathing, Defendants delayed or failed to initiate any request for immediate medical assistance.

70.    At all times during which he was tased, Mr. Broady was handcuffed behind
his back. At several points, he was both handcuffed behind his back and
shackled at the ankles. While in this restrained state and positioned prone on
the ground, one or more officers climbed onto Mr. Broady's back while
simultaneously deploying a Taser against him.

71.    During each stage of the encounter—including when officers kicked Mr.
Broady's phone from his hand, when officers piled onto his back, when they
applied multiple Taser cycles, during the prolonged struggle involving
several officers, when they removed his cell phone after tasing him on the
ground, when they applied ankle shackles, and when they placed him into
the backseat of Officer Homan's patrol vehicle—Defendants were aware,
through training and experience, of the well-known risk of suffocation and
positional asphyxia associated with keeping a restrained individual in a
prone position.

72.    Throughout the encounter, Mr. Broady was kept in a prone position for
substantial periods, including while Defendants repeatedly deployed their
Tasers and while they asserted a pretextual justification for attempting to
seize his cell phone.

73.   Defendants also knew or reasonably should have known that Mr. Broady
      was under the influence of illicit drugs. Mr. Broady repeatedly told officers
      that he had used drugs earlier that day. The encounter occurred at a location
      known to officers as a drug house. Several responding officers had prior
      interactions with Mr. Broady and were aware of his history of addiction. In
      addition, Mr. Broady displayed signs of drug-induced confusion and
      delusion; despite being surrounded by uniformed officers, multiple marked
      patrol vehicles, and officers communicating by radio with dispatch, he
      repeatedly stated that he still needed police assistance and attempted to dial
      9-1-1 to request it.

74.   At no time did any defendant raise any objection or suggest any alternative
      to assaulting Broady and tasing him numerous times or suggest any industry
      protocols or techniques from their training to deescalate the situation.

## COUNT ONE
## § 1983 FOURTH AMENDMENT UNREASONABLE
## SEIZURE/EXCESSIVE FORCE (TASER)
## DEFENDANT HOMAN

75.   Plaintiff reavers and realleges the claims made in Paragraphs 1-36, 43, 48-
      54, and 63-66 as if fully set forth herein.

76.    Under color of state law and within the course and scope of their

employment as law enforcement officers, and without just cause or

provocation, Defendant Homan assaulted and battered Broady by tasering

him multiple times while he was handcuffed, unarmed, compliant, and not a

threat to himself or anyone else. The tasering of Broady constituted a seizure

of his person through the application of force under the Fourth Amendment

to the United States Constitution.

77.    The repeated discharge of Tasers against a restrained and non-resistant

individual constitutes excessive and unreasonable force under clearly

established law, including *Graham v. Connor*, 490 U.S. 386 (1989).

78.    Defendant Homan's use of force was not objectively reasonable in that she

used more force than a reasonable police officer at the scene would have

used under the circumstances. The use of force was clearly excessive in that

she did not have any probable cause or reasonable suspicion to believe that

Broady posed an immediate threat of harm either to themselves or to others.

79.    Defendant Homan knew that Broady posed no threat to any of them or to

anybody else, and that a taser is supposed to be used only on those who are

threatening or resisting.

80.    Defendant Homan knew that a taser can be considered deadly force if abuse.

81.    Courts have long recognized that the Fourth Amendment, prohibiting unreasonable seizures, is applicable to the states via the due process clause of the Fourteenth Amendment.

82.    When Broady was assaulted and tased, defendants seized him through the use of excessive and unreasonable force in violation of his rights under the Fourth Amendment.

83.    Defendant Homan was never in a position where she needed to use deadly force to protect themselves, nor would a reasonable officer in her position have perceived themselves to be. The officers' unlawful actions created the conditions that resulted in Broady's death and were the proximate cause of his death.

84.    Defendant Homan's actions were deliberately indifferent to their potential consequences. The totality of the circumstances dictated that a reasonable officer in a similar situation would employ alternative approaches, of which Defendant was, or should have been, aware and which would have prevented Broady's unnecessary death.

85. Defendant Homan's conduct was willful, malicious, and undertaken with

    deliberate indifference to Broady's constitutional rights.

    WHEREFORE PREMISES CONSIDERED, Plaintiff seeks compensatory

    damages as allowed by law; statutory damages pursuant to 42 U.S.C. §§

    1983 and 1988; Punitive damages as allowed by law; reasonable attorneys'

    fees, court cost and expenses pursuant to 42 U.S.C. § 1988 or otherwise

    appropriate; that the Court determine and declare the actions of Defendants

    to be improper, illegal and/or unconstitutional and as such void and without

    legal effect; and such other further, and different relief as to which Plaintiff

    is entitled.

### COUNT TWO
### § 1983 FOURTH AMENDMENT UNREASONABLE
### SEIZURE/EXCESSIVE FORCE (TASER)
### DEFENDANT HERD

86. Plaintiff reavers and realleges the claims made in Paragraphs 1-36, 43, 48-

    54, and 63-66 as if fully set forth herein.

87. Under color of state law and within the course and scope of their

    employment as law enforcement officers, and without just cause or

    provocation, Defendant Herd assaulted and battered Broady by tasering him

    multiple times while he was handcuffed, unarmed, compliant, and not a

threat to himself or anyone else. The tasering of Broady constituted a seizure of his person through the application of force under the Fourth Amendment to the United States Constitution.

88.   The repeated discharge of Tasers against a restrained and non-resistant individual constitutes excessive and unreasonable force under clearly established law, including *Graham v. Connor*, 490 U.S. 386 (1989).

89.   Defendant Herd's use of force was not objectively reasonable in that he used more force than a reasonable police officer at the scene would have used under the circumstances. The use of force was clearly excessive in that he did not have any probable cause or reasonable suspicion to believe that Broady posed an immediate threat of harm either to themselves or to others.

90.   Defendant Herd knew that Broady posed no threat to any of them or to anybody else, and that a taser is supposed to be used only on those who are threatening or resisting.

91.   Defendant Herd knew that a taser can be considered deadly force if abused.

92.   Courts have long recognized that the Fourth Amendment, prohibiting unreasonable seizures, is applicable to the states via the due process clause of the Fourteenth Amendment.

93.   When Broady was assaulted and tased, defendants seized him through the
      use of excessive and unreasonable force in violation of his rights under the
      Fourth Amendment.

94.   Defendant Herd was never in a position where he needed to use deadly force
      to protect themselves, nor would a reasonable officer in her position have
      perceived themselves to be. The officers' unlawful actions created the
      conditions that resulted in Broady's death and were the proximate cause of
      his death.

95.   Defendant Herd's actions were deliberately indifferent to their potential
      consequences. The totality of the circumstances dictated that a reasonable
      officer in a similar situation would employ alternative approaches, of which
      Defendant was, or should have been, aware and which would have prevented
      Broady's unnecessary death.

96.   Defendant Herd's conduct was willful, malicious, and undertaken with
      deliberate indifference to Broady's constitutional rights.

      WHEREFORE PREMISES CONSIDERED, Plaintiff seeks compensatory
      damages as allowed by law; statutory damages pursuant to 42 U.S.C. §§
      1983 and 1988; Punitive damages as allowed by law; reasonable attorneys'
      fees, court cost and expenses pursuant to 42 U.S.C. § 1988 or otherwise

appropriate; that the Court determine and declare the actions of Defendants to be improper, illegal and/or unconstitutional and as such void and without legal effect; and such other further, and different relief as to which Plaintiff is entitled.

### COUNT THREE
### § 1983 FOURTH AMENDMENT UNREASONABLE
### SEIZURE/EXCESSIVE FORCE (TASER)
### DEFENDANT GREGORY

97.   Plaintiff reavers and realleges the claims made in Paragraphs 1-36, 43, 48-54, and 63-66 as if fully set forth herein.

98.   Under color of state law and within the course and scope of their employment as law enforcement officers, and without just cause or provocation, Defendant Gregory assaulted and battered Broady by tasering him multiple times while he was handcuffed, unarmed, compliant, and not a threat to himself or anyone else. The tasering of Broady constituted a seizure of his person through the application of force under the Fourth Amendment to the United States Constitution.

99.   The repeated discharge of Tasers against a restrained and non-resistant individual constitutes excessive and unreasonable force under clearly established law, including *Graham v. Connor*, 490 U.S. 386 (1989).

100.  Defendant Gregory's use of force was not objectively reasonable in that he used more force than a reasonable police officer at the scene would have used under the circumstances. The use of force was clearly excessive in that he did not have any probable cause or reasonable suspicion to believe that Broady posed an immediate threat of harm either to themselves or to others.

101.  Defendant Gregory knew that Broady posed no threat to any of them or to anybody else, and that a taser is supposed to be used only on those who are threatening or resisting.

102.  Defendant Gregory knew that a taser can be considered deadly force if abused.

103.  Courts have long recognized that the Fourth Amendment, prohibiting unreasonable seizures, is applicable to the states via the due process clause of the Fourteenth Amendment.

104.  When Broady was assaulted and tased, defendants seized him through the use of excessive and unreasonable force in violation of his rights under the Fourth Amendment.

105.  Defendant Gregory was never in a position where he needed to use deadly force to protect themselves, nor would a reasonable officer in her position have perceived themselves to be. The officers' unlawful actions created the

conditions that resulted in Broady's death and were the proximate cause of his death.

106.    Defendant Gregory's actions were deliberately indifferent to their potential consequences. The totality of the circumstances dictated that a reasonable officer in a similar situation would employ alternative approaches, of which Defendant was, or should have been, aware and which would have prevented Broady's unnecessary death.

107.    Defendant Gregory's conduct was willful, malicious, and undertaken with deliberate indifference to Broady's constitutional rights.

WHEREFORE PREMISES CONSIDERED, Plaintiff seeks compensatory damages as allowed by law; statutory damages pursuant to 42 U.S.C. §§ 1983 and 1988; Punitive damages as allowed by law; reasonable attorneys' fees, court cost and expenses pursuant to 42 U.S.C. § 1988 or otherwise appropriate; that the Court determine and declare the actions of Defendants to be improper, illegal and/or unconstitutional and as such void and without legal effect; and such other further, and different relief as to which Plaintiff is entitled.

## COUNT FOUR
## § 1983 FOURTH AMENDMENT UNREASONABLE
## SEIZURE/EXCESSIVE FORCE (TASER)

## DEFENDANT MOSS

108. Plaintiff reavers and realleges the claims made in Paragraphs 1-38, 43, 48-54, and 63-66 as if fully set forth herein.

109. Under color of state law and within the course and scope of their employment as law enforcement officers, and without just cause or provocation, Defendant Moss assaulted and battered Broady by tasering him multiple times while he was handcuffed, unarmed, compliant, and not a threat to himself or anyone else. The tasering of Broady constituted a seizure of his person through the application of force under the Fourth Amendment to the United States Constitution.

110. The repeated discharge of Tasers against a restrained and non-resistant individual constitutes excessive and unreasonable force under clearly established law, including *Graham v. Connor*, 490 U.S. 386 (1989).

111. Defendant Moss's use of force was not objectively reasonable in that he used more force than a reasonable police officer at the scene would have used under the circumstances. The use of force was clearly excessive in that he did not have any probable cause or reasonable suspicion to believe that Broady posed an immediate threat of harm either to themselves or to others.

112.  Defendant Moss knew that Broady posed no threat to any of them or to anybody else, and that a taser is supposed to be used only on those who are threatening or resisting.

113.  Defendant Moss knew that a taser can be considered deadly force if abused.

114.  Courts have long recognized that the Fourth Amendment, prohibiting unreasonable seizures, is applicable to the states via the due process clause of the Fourteenth Amendment.

115.  When Broady was assaulted and tased, defendants seized him through the use of excessive and unreasonable force in violation of his rights under the Fourth Amendment.

116.  Defendant Moss was never in a position where he needed to use deadly force to protect themselves, nor would a reasonable officer in her position have perceived themselves to be. The officers' unlawful actions created the conditions that resulted in Broady's death and were the proximate cause of his death.

117.  Defendant Moss's actions were deliberately indifferent to their potential consequences. The totality of the circumstances dictated that a reasonable officer in a similar situation would employ alternative approaches, of which

Defendant was, or should have been, aware and which would have prevented Broady's unnecessary death.

118.  Defendant Moss's conduct was willful, malicious, and undertaken with deliberate indifference to Broady's constitutional rights.

WHEREFORE PREMISES CONSIDERED, Plaintiff seeks compensatory damages as allowed by law; statutory damages pursuant to 42 U.S.C. §§ 1983 and 1988; Punitive damages as allowed by law; reasonable attorneys' fees, court cost and expenses pursuant to 42 U.S.C. § 1988 or otherwise appropriate; that the Court determine and declare the actions of Defendants to be improper, illegal and/or unconstitutional and as such void and without legal effect; and such other further, and different relief as to which Plaintiff is entitled.

## COUNT FIVE
## § 1983 FOURTH AMENDMENT UNREASONABLE
## SEIZURE/EXCESSIVE FORCE (FLASHLIGHT)
## DEFENDANT MOSS

119.  Plaintiff reavers and realleges the claims made in Paragraphs 1-39, 43, 48-54, and 63-66 as if fully set forth herein.

120.  Under color of state law and within the course and scope of their employment as law enforcement officers, and without just cause or

provocation, Defendant Moss assaulted and battered Broady by repeatedly hitting him with his heavy flashlight while he was handcuffed, unarmed, compliant, and not a threat to himself or anyone else. This constituted a seizure of his person through the application of force under the Fourth Amendment to the United States Constitution.

121.    Law enforcement training and professional standards universally prohibit targeting the head, neck, or throat with an impact instrument except when deadly force is justified.

122.    The use of a baton, flashlight, or other blunt weapon against a restrained and non-resistant individual constitutes excessive and unreasonable force under clearly established law, including *Graham v. Connor*, 490 U.S. 386 (1989).

123.    Defendant Moss's use of force was not objectively reasonable in that he used more force than a reasonable police officer at the scene would have used under the circumstances. The use of force was clearly excessive in that he did not have any probable cause or reasonable suspicion to believe that Broady posed an immediate threat of harm either to themselves or to others.

124.    Defendant Moss knew that Broady posed no threat to any of them or to anybody else.

125.  Courts have long recognized that the Fourth Amendment, prohibiting unreasonable seizures, is applicable to the states via the due process clause of the Fourteenth Amendment.

126.  Defendant's actions represented a seizure of Broady through the use of excessive and unreasonable force in violation of his rights under the Fourth Amendment.

127.  Defendant Moss was never in a position where he needed to use deadly force to protect himself, nor would a reasonable officer in her position have perceived themselves to be. The officers' unlawful actions created the conditions that resulted in Broady's death and were the proximate cause of his death.

128.  Defendant Moss's actions were deliberately indifferent to their potential consequences. The totality of the circumstances dictated that a reasonable officer in a similar situation would employ alternative approaches, of which Defendant was, or should have been, aware and which would have prevented Broady's unnecessary death.

129.  Defendant Moss's conduct was willful, malicious, and undertaken with deliberate indifference to Broady's constitutional rights.

WHEREFORE PREMISES CONSIDERED, Plaintiff seeks compensatory damages as allowed by law; statutory damages pursuant to 42 U.S.C. §§ 1983 and 1988; Punitive damages as allowed by law; reasonable attorneys' fees, court cost and expenses pursuant to 42 U.S.C. § 1988 or otherwise appropriate; that the Court determine and declare the actions of Defendants to be improper, illegal and/or unconstitutional and as such void and without legal effect; and such other further, and different relief as to which Plaintiff is entitled.

## COUNT SIX
## § 1983 FOURTH AMENDMENT UNREASONABLE SEIZURE/EXCESSIVE FORCE (BAR HOLD) DEFENDANT MOSS

130.  Plaintiff reavers and realleges the claims made in Paragraphs 1-40, 43, 48-54, and 63-66 as if fully set forth herein.

131.  Under color of state law and within the course and scope of their employment as law enforcement officers, and without just cause or provocation, Defendant Moss assaulted and battered Broady by holding in a chokehold or "barhold" with his flashlight, pressing it against Broady's neck from behind until Broady went limp. This constituted a seizure of his person

through the application of force under the Fourth Amendment to the United States Constitution.

132.   The use of a barhold against a restrained and nonthreatening individual constitutes excessive and unreasonable force under clearly established law, including *Graham v. Connor*, 490 U.S. 386 (1989), and can constitute deadly force.

133.   The use of a rigid instrument to apply pressure to the throat of a subdued, handcuffed, and shackled individual constitutes deadly force, as it carries a substantial likelihood of causing death or serious bodily injury.

134.   Defendant Moss's use of force was not objectively reasonable in that he used more force than a reasonable police officer at the scene would have used under the circumstances. The use of force was clearly excessive in that he did not have any probable cause or reasonable suspicion to believe that Broady posed an immediate threat of harm either to themselves or to others.

135.   Defendant Moss knew that Broady posed no threat to any of them or to anybody else.

136.   Courts have long recognized that the Fourth Amendment, prohibiting unreasonable seizures, is applicable to the states via the due process clause of the Fourteenth Amendment.

137. Defendant seized Broady through the use of excessive and unreasonable force in violation of his rights under the Fourth Amendment.

138. Defendant Moss was never in a position where he needed to use deadly force to protect himself, nor would a reasonable officer in her position have perceived themselves to be. The officers' unlawful actions created the conditions that resulted in Broady's death and were the proximate cause of his death.

139. Defendant Moss's actions were deliberately indifferent to their potential consequences. The totality of the circumstances dictated that a reasonable officer in a similar situation would employ alternative approaches, of which Defendant was, or should have been, aware and which would have prevented Broady's unnecessary death.

140. Defendant Moss's conduct was willful, malicious, and undertaken with deliberate indifference to Broady's constitutional rights.

WHEREFORE PREMISES CONSIDERED, Plaintiff seeks compensatory damages as allowed by law; statutory damages pursuant to 42 U.S.C. §§ 1983 and 1988; Punitive damages as allowed by law; reasonable attorneys' fees, court cost and expenses pursuant to 42 U.S.C. § 1988 or otherwise appropriate; that the Court determine and declare the actions of Defendants

to be improper, illegal and/or unconstitutional and as such void and without legal effect; and such other further, and different relief as to which Plaintiff is entitled.

### COUNT SEVEN
### § 1983 FOURTH AMENDMENT UNREASONABLE
### SEIZURE/EXCESSIVE FORCE (KICK)
### DEFENDANT GREGORY

141.  Plaintiff reavers and realleges the claims made in Paragraphs 1-36, 42-43, 48-54, and 63-66  as if fully set forth herein.

142.  Under color of state law and within the course and scope of their employment as law enforcement officers, and without just cause or provocation, Defendant Gregory assaulted and battered Broady by tasering him multiple times while he was handcuffed, unarmed, compliant, and not a threat to himself or anyone else. The tasering of Broady constituted a seizure of his person through the application of force under the Fourth Amendment to the United States Constitution.

143.  The repeated discharge of Tasers against a restrained and non-resistant individual constitutes excessive and unreasonable force under clearly established law, including *Graham v. Connor*, 490 U.S. 386 (1989).

144.  Defendant Gregory's use of force was not objectively reasonable in that he

used more force than a reasonable police officer at the scene would have

used under the circumstances. The use of force was clearly excessive in that

he did not have any probable cause or reasonable suspicion to believe that

Broady posed an immediate threat of harm either to themselves or to others.

145.  Defendant Gregory knew that Broady posed no threat to any of them or to

anybody else, and that a taser is supposed to be used only on those who are

threatening or resisting.

146.  Defendant Gregory knew that a taser can be considered deadly force if

abused.

147.  Courts have long recognized that the Fourth Amendment, prohibiting

unreasonable seizures, is applicable to the states via the due process clause

of the Fourteenth Amendment.

148.  When Broady was assaulted and tased, defendants seized him through the

use of excessive and unreasonable force in violation of his rights under the

Fourth Amendment.

149.  Defendant Gregory was never in a position where he needed to use deadly

force to protect themselves, nor would a reasonable officer in her position

have perceived themselves to be. The officers' unlawful actions created the

conditions that resulted in Broady's death and were the proximate cause of his death.

150. Defendant Gregory's actions were deliberately indifferent to their potential consequences. The totality of the circumstances dictated that a reasonable officer in a similar situation would employ alternative approaches, of which Defendant was, or should have been, aware and which would have prevented Broady's unnecessary death.

151. Defendant Gregory's conduct was willful, malicious, and undertaken with deliberate indifference to Broady's constitutional rights.

WHEREFORE PREMISES CONSIDERED, Plaintiff seeks compensatory damages as allowed by law; statutory damages pursuant to 42 U.S.C. §§ 1983 and 1988; Punitive damages as allowed by law; reasonable attorneys' fees, court cost and expenses pursuant to 42 U.S.C. § 1988 or otherwise appropriate; that the Court determine and declare the actions of Defendants to be improper, illegal and/or unconstitutional and as such void and without legal effect; and such other further, and different relief as to which Plaintiff is entitled.

## COUNT EIGHT
## § 1983 FOURTH AMENDMENT UNREASONABLE
## SEIZURE/EXCESSIVE FORCE (TASER – INSIDE CAR)

## **DEFENDANT MOSS**

152. Plaintiff reavers and realleges the claims made in Paragraphs 1-40, 43-45, 48-54, and 63-66 as if fully set forth herein.

153. Under color of state law and within the course and scope of their employment as law enforcement officers, and without just cause or provocation, Defendant Moss assaulted and battered Broady by tasering him multiple times while he was handcuffed, unarmed, compliant, lying prone inside a vehicle, and not a threat to himself or anyone else. The tasering of Broady constituted a seizure of his person through the application of force under the Fourth Amendment to the United States Constitution.

154. The repeated discharge of Tasers against a restrained and non-resistant individual constitutes excessive and unreasonable force under clearly established law, including *Graham v. Connor*, 490 U.S. 386 (1989).

155. Defendant Moss's use of force was not objectively reasonable in that he used more force than a reasonable police officer at the scene would have used under the circumstances. The use of force was clearly excessive in that he did not have any probable cause or reasonable suspicion to believe that Broady posed an immediate threat of harm either to themselves or to others.

156.   Defendant Moss knew that Broady posed no threat to any of them or to
       anybody else, and that a taser is supposed to be used only on those who are
       threatening or resisting.

157.   Defendant Moss knew that a taser can be considered deadly force if abused.

158.   Courts have long recognized that the Fourth Amendment, prohibiting
       unreasonable seizures, is applicable to the states via the due process clause
       of the Fourteenth Amendment.

159.   When Broady was assaulted and tased, defendants seized him through the
       use of excessive and unreasonable force in violation of his rights under the
       Fourth Amendment.

160.   Defendant Moss was never in a position where he needed to use deadly force
       to protect themselves, nor would a reasonable officer in her position have
       perceived themselves to be. The officers' unlawful actions created the
       conditions that resulted in Broady's death and were the proximate cause of
       his death.

161.   Defendant Moss's actions were deliberately indifferent to their potential
       consequences. The totality of the circumstances dictated that a reasonable
       officer in a similar situation would employ alternative approaches, of which

Defendant was, or should have been, aware and which would have prevented

Broady's unnecessary death.

162.  Defendant Moss's conduct was willful, malicious, and undertaken with

deliberate indifference to Broady's constitutional rights.

WHEREFORE PREMISES CONSIDERED, Plaintiff seeks compensatory

damages as allowed by law; statutory damages pursuant to 42 U.S.C. §§

1983 and 1988; Punitive damages as allowed by law; reasonable attorneys'

fees, court cost and expenses pursuant to 42 U.S.C. § 1988 or otherwise

appropriate; that the Court determine and declare the actions of Defendants

to be improper, illegal and/or unconstitutional and as such void and without

legal effect; and such other further, and different relief as to which Plaintiff

is entitled.

## COUNT NINE
## § 1983 FOURTH AMENDMENT FAILURE TO INTERVENE
## DEFENDANT HOMAN

163.  Plaintiff reavers and realleges the claims made in Paragraphs 1-46, 52-54,

and 63-66 as if fully set forth herein.

164.  Defendant Homan was present and personally observed the excessive and

unconstitutional use of force by Moss and Anderson, including the flashlight

chokehold and prolonged neck compression. Broady was not actively resisting arrest or attempting to flee at the time that he was tasered. There was no need for the use of a taser to preserve the peace, maintain order or to overcome any resistance to authority by Broady.

165.    Defendant Homan had a realistic and reasonable opportunity to prevent or mitigate the constitutional violation but failed to take any action to stop or intervene.

166.    The duty to intervene to prevent another officer from using excessive force was clearly established in the Eleventh Circuit as of August 22, 2021.

167.    The duty to intervene to prevent another officer from using excessive force was clearly established in the Eleventh Circuit as of August 22, 2021.

168.    As a direct and proximate result of their inaction, Mr. Broady sustained fatal injuries and death.

169.    Homan's actions and inactions were deliberately indifferent to their potential consequences. The totality of the circumstances dictated that a reasonable officer in a similar situation would intervene in the excessive use of force by other officers, which would have prevented Broady's unnecessary death.

WHEREFORE PREMISES CONSIDERED, Plaintiff seeks compensatory damages as allowed by law; statutory damages pursuant to 42 U.S.C. §§

1983 and 1988; Punitive damages as allowed by law; reasonable attorneys'

fees, court cost and expenses pursuant to 42 U.S.C. § 1988 or otherwise

appropriate; that the Court determine and declare the actions of Defendants

to be improper, illegal and/or unconstitutional and as such void and without

legal effect; and such other further, and different relief as to which Plaintiff

is entitled.

## COUNT TEN
## § 1983 FOURTH AMENDMENT FAILURE TO INTERVENE
## DEFENDANT HERD

170.   Plaintiff reavers and realleges the claims made in Paragraphs 1-46, 52-54,

and 63-66 as if fully set forth herein.

171.   Defendant Herd was present and personally observed the excessive and

unconstitutional use of force by Moss and Anderson, including the flashlight

chokehold and prolonged neck compression. Broady was not actively

resisting arrest or attempting to flee at the time that he was tasered. There

was no need for the use of a taser to preserve the peace, maintain order or to

overcome any resistance to authority by Broady.

172.   Defendant Herd had a realistic and reasonable opportunity to prevent or

mitigate the constitutional violation but failed to take any action to stop or

intervene.

173. The duty to intervene to prevent another officer from using excessive force was clearly established in the Eleventh Circuit as of August 22, 2021.

174. The duty to intervene to prevent another officer from using excessive force was clearly established in the Eleventh Circuit as of August 22, 2021.

175. As a direct and proximate result of their inaction, Mr. Broady sustained fatal injuries and death.

176. Herd's actions and inactions were deliberately indifferent to their potential consequences. The totality of the circumstances dictated that a reasonable officer in a similar situation would intervene in the excessive use of force by other officers, which would have prevented Broady's unnecessary death.

WHEREFORE PREMISES CONSIDERED, Plaintiff seeks compensatory damages as allowed by law; statutory damages pursuant to 42 U.S.C. §§ 1983 and 1988; Punitive damages as allowed by law; reasonable attorneys' fees, court cost and expenses pursuant to 42 U.S.C. § 1988 or otherwise appropriate; that the Court determine and declare the actions of Defendants to be improper, illegal and/or unconstitutional and as such void and without legal effect; and such other further, and different relief as to which Plaintiff is entitled.

## **COUNT ELEVEN**

## § 1983 FOURTH AMENDMENT FAILURE TO INTERVENE
## DEFENDANT GREGORY

177. Plaintiff reavers and realleges the claims made in Paragraphs 1-41, 43-46, 52-54, and 63-66 as if fully set forth herein.

178. Defendant Gregory was present and personally observed the excessive and unconstitutional use of force by Moss and Anderson, including the flashlight chokehold and prolonged neck compression. Broady was not actively resisting arrest or attempting to flee at the time that he was tasered. There was no need for the use of a taser to preserve the peace, maintain order or to overcome any resistance to authority by Broady.

179. Defendant Gregory had a realistic and reasonable opportunity to prevent or mitigate the constitutional violation but failed to take any action to stop or intervene.

180. The duty to intervene to prevent another officer from using excessive force was clearly established in the Eleventh Circuit as of August 22, 2021.

181. The duty to intervene to prevent another officer from using excessive force was clearly established in the Eleventh Circuit as of August 22, 2021.

182. As a direct and proximate result of their inaction, Mr. Broady sustained fatal injuries and death.

183.  Gregory's actions and inactions were deliberately indifferent to their potential consequences. The totality of the circumstances dictated that a reasonable officer in a similar situation would intervene in the excessive use of force by other officers, which would have prevented Broady's unnecessary death.

WHEREFORE PREMISES CONSIDERED, Plaintiff seeks compensatory damages as allowed by law; statutory damages pursuant to 42 U.S.C. §§ 1983 and 1988; Punitive damages as allowed by law; reasonable attorneys' fees, court cost and expenses pursuant to 42 U.S.C. § 1988 or otherwise appropriate; that the Court determine and declare the actions of Defendants to be improper, illegal and/or unconstitutional and as such void and without legal effect; and such other further, and different relief as to which Plaintiff is entitled.

## COUNT TWELVE
## STATE LAW ASSAULT
## DEFENDANT MOSS

184.  Plaintiff reavers and realleges the claims made in Paragraphs 1-40, 43-45, 48-54, and 63-66 as if fully set forth herein.

185.  On August 22, 2021, Defendant Moss, without legal justification or privilege, intentionally and unlawfully applied physical force to Michael

41

Broady, Jr. by using a flashlight as a choking device, tasing him repeatedly, and hitting him repeatedly with a flashlight.

186.    These acts were intentional, offensive, and harmful physical contacts constituting assault and battery under the laws of the State of Alabama.

187.    As a direct and proximate result of the intentional and unlawful actions of Moss, Mr. Broady sustained severe injuries resulting in his death. WHEREFORE PREMISES CONSIDERED, pursuant to Ala. Code § 6-5-410, Plaintiff seeks punitive damages for the wrongful death of Mr. Broady caused by these intentional torts.


## COUNT THIRTEEN
## WRONGFUL DEATH
## DEFENDANT MOSS

188.    Plaintiff reavers and realleges the claims made in Paragraphs 1-74 as if fully set forth herein.

189.    Defendant owed Mr. Broady a duty to act with reasonable care and to avoid the use of unnecessary or excessive force in the course of law enforcement activities.

190.    The conduct of Defendant—including multiple taser activations, the flashlight chokehold, and repeated blunt-force trauma—was negligent,

wanton, and undertaken with reckless disregard for the safety and life of Mr.

Broady.

191.   As a proximate consequence of Defendants' negligent and wanton conduct,

Mr. Broady sustained fatal injuries and death.

WHEREFORE PREMISES CONSIDERED, Plaintiff seeks punitive

damages as allowed by law; costs and attorneys fees, and such other further,

and different relief as to which Plaintiff is entitled.

## PLAINTIFF DEMANDS A TRIAL BY JURY

*/s/Johnathan F. Austin*
Johnathan F. Austin
Attorney for Plaintiff

AUSTIN LAW, P.C.
P.O. Box 321173
Birmingham, AL 35212
Ph: (205) 538-0169
Fax: (205) 707-1168
austin@jaustinlawpc.com

*/s/Richard A. Rice*
Richard A. Rice
*/s/Spencer E. Bowley*
Spencer E. Bowley
Attorneys for Plaintiff

THE RICE FIRM, LLC
115 Richard Arrington Jr. Blvd. North
Birmingham, AL 35203
Ph: (205) 618-8733
Fax: (888) 391-7193
rrice@rice-lawfirm.com
spencer@rice-lawfirm.com

***Attorneys for Plaintiff***

<u>**CERTIFICATE OF SERVICE**</u>

I certify that copies of the foregoing have been served on the below counsel of record this 9th day of December, 2025 via this Court's CM/ECF electronic case filing system.

/s/ Spencer E. Bowley<br>Spencer E. Bowley

**J Randall McNeill**
Webb McNeill Frawley PC Alabama
One Commerce Street Suite 700
Montgomery, AL 36104
334-262-1850
Fax: 334-262-1889
Email: rmcneill@wmwfirm.com

**A Courtney Crowder**
**Krista Brooke Roach**
**Tindol Lorrin Pate**
PHELPS JENKINS GIBSON &
FOWLER LLP
1201 Greensboro Avenue
PO Box 020848
Tuscaloosa, AL 35402-0848
205-345-5100
205-247-4715
Fax: 205-758-4394
Email: accrowder@pjgf.com
Email: kroach@pjgf.com
Email: tpate@pjgf.com

**Timothy B McCool**
P.O. Box 270
Carrollton, AL 35447
205-367-8125
Fax: 205-367-9255
Email: tim@timmccoollaw.com

**C Gregory Burgess**
**Stephanie Margaret Hall**
LANIER FORD SHAVER &
PAYNE, P.C.
2101 West Clinton Avenue, Suite 102
P O Box 2087
Huntsville, AL 35805
256-535-1100
315-854-5710
Fax: 256-533-9322
Email: cgb@LanierFord.com
Email: smh@lanierford.com